UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JENNIFER CHAFFEE, and BRYAN
FIDDLER,

                              Plaintiffs,

v.                                                              5:22-CV-1077
                                                                (BKS/ML)
SYRACUSE CITY SCHOOL DIST; and
FRANKLIN ELEMENTARY SCHOOL,

                              Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

JENNIFER CHAFFEE
BRYAN FIDDLER
  Plaintiffs, *Pro Se*
209 Cogswell Avenue
Syracuse, New York 13209

MIROSLAV LOVRIC, United States Magistrate Judge

## AMENDED ORDER and REPORT-RECOMMENDATION

## I.   INTRODUCTION

Plaintiffs Jennifer Chaffee and Bryan Fiddler (collectively "Plaintiffs") commenced this

civil rights action *pro se* on October 19, 2022, asserting claims arising from the care of their

minor son who was a student at Defendant Franklin Elementary School, within Defendant

Syracuse City School District (collectively "Defendants").  (Dkt. No. 1.)  Plaintiffs did not pay

the filing fee for this action and Plaintiff Chaffee sought leave to proceed *in forma pauperis*

("IFP").  (Dkt. No. 2.)

On February 7, 2023, the undersigned issued a Decision and Order that denied Plaintiff

Chaffee's motion for leave to proceed IFP as incomplete.  (Dkt. No. 6.)  Plaintiffs were

cautioned that, should they "wish to proceed with this action, they must either (i) pay the

$402.00 filing fee, or (ii) submit a completed and signed IFP long form application in accordance

with this Decision and Order **within thirty (30) days**."  (Dkt. No. 6 at 4.)  In addition, Plaintiffs

were advised that "[u]ntil such time as each plaintiff pays the full filing fee or submits a

completed IFP application . . . review of the complaint pursuant to Section 1915(e) . . . would be

premature."  (*Id*. at 3 [citing *Sitts v. Weaver*, 20-CV-1471, 2021 WL 51411, at *2 (N.D.N.Y. Jan.

6, 2021) (Suddaby C.J.)].)

On March 15, 2023—thirty six days after the issuance of the Decision and Order issued

on February 7, 2023—the undersigned issued a report and recommendation to Chief United

States District Judge Brenda K. Sannes recommending that Plaintiffs' Complaint be dismissed

for failure to pay the required filing fee or to obtain leave to proceed IFP.  (Dkt. No. 7.)

On March 29, 2023, Plaintiff Chaffee filed an amended application for leave to proceed

IFP.  (Dkt. No. 8.)

## II.    DISCUSSION

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee.

28 U.S.C. § 1915(a)(1).[1]  Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed

---

[1]    The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman
v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee.  28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court.  *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983).  The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status.  28 U.S.C. § 1915(a)(1).  To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute."  *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000).  As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life."  *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

"Courts in this Circuit have . . . routinely required each plaintiff in a multi-plaintiff litigation to submit separate and complete applications for IFP status."  *Sitts v. Weaver*, 20-CV-1474, 2021 WL 51411, at *2 (N.D.N.Y. Jan. 6, 2021) (Suddaby, C.J.) (citing *Razzoli v. Exec. Office of United States Marshals*, 10-CV-4269, 2010 WL 5051083, at *3 (E.D.N.Y. Dec. 2, 2010); *Amaker v. Goord*, 09-CV-0396, 2009 WL 1586560, at *2 (W.D.N.Y. June 4, 2009)).

Here, Plaintiff Chaffee's amended IFP application is complete and demonstrates economic need.  (Dkt. No. 8.)  As a result, Plaintiff Chaffee's amended IFP application (Dkt. No. 8) is granted.

"Before the Court can review the sufficiency of the complaint pursuant to Section 1915 . . . however, . . . the other plaintiff[] in this action (specifically [Plaintiff Fiddler]) must comply with the statutory filing fee requirements for this action.  Until such time as each plaintiff pays the full filing fee or submits a completed IFP application . . . review of the complaint pursuant to Section 1915(e) . . . would be premature."  *Sitts*, 2021 WL 51411, at *2.

Thus, for this case to proceed, Plaintiff Fiddler must **individually**, either (a) pay the Court's filing fee of $402.00 in full, or (b) submit a completed and signed long form IFP application in accordance with this Amended Order and Report-Recommendation.

I recommend that, within thirty days from the date of a Decision and Order by the assigned District Judge on this Amended Order and Report-Recommendation, if Plaintiff Fiddler does not fully comply with this Amended Order and Report-Recommendation, he be terminated from the docket and all claims asserted by him be dismissed without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff Chaffee's amended IFP application (Dkt. No. 8) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith.**  *See* 28 U.S.C. § 1915(a)(3); and it is further

**ORDERED** that should Plaintiff Fiddler wish to proceed with this action, he must either (i) pay the $402.00 filing fee, or (ii) submit a completed and signed IFP long form application in accordance with this Amended Order and Report-Recommendation; and it is further respectfully

**RECOMMENDED** that within thirty days from the date of a Decision and Order by the assigned District Judge on this Amended Order and Report-Recommendation, if Plaintiff Fiddler does not fully comply with this Amended Order and Report-Recommendation, he be terminated from the docket and all claims asserted by him be dismissed without prejudice; and it is further

**ORDERED** that upon Plaintiff Fiddler's compliance or at the expiration of any deadline to comply set forth by the assigned District Judge, the Clerk shall return the file to the Court for further consideration and, if appropriate, review of the complaint in accordance with 28 U.S.C. § 1915(e)(2); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Amended Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules[2]; and it is further

**ORDERED** that the Clerk shall provide Plaintiff Fiddler with a blank long form IFP application.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: April 3, 2023
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[2]     The Clerk shall also provide Plaintiffs with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[3]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2021 WL 51411
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James C. SITTS, et al., Plaintiffs,
v.
Alan WEAVER and Delaware County
Correctional Facility, Defendants.

9:20-CV-1474 (GTS/DJS)
|
Signed 01/06/2021

**Attorneys and Law Firms**

JAMES C. SITTS, Plaintiff, pro se, 8484, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

STEVEN BARROWS, Plaintiff, pro se, 5829, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

JULIUS LEONARD, JR., Plaintiff, pro se, 9286, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

BRYAN RUPLE, Plaintiff, pro se, 1469, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

DANIEL SCHULTZ, Plaintiff, pro se, 3889, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

NICHOLAS MERIDV, Plaintiff, pro se, 9295, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

ROBERT J. GIORDANO, Plaintiff, pro se, 5115, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

RICHARD GRANTT, Plaintiff, pro se, 9294, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

ROBERT PAYNE, Plaintiff, pro se, 9298, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

ANTHONY HOPPER, Plaintiff, pro se, 9289, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

ANTHONY BOYD, Plaintiff, pro se, 7847, Delaware County Correctional Facility, 280 Phoebe Ln., Ste. 6, Delhi, NY 13753.

**DECISION AND ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**I. INTRODUCTION**

**\*1** This action was commenced by eleven pro se incarcerated plaintiffs on or about December 2, 2020, pursuant to 42 U.S.C. § 1983 ("Section 1983") against two defendants. Dkt. No. 1 ("Compl."). None of the plaintiffs paid the filing fee, and only one plaintiff, plaintiff James C. Sitts, submitted an application to proceed in the action in forma pauperis ("IFP").

**II. DISCUSSION**

**A. Filing Fee Requirements Generally**

A civil action is commenced in federal district court "by filing a complaint with the court." Fed. R. Civ. P. 3. The filing fees must be paid at the time an action is commenced unless an IFP application is submitted to the Court. 28 U.S.C. § 1914(a); 28 U.S.C. § 1915(a). Section 1915 of Title 28 of the United States Code ("Section 1915") "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "The purpose of 28 U.S.C. § 1915 is to insure that litigants will not be deprived of access to the judicial system because of their financial circumstances." Monti v. McKeon, 600 F. Supp. 112, 114 (D. Conn. 1984) (citing Harlem River Consumers Co-op, Inc. v. Associated Grocers of Harlem, Inc., 71 F.R.D. 93, 96 (S.D.N.Y. 1976)). Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the filing fee. 28 U.S.C. 1915(a)(1). "[T]he federal district courts are vested with especially broad discretion to deny state prisoners the privilege of proceeding

IFP in civil actions against officials of the institution in which they are incarcerated." *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983).

Section 1915, provides, in pertinent part, that an IFP request must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint ..., obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). In accordance with Rule 5.4 of the Local Rules of Practice for this Court, a prisoner seeking IFP status in a civil action may satisfy the statutory requirements by submitting a completed, signed, and certified IFP application. N.D.N.Y. L.R. 5.4(b)(1)(A). A "certified" IFP application is one on which the certificate portion, at the bottom of page two of the form, has been completed and signed by an appropriate official at the plaintiff's facility. The certificate portion of the application requests information regarding funds and/or securities held on account to the inmate's credit over the preceding six months. Accordingly, inmates requesting IFP status may either submit a completed, signed, and certified IFP application as provided in the local rules, or they may submit certified copies of their account statements for the six-month period immediately preceding the filing of a complaint as set forth in Section 1915(a)(2). [1]

**\*2** Section 1915 also provides that, "if a prisoner brings a civil action ..., the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). In accordance with the statute, the filing fee is paid over time from funds available in the plaintiff's prison account. In furtherance of this requirement, Rule 5.4 of the Local Rules of Practice for this Court require all inmates to submit, in addition to a fully completed IFP application, the inmate authorization form issued by the Clerk's Office. N.D.N.Y. L.R. 5.4(b). The inmate authorization form authorizes periodic withdrawals in respect of the filing fee and acknowledges the inmate-plaintiff's obligation to pay the entire filing fee "regardless of the outcome of the lawsuit."

Although the Second Circuit has not addressed the issue, most courts have not reduced or eliminated the obligation imposed on each incarcerated plaintiff to pay the filing fee

under Section 1915(b)(1) when multiple inmate-plaintiffs commence an action. *See* *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009); *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004); *Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001); *Podius v. Fed. Bureau of Prisons*, No. 16-CV-6121, 2017 WL 1040372, at \*2 (E.D.N.Y. Mar. 16, 2017); *Ashford v. Spitzer*, No. 08-CV-1036, Dkt. No. 127 (N.D.N.Y. filed Sept. 29, 2008); [2] *but see* *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1138 (6th Cir. 1997). Courts in this Circuit have also routinely required each plaintiff in a multi-plaintiff litigation to submit separate and complete applications for IFP status. *See, e.g.*, *Razzoli v. Exec. Office of United States Marshals*, No. 10-CV-4269, 2010 WL 5051083, at \*3 (E.D.N.Y. Dec. 2, 2010); *Amaker v. Goord*, No. 09-CV-0396, 2009 WL 1586560, at \*2 (W.D.N.Y. June 4, 2009).

**B. Analysis**

As noted above, none of the eleven plaintiffs paid the required filing fee, and only plaintiff Sitts has submitted an IFP application. Indeed, plaintiff Sitts has now filed two IFP applications in this action. Dkt. Nos. 2, 4. Because plaintiff Sitts' first IFP application (Dkt. No. 2) is not complete (because it is neither certified by a prison official nor accompanied by copies of his inmate account statements for the previous six months), it is denied. Plaintiff's second IFP application (Dkt. No. 4), however, is certified by a prison official, and therefore it is complete. Plaintiff Sitts has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, plaintiff Sitts' second IFP application, Dkt. No. 4, is granted.

Before the Court can review the sufficiency of the complaint pursuant to Section 1915 and/or Section 1915A, however, each of the other plaintiffs in this action (specifically plaintiffs Barrows, Leonard, Ruple, Schultz, Meridv, Giordano, Grantt, Payne, Hopper, Boyd) must comply with the statutory filing fee requirements for this action. Until such time as each plaintiff pays the full filing fee or submits a completed IFP application and inmate authorization form, review of the complaint pursuant to Section 1915(e) and/or Section 1915A would be premature.

**\*3** Thus, for this case to proceed, plaintiffs Barrows, Leonard, Ruple, Schultz, Meridv, Giordano, Grantt, Payne, Hopper, Boyd must **individually**, within 30 days of the date of this Decision and Order, **either (a)** pay the Court's filing fee

of $402.00 in full, **or (b)** submit a completed and signed IFP application in accordance with this Decision and Order **and** a signed inmate authorization form reflecting his consent to pay the $350.00 filing fee over time, in installments. [3] Plaintiffs are advised that, if any of them does not fully comply with this Decision and Order within 30 days, the non-complying individual will be terminated from the docket and all claims asserted by that non-complying individual will be dismissed without prejudice without further Order from the Court.

Upon full compliance with this Decision and Order, or at the expiration of the 30-day time period to comply, whichever is earlier, the Clerk shall return the action to the Court.

### III. MULTI-PLAINTIFF LITIGATION

Because this lawsuit has been commenced by multiple plaintiffs who are all incarcerated, the Court takes this opportunity to notify plaintiffs of certain rules and obligations that are applicable to them while pursuing this action.

First, the Court notes that only one of the plaintiffs in this action, James C. Sitts, has signed the complaint. *See* Compl. at 12. Rule 11 of the Federal Rules of Civil Procedure, however, requires that all plaintiffs sign "[e]very pleading, written motion, and other paper." Fed. R. Civ. P. 11(a). Plaintiffs are not, and will not be, relieved of this obligation in the event that one or more of them is released or becomes confined in a different correctional facility than the other plaintiff. Because a non-attorney is not permitted to represent anyone other than himself, *see Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998), Rule 11 protects against one plaintiff becoming a de facto representative of his co-plaintiffs. In addition, adherence to this rule in a multi-plaintiff action serves to ensure that each pro se plaintiff is on notice of the facts, issues, and obligations of the parties that arise throughout the litigation. The Court will promptly deny any request that is not signed by all plaintiffs, or, if the filing requests no relief, the Court may strike it without consideration of the merits. [4]

Second, Rule 5 of the Federal Rules of Civil Procedure requires that each plaintiff must serve his co-plaintiffs with all documents or motions filed with the Court or any discovery material (including responses to discovery requests) provided to the defendants. Fed. R. Civ. P. 5(a)(1); [5] *Swenson v. MacDonald*, No. 05-CV-0093, 2006 WL 240233, at *3 (D. Mont. Jan. 30, 2006). Plaintiffs are not relieved of this obligation simply because they are incarcerated. To the extent

that prison rules and/or regulations inhibit plaintiffs' abilities to correspond with one another, they are directed to utilize the available prison procedures to seek and obtain the necessary permission to communicate with each other. [6] Plaintiffs are hereby warned that the Court will not serve a filing made by one plaintiff on the remaining plaintiffs.

**\*4** Third, the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal lawsuits, expressly provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (analyzing whether prisoner-plaintiff exhausted his administrative remedies pursuant to the PLRA's exhaustion requirement). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *Woodford*, 548 U.S. at 93; *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). In the same way that each plaintiff in this action is required to separately comply with the filing fee requirements for commencing this action (as discussed above in Part II.B. of this Decision and Order), each plaintiff is required to separately exhaust the available administrative remedies before commencing an action in federal court under the PLRA. *See, e.g., Lilly v. Ozmint*, No. 07-CV-1700, 2007 WL 2021874, at *2 (D. S.C. July 6, 2007) ("Just as payment of one fee does not cover multiple plaintiffs under the PLRA, exhaustion of administrative remedies by one prisoner does not meet the exhaustion requirement for all the plaintiffs. Each individual plaintiff is required to comply with the exhaustion requirement." (citing *Porter*, 534 U.S. at 524; *Woodford*, 548 U.S. at 90)).

Fourth, Rule 20 of the Federal Rules of Civil Procedure, which is the rule that allows plaintiffs to join in this single action, is inherently permissive. *See* Fed. R. Civ. P. 20 (statute entitled "Permissive Joinder of Parties"). [7] Rule 21 of the Federal Rules of Civil Procedure underscores the permissive nature of Rule 20, directing courts the authority to sua sponte or on motion "add or drop a party" at any time "on just terms." Fed. R. Civ. P. 21. Accordingly, although the Court is not severing plaintiffs' claims at this time, plaintiffs should be aware that, at any time, the Court may do so, including for reasons of judicial efficiency and fairness to all parties. *See, e.g., Lopez v. City of Irvington*, No. 05-CV-5323, 2008 WL 565776, at *2 (D. N.J. Feb. 28, 2008) ("Rule [21] may ... be invoked to prevent prejudice or promote judicial efficiency."); *Steward v. Mississippi*, No. 07-CV-0184, 2007 WL 4375210, at *2 (S.D. Miss. Dec. 12, 2007) (citing the Court's inherent power to control its docket and Rule 21 as grounds for severing the claims asserted by multiple incarcerated plaintiffs); *see also* Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1967) (construing Rule 21 as authorizing courts to sever claims for "sufficient other reasons" besides improper joinder under Rule 20).

Fifth, to the extent that plaintiffs are attempting to commence a class action, it is well settled that class actions cannot be maintained by a pro se litigant because (as noted above) non-attorneys may not represent anyone other than themselves.

Iannaccone, 142 F.3d at 558; *see also Miller v. Zerillo*, No. 07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice until an attorney makes an appearance). Until such time as a motion seeking certification of the class has been filed demonstrating that the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied, the complaint shall be considered as an action brought jointly by plaintiffs in their individual capacities under Rule 20.

**\*5** In light of the foregoing, the Court hereby notifies plaintiffs that, as alternative to proceeding jointly in this multi-plaintiff lawsuit, any of them may proceed with litigation independent of the other plaintiffs in a separate action. If any plaintiff wishes to do so, he must (1) commence a new action by filing a separate complaint and complying with the filing fee requirements as discussed above in Part II of this Decision and Order; and (2) file a notice of voluntary dismissal in this action in accordance with Rule 41 of the Federal Rules of Civil Procedure.

## IV. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff Sitts' first IFP application (Dkt. No. 2) is **DENIED** as incomplete; and it is further

**ORDERED** that plaintiff Sitts' second IFP application (Dkt. No. 4) is **GRANTED**; and it is further

**ORDERED** that, before the Court reviews the sufficiency of the complaint pursuant to 28 U.S.C. § 1915 and/or 28 U.S.C. § 1915A, plaintiffs Barrows, Leonard, Ruple, Schultz, Meridv, Giordano, Grantt, Payne, Hopper, Boyd must **individually**, **within 30 days** of the date of this Decision and Order, **either (a)** pay the Court's filing fee of $402.00 in full **or (b)** submit a completed and signed IFP application in accordance with this Decision and Order **and** a signed inmate authorization form reflecting his individual consent to pay the $350.000 filing fee over time, in installments; and it is further

**ORDERED** that if, within the time period specified above, any of the plaintiffs fail to comply with the terms of this Decision and Order delineated above, the non-compliant individual will be **terminated** from the docket and any claims asserted by that non-compliant individual will be dismissed from the action **without prejudice without further Order of this Court**; and it is further

**ORDERED** that, upon full compliance with this Decision and Order, or at the expiration of the deadline to comply, whichever is earlier, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED** that, in accordance with the Rule 10.1(c)(2) of the Court's Local Rules, plaintiffs shall promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in their address. Plaintiffs' failure to do so may result in the dismissal of this action; and it is further

**ORDERED** the Clerk shall serve a copy of this Decision and Order, as well as a blank IFP application and blank inmate authorization form, on each plaintiff (except plaintiff Sitts) in accordance with the Local Rules of Practice for this Court.

**IT IS SO ORDERED.**

Attachment

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

Plaintiff(s)          **APPLICATION TO PROCEED**
                      **WITHOUT FULL PREPAYMENT**
v.                    **OF FEES IN ACTIONS COMMENCED**
                      **PURSUANT TO 42 U.S.C. § 1983**

_____

Defendant(s)          CASE NUMBER: _____

I, _____, declare that I am (check appropriate box)

☐ plaintiff/movant          ☐ other

in the above-entitled proceeding and that, in support of my request to proceed without prepayment of fees or costs under 28 U.S.C. § 1915, I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/motion.

In support of this application, I answer the following questions under penalty of perjury:

1.  Are you currently incarcerated?          ☐ Yes          ☐ No (if "no," go to Question No. 2)

    If "yes," state the place of your incarceration: _____

    Are you employed at the institution?          ☐ Yes          ☐ No

    Do you receive any payment from same?          ☐ Yes          ☐ No

    **Notice to Inmates:**  **The Certificate Portion Of This Affidavit Must Be Completed In Accordance With Rule 5.4(b)(1)(A) Of The Local Rules Of Practice For This Court OR You Must Include, Along With This Affidavit, Certified Copies Of Your Inmate Account Statement For The Last Six Months In Accordance With 28 U.S.C. § 1915(a)(2)**

2.  Are you currently employed?          ☐ Yes          ☐ No

    a.  If the answer is "yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.

    b.  If the answer is "no," state the date of your last employment, the amount of your take-home salary or wages, and the name and address of your last employer.

3.  In the past twelve months have you received any money from any of the following sources?

    a.  Business, profession, or other self-employment          ☐ Yes          ☐ No

    b.  Rent payments, interest, or dividends          ☐ Yes          ☐ No

    c.  Pensions, annuities, or life insurance payments          ☐ Yes          ☐ No

    d.  Disability or workers compensation payments          ☐ Yes          ☐ No

    e.  Gifts or inheritances          ☐ Yes          ☐ No

    f.  Any other sources          ☐ Yes          ☐ No

    If the answer to any of the above is "yes," describe each source of money and state the amount received and what you expect you will continue to receive. (Attach additional pages if necessary.)

4.  Do you have any cash, checking, or savings accounts?          ☐ Yes          ☐ No
    If "yes," state the total amount: _____

5.  Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other assets?          ☐ Yes          ☐ No
    If "yes," describe the property and state its value. (Attach additional pages if necessary.)

6.  List the person(s) who are dependent on you for support, state your relationship to each person, and indicate how much you contribute to their support. (Attach additional pages if necessary.)

I declare under penalty of perjury that the above information is true and correct.

_____          _____
DATE                     SIGNATURE OF APPLICANT

**CERTIFICATE**
(To be completed by appropriate official at institution of incarceration)

I certify that the applicant named herein has the sum of $ _____ on account to his/her credit at (name of institution) _____
I further certify that the applicant has the following securities to his/her credit: _____
I further certify that during the past six months the applicant's average balance was $ _____

_____          _____
DATE                     SIGNATURE OF AUTHORIZED OFFICER

2

**INMATE AUTHORIZATION**

I, _____, authorize the agency holding me in custody to send to the Clerk of the United States District Court for the Northern District of New York ("Clerk"), at his request, certified copies of statements of my trust fund account (or institutional equivalent) at the institution where I am currently incarcerated.

If I have not been incarcerated at my current place of confinement for at least six (6) months, I authorize such agency to provide said Clerk, at his request, with copies of such account statements from the institution(s) in which I had previously been incarcerated.

I further request and authorize the agency holding me in custody to calculate, encumber and/or disburse funds from my trust fund account (or institutional equivalent) in the amounts specified by 28 U.S.C. § 1915(b). This authorization is furnished in connection with the commencement of the civil action submitted herewith (or noted below), and I understand that the total filing fee which I am obligated to pay is $350.00. I also understand that this fee will be debited from my account regardless of the outcome of my lawsuit. This authorization shall apply to any other agency into whose custody I may be transferred.

➔  **Signature:**  _____
                   ★ **NOTE: You must sign your name on the above line.** ★

FOR OFFICIAL USE ONLY – DO NOT WRITE BELOW THIS LINE

Name and DIN Number:          _____
Civil action number:          _____
Short name of case:           _____

FORM G

**All Citations**

Slip Copy, 2021 WL 51411

## Footnotes

1   Upon compliance with the filing fee requirements, the Court must consider plaintiff's request to proceed IFP in light of the "three strikes" provision of 🚩 Section 1915(g) and, if appropriate, review the sufficiency of the complaint in accordance with 🚩 Section 1915(e) and/or 28 U.S.C. § 1915A ("Section 1915A").

2   The proper application of the requirement set forth in 🚩 Section 1915(b)(1) that each prisoner plaintiff who seeks IFP status be required to pay "the full amount of the filing fee" to an action brought by multiple plaintiffs was discussed at length in *Ashford. See Ashford*, No. 08-CV-1036, Dkt. No. 127 at 3-9. "Absent specific instruction from the Second Circuit, and after reviewing the decisions of the various Circuits that have addressed the issue, th[e] Court f[ound] that those cases concluding that prisoners may file joint actions but must each pay the full filing fee appear to be better reasoned." *Ashford*, No. 08-CV-1036, Dkt. No. 127 at 9.

3   The total cost for filing a civil action in this Court is $402.000, which consists of the civil filing fee of $350.00, 28 U.S.C. § 1914(a), and an administrative fee of $52.00. A party granted IFP status is not required to pay the $52.00 administrative fee. A prisoner granted IFP status, however, is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. 🚩 28 U.S.C. § 1915(b)(3).

4   An exception to Rule 11's requirement that every plaintiff sign each motion filed with the Court is an application to proceed in the action IFP, which shall be signed only by the plaintiff seeking IFP status.

5   In particular, Rule 5 provides, in relevant part, as follows:

    (1) *In General.* Unless these rules provide otherwise, each of the following papers must be served on every party:

    (A) an order stating that service is required;

    (B) a pleading filed after the original complaint, unless the court orders otherwise under Rule 5(c) because there are numerous defendants;

    (C) a discovery paper required to be served on a party, unless the court orders otherwise;

    (D) a written motion, except one that may be heard ex parte; and

    (E) a written notice, appearance, demand, or offer of judgment, or any similar paper.

    Fed. R. Civ. P. 5(a)(1).

6   This Decision and Order shall not be construed as authorizing plaintiffs to correspond with one another in any manner that would violate prison rules and/or regulations.

7   In relevant part, Rule 20 provides as follows:

    (1) *Plaintiffs.* Persons may join in one action as plaintiffs if:

    (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

    (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5051083
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Kevin RAZZOLI, Philip Barrios, David
Sunday, Joseph Barrafato, Anothony
Scalfine, and Milton Morales, Plaintiffs,

v.

EXECUTIVE OFFICE OF U.S. MARSHALS, Executive
Office of F.B.I., Executive Office of Federal Bureau
of Prisons, and Unknown Federal Agents, Defendants.

No. 10–CV–4269 (CBA).
|
Dec. 2, 2010.

**Attorneys and Law Firms**

Kevin Razzoli, Brooklyn, NY, pro se.

Philip Barrios, Brooklyn, NY, pro se.

Avid Sunday, Brooklyn, NY, pro se.

Joseph Barrafato, Brooklyn, NY, pro se.

Anthony Scalfini, Brooklyn, NY, pro se.

Milton Morales, Brooklyn, NY, pro se.

*MEMORANDUM & ORDER*

AMON, District Judge.

**\*1** Plaintiff Kevin Razzoli ("Razzoli"), who is currently
incarcerated at the Metropolitan Detention Center ("MDC"),
bring this *pro se* Civil Rights Complaint, ostensibly as a
"class action" on behalf of himself, five other named plaintiffs
(the "additional plaintiffs"), and "known + unknown fed.
+ military inmates et al." Razzoli's request to proceed *in
forma pauperis* pursuant to 28 U.S.C. § 1915 is granted.
For the reasons set forth below, the complaint is dismissed
with respect to the United States Marshals Service, the
Federal Bureau of Investigations, and the Bureau of Prisons
(the "agency defendants") with leave to submit an amended
complaint within 30 days from the date of this Order.

*BACKGROUND*

Plaintiff Kevin Razzoli is a frequent litigator in this Court and
other District Courts, and his litigation history was previously
summarized in *Razzoli v. U.S. Parole Commission, et al.,*
No. 10–CV–1842 (CBA) (docket no. 16). The instant case
seeks certification as a class action pursuant to Rule 23
of the Federal Rules of Civil Procedure and includes the
names and signatures of Philip Barrios, David Sunday, Joseph
Barrafato, Anthony Scalfine, and Milton Morales, other
inmates housed at the MDC. These additional plaintiffs have
not filed applications to proceed *in forma pauperis* or the
prisoner authorizations required under the Prison Litigation
Reform Act.

The complaint alleges that the MDC limits inmates' access to
the courts by only permitting two and one-half to three hours
per week of monitored legal research, including typewriter
access, and by not providing carbon paper. The complaint
alleges that this "violates 'p' rule or creating a conflict of
interest." (Compl. at 9.) [1] The MDC is alleged to have
employed " 'Mkultra/Bluebird' now known as 'chirp' "
and data-mining techniques using "thermal gamma imagetry
equiptment" [*sic* ]. (Compl. at 11.) The complaint also alleges
that the "computer law library does not list judges' opinions
correctly and court decisions are altered in some cases dealing
with BOP, U.S. Marshals and other DOJ agencies." (Compl.
at 18.)

The complaint further alleges that plaintiffs "have been
denied Sunday mass by Protestant and Jewish chaplain(s)
[;] i.e.: mandatory [*sic* ] Sunday Catholic mass." (Compl.
at 18.) In addition, the complaint alleges that each of the
original named plaintiffs has attempted to resolve different
problems through administrative remedies, but has received
no response. (Compl. at 13, 16.) Plaintiff Razzoli alleges
that his warrant application incorrectly listed his race as
"Black" and that the MDC "has tried to say he has mental
problems without court hearing or N.Y. State licensed
psyc[h]ologist." (Compl. at 10; *see also* Compl. at 18.) He
further alleges that: "Razzoli ... is being arbitrarily denied
visits and access to e-mail by not allow[ing] such to leave
institution to attorney and future wife.... Denied to have
children against Catholic rights and Sunday mass." (Compl.
at 17.) Inmate David Sunday is alleged to have been arrested
on the basis of false statements by government informants or
agents. (Compl. at 12.) Inmate Philip Barrios arrived at MDC

on March 29, 2010, "and his 'halfway house' paperwork 10% date has 'not' been started nor attempt to be started, which violates 'court's ruling and BOP 13 month policy.' " (Compl. at 13.) Inmate Anthony Scalfini was "denied to be housed with his 'co-defendants' to marshal a proper defense." (Compl. at 14.) Inmate Milton Morales claims to have a valid actual innocence claim for a pending writ of habeas corpus. (Compl. at 15.)

**\*2** The complaint seeks a series of injunctions, including: "Injunction and appointment of lawyer" (Compl. at 9), "injunction ... for Catholic Sunday mass and release" (Compl. at 10), "injunction ... to cease and desist" (Compl. at 11), "injunction pursuant to 28 U.S.C. § 1331" (Compl. at 16, 17), "injunction to cease religious genocide/Catholic mass on Sunday(s) and [mandatory] [*sic* ] observance of Catholic Church" (Compl. at 19). It also seeks $10 million in damages (Compl. at 12), access to law library typewriters and legal books, trial by jury, discovery, monetary damages, and an "end to mkultra/now known a[s] chirp/ and cowboy program/ SERE program" (Compl. at 19).

Finally, the complaint seeks class certification, citing Rule 23(b) and "class action case law, *Carter v. Ridge, 1997 U.S. Dist. LEXIS 20516, 1997 WL 523787.*" The cited case held that: "a class action should not be maintained by *pro se* litigants who cannot adequately represent and protect the interests of the class, Fed.R.Civ.P. 23(a)(4), but also because, even if plaintiffs had counsel, the court does not believe that they can now describe with any specificity the actual parameters of a class which shares common questions of law or fact. Fed.R.Civ.P. 23(a)(2)." *Carter v. Ridge, No. CIV. A. 97–5414, 1997 WL 792967, at \*3 (E.D.Pa. Dec.19, 1997).*

## *DISCUSSION*

### A. Standard of Review

Title 28 of the United States Code, § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b); *see also* Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir.2007).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *See* Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000).

### B. Class Action Certification

Plaintiffs seek class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. "[B]ecause *pro se* means to appear for one's self, a [*pro se* litigant] may not appear on another person's behalf." Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir.1998); *see also Daniels v. Niagara Mohawk Power Corp.,* No. 04–CV–734S (SC), 2004 WL 2315088, at \*1 (W.D.N.Y. Oct.12, 2004) ("[N]on-attorneys cannot represent anyone other than themselves and cannot prosecute class actions on behalf of others."). Thus, "[i]t is well settled in this circuit that *pro se* plaintiffs cannot proceed as class representatives." *McLeod v. Crosson,* No. 89 Civ.1952, 1989 WL 28416, at \*1 (S.D.N.Y. Mar.21, 1989); *see also Johnson v. Newport Lorillard,* No. 01 Civ. 9587(SAS), 2003 WL 169797, at \*1 n. 4 (S.D.N.Y. Jan.23, 2003) ("It is plain error for a *pro se* inmate to represent other inmates in a class action." (quotation omitted)). Accordingly, plaintiffs' request for class certification is denied.

### C. Plaintiffs Barrios, Sunday, Barrafato, Scalfini, and Morales

**\*3** Although inmates Barrios, Sunday, Scalfini, and Morales signed the complaint, they did not file applications to proceed *in forma pauperis* or prisoner authorization forms. 28 U.S.C. § 1915(a)(2) and (b)(1) requires a "prisoner" to file an *in forma pauperis* application and a copy of his prisoner authorization form, and to pay the filing fee. Where there are multiple prisoner plaintiffs, each must comply with the above cited provisions. *See* Amaker v. Goord, No. 09–CV–0396A(Sr), 2009 WL 1586560, at \*2 (W.D.N.Y. June 04, 2009) (citing cases).

Accordingly, the Clerk of the Court is directed to forward to each of plaintiffs Barrios, Sunday, Barrafato, Scalfini, and Morales an application to proceed *in forma pauperis* and a prison authorization form. Plaintiffs Barrios, Sunday,

Barrafato, Scalfini, and Morales are directed to submit within 30 days separate applications to proceed *in forma pauperis* and separate prison authorization forms. Failure to comply with this order will result in the dismissal of the additional plaintiffs' claims.

### D. Improper Defendants

Civil actions alleging violations of constitutional rights are cognizable under 42 U.S.C. § 1983 if defendants are state actors and pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), when defendants are federal agents. As plaintiffs are presently incarcerated in a federal facility, and as plaintiffs name as defendants federal agencies and "unknown federal agents," the Court construes the complaint as raising claims pursuant to *Bivens.* The agency defendants named in the Complaint, however, are not amenable to suit. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."

*FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Plaintiffs' *Bivens* claims must be brought against the individual officials responsible for the alleged deprivations of rights, not against the federal government or the agencies where they are employed. Accordingly, the offices of the United States Marshals Service, the Federal Bureau of Investigations, and the Bureau of Prisons are dismissed as defendants.

### E. Claims by Plaintiff Razzoli

Plaintiff Kevin Razzoli [2] alleges constitutional claims arising from the alleged impairment of his access to the prison law library and the alleged denial of access to catholic mass. [3] With respect to Razzoli's claims involving the prison law library, Razzoli alleges that the MDC has impaired his access to the courts by limiting and monitoring library time and typewriter and computer access. The Constitution guarantees prisoners meaningful access to the courts, and one way of achieving that end is through reasonable access to a law library. *See Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 825–28, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987). However, the Constitution does not require unlimited and unsupervised access to a law library at the demand of a prisoner. Prison officials may impose reasonable restrictions

on the use of a prison law library. *See Lewis,* 518 U.S. at 351–52; *Morello,* 810 F.2d at 347 (inmates' access to courts may be "shaped and guided by the state"); *Jermosen v. Coughlin,* No. 89 Civ. 1866, 1995 WL 144155, at *5 (S.D.N.Y. Mar.30, 1995) ("[I]nterferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right.").

**\*4** To state a claim for denial of access to the courts, a plaintiff must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' " *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997) (quoting *Lewis,* 518 U.S. at 351). The plaintiff must also show that the defendant's actions resulted in actual injury, "such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001); *see also Lewis,* 518 US. at 351–52; *Monsky,* 127 F.3d at 2467 (2d Cir.1997). Here, Razzoli does not allege any facts pertinent to the injury he may have suffered.

With respect to Razzoli's claim regarding the denial of access to a religious service, his allegation that he was "denied Sunday mass by protestant and Jewish chaplain(s)" is conclusory. The complaint, however, could be asserting a claim under the First Amendment's Free Exercise Clause.

In light of the plaintiff's *pro se* status, the Court grants leave to amend the Complaint. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (explaining that if a liberal reading of a complaint "gives any indication that a valid claim might be stated," a court should grant leave to amend the complaint before dismissing). The amended complaint must name proper defendants who may be held liable for the alleged impairment of access to the prison law library and the denial of access to Catholic mass. Even if Razzoli does not know the names of these individuals, he may name them as John Doe Correctional Officer or Jane Doe Chaplain or the like. He should include as much identifying information as possible, including the positions and roles of the officials involved, and should specify how each defendant may have violated his rights with respect to his claims. The complaint should also include allegations of fact regarding the alleged violations, such as the dates on which Razzoli was allegedly

denied religious worship and whether he filed administrative grievances regarding such denial.

### *CONCLUSION*

For the reasons stated, Razzoli's request to proceed *in forma pauperis* is granted. Plaintiffs' request for class certification is denied. Plaintiffs Barrios, Sunday, Barrafato, Scalfini, and Morales are directed to submit within 30 days separate applications to proceed *in forma pauperis* and separate prison authorization forms. Failure to comply with this order will result in the dismissal of the additional plaintiffs' claims. As to the agency defendants, the complaint is dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915A, but plaintiffs are granted leave to file within 30 days an amended complaint

in accordance with this Order. The amended complaint must be captioned, "Amended Complaint," and shall bear the same docket number as this Order. No summons shall issue at this time, and all further proceedings shall be stayed for 30 days.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See*

*Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**\*5**  SO ORDERED.

### **All Citations**

Not Reported in F.Supp.2d, 2010 WL 5051083

---

### **Footnotes**

1   As the complaint is not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing System.

2   To the extent plaintiffs other than Kevin Razzoli intended to bring the following claims, any amended complaint should so specify.

3   Razzoli's claims regarding his ongoing incarceration are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), as applied to *Bivens* actions by *Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995), and are accordingly dismissed. Under *Heck,* a prisoner is not allowed to pursue a claim for money damages where success on that cause of action would necessarily imply the invalidity of his confinement.

*Heck,* 512 U.S. at 486–87. "Federal courts have held that *Heck* applies to ... actions that challenge the fact or duration of confinement based on the revocation of parole." *Davis v. Cotov,* 214 F.Supp.2d 310, 316 (E.D.N.Y.2002) (collecting cases). Accordingly, Razzoli's claims arising from the revocation of his parole are dismissed. Plaintiff Razzoli is, of course, entitled to challenge the fact of his confinement pursuant to a writ of habeas corpus, as indeed Razzoli has done in this instance. *See Razzoli v. U.S. Parole Commission, et al.,* No. 10–CV–1842 (CBA).

Likewise, Razzoli's claims regarding "mKultra/Bluebird" and the use of "Thermal Gamma Imagetry Equiptment [sic]" are devoid of merit and are accordingly dismissed. *See Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) ("[A finding of] factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible whether or not there are judicially noticeable facts available to contradict them."); *see also Razzoli v. United States Navy et al.,* No. 09 Civ. 4323, 2010 WL 1438999, at \*3 (S.D.N.Y. Apr. 12, 2010) (finding inter alia, that petitioner's allegations that the government used thermal gamma imagery to sterilize him are frivolous).

---

**End of Document**                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1586560
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Anthony D. AMAKER, Grace Amaker, Shaheen
Amaker, Phyllis Amaker, Booker Amaker, Shaniev
AH Amaker, Deloris Amaker, Lissette Amaker, Batise
Amaker, and All Those Similarly Situated, Plaintiffs,
v.
Comm. G.S. GOORD, L.J. Leclaire, Dr. L.N. Wright,
Supt. J. Conway, Supt. G. Greene, Supt. M. McGinnis,
Dep. Supt. J. Chappius, C.O. W. Huffer, Sgt. K.
Hendry, C.O. J. Rando, C.O. W. Rogoza, C.O.
Gilbert, C.O. Ayers, C.O. Pierson, Cho Harvey, B.
Harder, R. Brandt, Sgt. P. Gavigan, Zimmerman, J.
Whiteford, Dept. Supt. R. James, L. Vough, D Selsky,
L. McNamara, K. Washburn, Paribella, Seymore, Dhier,
J. Judasz, Schuck, W. Hays, J. Mootz, S. Dolce, C.J.
Martinez, R. Chistensen, and Kolowski, Defendants.

No. 09–CV–0396A(Sr).
|
June 4, 2009.

**Attorneys and Law Firms**

Anthony D. Amaker, Pine City, NY, pro se.

Grace Amaker, East Windsor, NY, pro se.

Shaheem Amaker, Trenton, NJ, pro se.

Phyllis Amaker, East Windsor, NY, pro se.

Booker Amaker, Deltona, FA, pro se.

Shaniev Ah Amaker, Trenton, NY, pro se.

Deloris Amaker, New York, NY, pro se.

Lissette Amaker, pro se.

Batise Amaker, Brooklyn, NY, pro se.

DECISION AND ORDER

WILLIAM M. SKRETNY, District Judge.

*INTRODUCTION*

**\*1** Plaintiff, Anthony Amaker, who is currently incarcerated at the Southport Correctional Facility, [1] initially brought this action under 42 U.S.C. § 1983 on behalf of himself and various family members, in the United States District Court for the Southern District of New York. He alleges, *inter alia,* excessive force and denial of adequate medical treatment on October 6 and October 20, 2004, while at the Great Meadow Correctional Facility (Docket No. 7, Part 1, Complaint, ¶¶ 6–7); retaliation, in the form of the filing of a false misbehavior report arising out of the October 6, 2004 assault and use of excessive force, which also is somehow alleged to be related to some unspecified United States Department of Labor complaint or report (*ibid.*); a denial of due process during the Superintendent's Hearing held in relation to the assault of October 6, 2004 and resulting misbehavior report (*id.,* ¶¶ 9–10); religious and racial discrimination relating to the denial of eight days of Ramadan meals at the Attica Correctional Facility and three days of Ramadan meals upon his transfer to Southport (*id.,* ¶ 10); excessive force on or about November 13, 2004, and the denial of adequate medical care at the Southport Correctional Facility for the period of January through September 16, 2005 (*id.,* ¶¶ 11–12); interference with Anthony Amaker's ability to receive documents relating to a state court petition (*id.,* ¶ 13); and a myriad First Amendment violations relating to the removal of names of Anthony Amaker's family members, who are also Plaintiffs here, from his approved call list, which has caused him and his family members a great deal of stress and emotional damage because many of his family members had been forced to travel long distances to see him, some of whom cannot travel easily, and their inability to visit has resulted in defendants and others subjecting Anthony Amaker to, or targeting him for, racial oppression and gang assaults (*id.,* ¶ 18). Plaintiffs also allege that defendants Nuttal, Goord and LeClaire have conspired with MCI/Verizon to charge Anthony Amaker or his family members "outlandish" fees and he thus was unable to communicate with his family members. [2] (*Id.*) Suffice to say, the Complaint is not a model of clarity and is, for the most part, difficult to understand as to what allegedly occurred, when and where it occurred, and which defendants are alleged to have performed the acts claimed to be constitutional deprivations.

## *DISCUSSION*

Prior to transferring the action to this Court on the basis that a substantial part of the events or omissions giving rise to the claims occurred at the Attica, Southport and Great Meadow Correctional Facilities, two of which are located within this District, the Southern District ordered **each** Plaintiff to submit a Complaint with original signatures, [3] a separate Application to Proceed *In Forma Pauperis* ("IFP Application"), and a Prison Authorization Form for each Plaintiff currently incarcerated. (Docket No. 7, Part 7, Transfer Order at 1–2; Docket No. 7, Part 3, 30 Day Order). That Court had ordered each Plaintiff to sign a copy of the signature page of the Complaint. (Docket No. 11). At the time of transfer of this action, only one Plaintiff had submitted an IFP Application and Prison Authorization Form, Anthony Amaker, and the Court had received back from Plaintiffs the signature page of the Complaint [4] which contained what appeared to be original signatures of all but two of the Plaintiffs, Shaniev Amaker and Lissette Amaker. (Docket No. 7, Part 7, Transfer Order, at 2). [5] The Southern District left to this Court the determination of whether Plaintiffs should be permitted to proceed *in forma pauperis* pursuant to 🚩 28 U.S.C. § 1915(a).

**\*2** Following the transfer of this action, Plaintiff Anthony Amaker filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction, and Declaration in Support. [6] (Docket Nos. 8–9). For the following reasons, each Plaintiff, other than Anthony Amaker, will be provided one last opportunity to submit an IFP Application, as previously ordered by the Southern District, and Anthony Amaker's Motion for a TRO and Preliminary Injunction is denied without prejudice.

### A. *In Forma Pauperis* Applications

#### 1. *Anthony Amaker*

Because Anthony Amaker has submitted an IFP Application and a Prison Authorization (Docket No. 7, Part 5), and has met the statutory requirements, he is granted permission to proceed *in forma pauperis* pursuant to 🚩 28 U.S.C. § 1915(a). [7]

#### 2. *Other Plaintiffs*

As noted, the Southern District's initial 30 Day Order, filed February 23 and entered February 26, 2009, directed each Plaintiff to file IFP Applications and, if any of the Plaintiffs were currently incarcerated, a Prison Authorization Form, pursuant to 🚩 28 U.S.C. § 1915(b), within 30 days of the Order. (Docket No. 7, Part 2, 30 Day Order, at 1). Plaintiff Anthony Amaker is the only Plaintiff who submitted an IFP application and Prison Authorization Form prior to the transfer of this action. He also submitted a letter to the Southern District, filed March 16, 2009, asking for an extension of time until April 8, 2009, to submit the other Plaintiffs' original signatures. The letter is ambiguous, however, as to whether he was requesting, on behalf of the other Plaintiffs, an extension of time to submit their IFP Applications as ordered by the Southern District. (Docket No. 7, Part 3). The letter notes that he is "currently enclosing the requested In Forma Pauperis [Application] and prison authorization form. I will need to know whether Shaheem Amaker [who is currently incarcerated in New Jersey] must fill one out, and I am mailing out a form to [Plaintiff] Grace D. Amaker to provide him with and fill out." (*Id.,* at 2–3).

It appears that Anthony Amaker may have believed that IFP applications were required only for the other Plaintiffs who are prisoners. That is not the case, however. The Southern District granted the request for an extension of time for each Plaintiff to comply with its 30 Day Order. Thereafter, the action was transferred to this Court on April 23, 2009, "[d]espite plaintiff Anthony Amaker's omissions," which presumably refers to the failure to submit separate IFP Applications for each Plaintiff, and Prison Authorization Forms for each Plaintiff currently incarcerated. (Docket No. 7, Part 7, Transfer Order, at 2). To date, no Plaintiff, other than Anthony Amaker, has submitted an IFP application.

This Court finds, as did the Southern District, that each Plaintiff, prisoner or not, must file an IFP application. Accordingly, before this case can proceed as to any Plaintiff other than Anthony Amaker, each Plaintiff must, as ordered by the Southern District, submit by **July 15, 2009,** a separate Application to Proceed *In Forma Pauperis,* and, for each Plaintiff who is a "prisoner," *see* 🚩 28 U.S.C. § 1915(h), a separate Prison Authorization form. Stated another way, and as previously ordered by the Southern District, "[s]hould [each] plaintiff[ ] decide to proceed with this action, they must submit ... [a] separate IFP application[ ] and a Prisoner Authorization form for each plaintiff who is

incarcerated ...." [8] (Docket No. 7, Part 2, 30 Day Order, at 1–2).

**\*3** The Clerk of the Court shall forward to each Plaintiff an Application to Proceed In Forma Pauperis and Prison Authorization Form. The Prisoner Authorization Form needs to be submitted by only those Plaintiffs who are also prisoners, but **each** Plaintiff **must** submit their own IFP Application. A Plaintiff's failure to submit an IFP Application and, if a prisoner, a Prison Authorization Form, by **July 15, 2009,** will result in the dismissal of this action as to him or her without prejudice and without further order or notice from the Court. If any of the Plaintiffs have not complied with this order by **July 15, 2009,** the Clerk of the Court is directed to dismiss them as a party to this action without prejudice, without further order.

There is an additional matter to be addressed with regard to the family member Plaintiffs. It is evident to the Court that Anthony Amaker has prepared the initial pleadings and other papers in this action and is directing this litigation on behalf of all of the Plaintiffs. For example, the recently submitted Motion for a TRO and Preliminary Injunction is signed only by him and he is the only one to submit a Declaration in support of the Motion. While there is no "rule" that prohibits one *pro se* plaintiff from directing litigation brought by himself and others, it is clear that one *pro se* litigant **cannot** appear on another person's behalf. This seems to be what Anthony Amaker is attempting to do here. Each Plaintiff must therefore understand, and is hereby placed on notice, that by signing the signature page of the Complaint and filing an IFP Application each is acknowledging that (1) they have agree to proceed as a Plaintiff in this matter *pro se,* (2) they must represent and appear on behalf of themselves in this matter, and (3) Anthony Amaker cannot act as their attorney or on their behalf in this matter. *See* Fed.R.Civ.P. 11; [9] *see, e.g., Iannacone,* 142 F.3d at 558 (A non-attorney *pro se* party may not represent another's interest). Each Plaintiff must be aware of his or her obligations under Fed.R.Civ.P. 11 to sign each pleading and paper submitted to the Court and to appear on behalf of themselves in this action.

### B. Anthony Amaker's Motion for a Temporary Restraining Order and Preliminary Injunction

Plaintiff Anthony Amaker's Motion for a TRO and Preliminary Injunction seeks

[A]n order pursuant to [Fed.R.Civ.P.] 57, 65(a)(1)(2), (b), (d); Title 28 U.S.C. § § 2201; 2202; the Religious Land Use & Institutionalized Person Act of 2000, Title 42 U.S.C. § 2000cc; United States Constitution Article I, § 8, Cl. 3; Article I, § 8, cl. 8; Article VI, § 2; The Second Chance Act, Title 42 U.S.C. 17501 ... to prevent destruction and confiscat [ion] mail, drawings, illustration, legal documents through the mail and disrupting commerce and the free exercise of religion practice, financial business and publishing of Afrocentric books based on content and viewpoint discrimination.

**\*4** (Docket No. 9, Declaration in Support, at 1–2).

The Court notes initially that the TRO and Preliminary Injunction is sought against a number of DOCS supervisory officials who are not named as defendants in this matter —Fischer, Napoli, Bartlett, Bezio and Covent [sic]— but are claimed to be "successors" to some of the supervisory officials that are named in the Complaint—*e.g.,* Goord, McGinnis, McNamara, Selsky, and Chappius. [10] The injunction is sought against at least two supervisory officials who are named in the Complaint—LeClaire and Washburn.

First, this Court finds that Anthony Amaker has not established the criteria for the granting of a TRO and Preliminary Injunction, *see* Fed.R.Civ.P. 65(b); *Abdul_Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985), *Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991), because he has not established, among other things, a likelihood of success on the merits. Moreover, the Motion seeks relief from what appear to be allegations of the withholding of mail privileges among Anthony Amaker and Grace Amaker and censorship relating to the publication and sale of children's books that Anthony Amaker writes and his mother, Grace Amaker, illustrates. These allegations are not in any way connected to the allegations set forth in the Complaint.

The Complaint, as summarized above, *see* Introduction, *supra,* at 1–2, alleges a number of acts and constitutional violations including excessive force and assault, denial of medical care, a denial of due process, religious and racial discrimination, and a conspiracy among a number of defendants and MCI/Verizon to remove Anthony Amaker's family members from his approved phone call list and to charge exorbitant fees. To the extent the Complaint may implicate mail privileges at all, it is with regard to Anthony Amaker's receipt of documents relating to a state court petition. The Complaint does not allege that mail privileges were withheld so as to censor or obstruct Anthony Amaker's ability to write and publish children's books, which is the gravaman of the Motion for a TRO and Preliminary Injunction. The Complaint's allegations of First Amendment violations are pleaded in terms of retaliation against Anthony Amaker, not in terms of some restraint on his mail in order to foreclose his attempts to publish children's books. Accordingly, the Motion for a TRO and Preliminary Injunction (Docket No. 8) is denied without prejudice.

If Plaintiffs wish to pursue the relief set forth in the Motion for a TRO and Preliminary Injunction they may file an amended or supplemental Complaint pursuant to Fed.R.Civ.P. 15(a) and (d), which includes the allegations and claims for relief set forth in the Motion.

### ORDER

IT IS HEREBY ORDERED that **each Plaintiff,** other than Anthony Amaker, must submit an Application to Proceed *In Forma Pauperis* and, if a prisoner, a Prison Authorization, by **July 15, 2009;**

FURTHER, that if any Plaintiff, other than Anthony Amaker does not submit to the Court by **July 15, 2009,** an Application to Proceed *In Forma Pauperis* and, if a prisoner, a Prison Authorization Form, the Clerk of the Court is directed to dismiss them as a party to this action without prejudice and without further order or notice;

**\*5** FURTHER, that plaintiff Anthony Amaker is granted permission to proceed *in forma pauperis;* and

FURTHER, that Plaintiff Anthony Amaker's Motion for a TRO and Preliminary Injunction (Docket No. 8) is DENIED, without prejudice.

SO ORDERED.

\* \* \*

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1586560

### Footnotes

1    He was incarcerated at Shawangunk when he filed this action.

2    The Court notes some inconsistency with respect to Anthony Amaker's claim that his family members were removed from his phone list and his inability to communicate with his family members because of outlandish telephone charges.

3    *See* Fed.R.Civ.P. 11(a) ("[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record ... or, if the party is not represented by an attorney, shall be signed by the party.") *See also* Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir.1998) (A non-attorney *pro se* party may not represent another's interests.) (citation omitted).

4    At the time of receipt of the file from the Southern District the signature page had not been docketed but it has now been docketed.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

5    The Transfer Order notes that the Complaint (Docket No. 7, Part 2) was received on October 7, 2008, and that at the time the Complaint was submitted it already bore a stamped date of July 3, 2007, "from a Pro Se Office." (Docket No. 7, Part 7, Transfer Order, at 1, n. 1). The Transfer Order also notes that a letter submitted by Anthony Amaker alleges that he had previously "attempted to submit the Complaint through his mother's lawyer, but it had been returned to him for lack of original signatures." The Southern District had no record of having received previously the Complaint on July 3, 2007. (*Id.*) In a letter later submitted by Anthony Amaker, wherein he requested an extension of time to comply with the Southern District's 30 Day Order (Docket No. 7, Part 3), he alleges that the signatures on the complaint were the original signatures "on the "original submitted Complaint back in October 2007," but that, as directed by the Court, he had mailed the signature page of the Complaint to Florida to be signed by the other Plaintiffs again. He claims that the Complaint's signature page was previously signed by the Plaintiffs when he submitted the Complaint originally back in 2007.

6    Anthony Amaker notes that he first filed this Motion with the Southern District but upon notification of the transfer of this action here, he re-submitted the Motion to this Court and that the Memorandum of Law originally submitted with the Motion in the Southern District will be forwarded to this Court upon its receipt from the Southern District.

7    Following receipt of the remaining IFP Applications, the Court will review or "screen" the Complaint pursuant to ⚑ 28 U.S.C. § § 1915(e)(2)(B) and 1915A.

8    ⚑ 28 U.S.C. § 1915(a)(2) and ⚑ (b)(1) requires a "prisoner" to file an IFP application and copy of his inmate account statement (Prisoner Authorization Form), and to pay the filing fee. Therefore, as directed by the Southern District, each prisoner plaintiff herein must file a separate IFP Application and Prison Authorization form. *Compare* ⚑ *Boibourne v. Berge,* 391 F.3d 852 (7th Cir.2004) (multiple prisoner plaintiffs may join claims in a single action but each must file a separate IFP Application and pay filing fee pursuant to ⚑ § 1915(b)), *with* ⚑ *Hubbard v. Haley,* 262 F.3d 1194 (11th Cir.2001) (mandatory provision of ⚑ § 1915(b) disallows the filing of a single action by multiple prisoner plaintiffs). *See also Purifoy v. Kelley,* (NO. CIV 08–CV–581–DRH, 2009 WL 535947 (S.D.Ill., March 04, 2009) (If plaintiffs, each "prisoners" as defined in ⚑ § 1915(h), seek to proceed *in forma pauperis,* each must file a separate motion, accompanied by a certified copy of his prison trust fund account statement), *Madden v. Jackson,* No. 5:08CV00090 SWW/BD, 2008 WL 1930517, at *2 (one of the prisoner/plaintiffs failed to file a separate application to proceed IFP as required by ⚑ § 1915(b)(1)); *Horton v. Evercom Inc.,* NO. 07–3183–SAC; 2008 WL 45738 (D.Kan., January 02, 2008) ("Courts examining the impact of multiple plaintiffs on this statutory requirement have decided that prisoner plaintiffs may not undermine this statutory obligation by joining in the filing of a single action, and have held that each prisoner plaintiff must pay the full district court filing fee."); *cf. Sisneroz v. Ahlin,* No. 1:08–cv–01358–SMS PC, 2009 WL 224899 (E.D.Cal., 2009) (plaintiffs, civil detainees, are not "prisoners" under ⚑ § 1915(h), and each filed separate applications to proceed *in forma pauperis.*)

9    **Rule 11**. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions

**(a) Signature.** Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—*or by a party personally if the party is unrepresented....*

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or *unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(**1**) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(**2**) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(**3**) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(**4**) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) **Sanctions.**

(1) **In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or *party* that violated the rule or is responsible for the violation....

(2) **Motion for Sanctions.** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) **On the Court's Initiative.** On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) **Nature of a Sanction.** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) **Limitations on Monetary Sanctions.** The court must not impose a monetary sanction:

(**A**) against a represented party for violating Rule 11(b) (2); or

(**B**) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(Emphasis in italics supplied).

10    While Fed.R.Civ.P. 25(d) provides that a public officer who is a party in an official capacity who ceases to hold public officer is automatically substituted as a party by his successor, the defendants herein are not sued solely in their official capacity.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.