UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNIFER CHAFFEE,

                              Plaintiff,

v.                                                                5:22-CV-1077
                                                                  (BKS/ML)
SYRACUSE CITY SCHOOL DIST; and
FRANKLIN ELEMENTARY SCHOOL,

                              Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

JENNIFER CHAFFEE
  *Pro Se* Plaintiff
209 Cogswell Avenue
Syracuse, New York 13209

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

        The Clerk has sent this *pro se* Complaint (Dkt. No. 1) filed by Jennifer Chaffee

("Plaintiff") to the Court for review.  For the reasons discussed below, I recommend that

Plaintiff's Complaint (Dkt. No. 1) be dismissed with leave to amend.

**I.    BACKGROUND**

        On October 19, 2022, Plaintiff commenced this action by filing a *pro se* Complaint

against defendants Syracuse City School District and Franklin Elementary School (collectively

"Defendants").  (Dkt. No. 1.)  Plaintiff has been granted leave to proceed *in forma pauperis*.

(Dkt. No. 9.)

        Plaintiff's Complaint—which was completed on a form complaint alleging violations of

civil rights pursuant to 42 U.S.C. § 1983— is a series of run-on sentences that are difficult to

decipher.  (*See generally* Dkt. No. 1.)  The Complaint alleges that at an unspecified time, Plaintiff's phone was hacked and the hacker "threaten[ed] that they [were] rap[ing her minor child] inside of school and that they had a creative way of giving shots to [her child] age 6 in the nurse[']s office."  (Dkt. No. 1 at 2.)  Plaintiff alleges that she went to the school to discuss the threats and when she got home, the hackers described where she sat and what was discussed at the school meeting.  (*Id*. at 2-3.)  Plaintiff alleges that she made an anonymous call to the school superintendent requesting that the school be spied on to ensure that her child was safe.  (*Id*. at 3.)

The Complaint alleges that two days after Plaintiff's anonymous call to the school superintendent, a social worker and police officers were "sent" to her home where they (1) condemned her home, (2) accused her of trying to kill a social worker with a gun, and (3) placed her in CPEP[1] against her will.  (*Id*.)  Plaintiff alleges that "they used [her child's] absences as an excuse" but that the child only missed school for proper purposes such as doctor's appointments, illnesses, and when Plaintiff was concerned about his safety.  (*Id*.)

Plaintiff alleges that Defendants violated her right to report a crime, right keep her child safe at home, and pursuant to the Crime Victim's Rights Act, 18 U.S.C. § 3771 ("CVRA").  (*Id*.)

Plaintiff alleges that six months after the above series of events, "a person involved with [the] group confessed" that her child was drugged and raped by multiple people and his images were put on a website.  (*Id*. at 4.)

As relief Plaintiff requests, *inter alia*, reimbursement for her costs initiating this action and compensation for the shame that she and her family have endured.

---

[1]    While the Complaint does not define CPEP, it is presumed that Plaintiff meant a Comprehensive Psychiatric Emergency Program.

## II.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e).  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[2]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## III.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

It is clear that Plaintiff's Complaint is frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). By way of example, the Complaint alleges that:

> When I was refused a police report on a local level, then reason because I was hacked on phone. The hacker threaten that they was raping my son inside of school and they had a creative way of giving shots to my son age 6 in the nurses office. I pannicked my son came home with changes of clothes and had feces in his underwear time the bus took an hour to get to my house and the school is 15 minute walk from my house I trusted the school and I went there and principal was out so I ended up talking to Mrs gosh and when I told her the story and I told her they said they were raping my 6 yo son in the nurse office

(Dkt. No. 1 at 2 [errors in original].)

A "[p]laintiff's beliefs—however strongly [s]he may hold them—are not facts." *Morren v. New York Univ.*, 20-CV-10802, 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) (citation

4

omitted), *report and recommendation adopted by*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022).

Plaintiff provides no factual basis for her assertions that she was the victim of a broad conspiracy

perpetrated by the school employees, phone hackers, law enforcement, and third parties. *See*

*Lefkowitz v. John Wiley & Sons, Inc.*, 13-CV-6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2,

2014) (complaint must set forth facts showing basis for information and belief); *Johnson v. Univ.*

*of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010) (even where necessary

evidence is in "exclusive control of the defendant, . . . plaintiff must still set forth the factual

basis for that belief").

Plaintiff fails to provide "any plausible support for [her] claims and [the allegations

contained in the Complaint] rise to the level of irrational." *Muzumala v. Unknown Federal*

*Agents*, 22-CV-7851, 2023 WL 5530308, at *4 (S.D.N.Y. Aug. 28, 2023) (citing *Livingston v.*

*Adirondack Bev. Co.*, 141 F.3d 434, 437 (2d Cir. 1998)). Instead, "Plaintiff's allegations amount

to conclusory claims and suspicions that are not plausible and must be dismissed as frivolous."

*Muzumala*, 2023 WL 5530308, at *4 (citing *Kraft v. City of New York*, 823 F. App'x 62, 64 (2d

Cir. 2020) (holding that "the district court did not err in *sua sponte* dismissing the complaint as

frivolous," based on the plaintiff's allegations that he had "been the subject of 24-hour, multi-

jurisdictional surveillance by federal 'fusion centers' and the New York State Intelligence

Center, which put a 'digital marker' on him in order to collect his personal data and harass

him."); *Khalil v. United States*, 17-CV-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018)

(dismissing complaint where "[p]laintiff allege[d] a broad conspiracy involving surveillance of

and interference with his life by the United States and various government actors" because his

allegations were "irrational and wholly incredible")).

As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety because it is frivolous. *See Uzamere v. Uzamere*, 22-CV-4876, 2022 WL 4451107, at *4 (E.D.N.Y. Sept. 23, 2022) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that even a well-pleaded complaint may be dismissed as factually frivolous "if the sufficiently well-pleaded facts are clearly baseless—that is, they are fanciful, fantastic, or delusional."); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.")) (dismissing as frivolous the plaintiff's complaint that "contains allegations of the delusional variety.").[3]

## IV.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem

---

[3]    In the alternative, the undersigned notes that the CVRA does not provide for a private cause of action. *Willingham v. Willingham*, 23-CV-0045, 2023 WL 2891236, at *2 (D. Idaho Apr. 11, 2023) (citing *Pawelek v. Paramount Studios Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) (no private cause of action is inherent in federal criminal statutes defining civil rights violations); *accord Bryant v. Quintero*, 01-CV-2721. 2001 WL 1018717, at *2 (N.D. Cal. 2001) (there is no private cause of action under Title 18, and no amendment can cure such a deficiency)) (noting that the "[p]etitioner also asserts claims under the Crime Victim Rights Act, 18 U.S.C. § 3771" but holding that "federal criminal statutes found in Title 18 of the United States Code, do not provide a basis for a private cause of action, but, rather, must be prosecuted by the Attorney General."); *see In re Wild*, 994 F.3d 1224, 1269 (11th Cir. 2021) ("we hold that the CVRA does not provide a private right of action authorizing crime victims to seek judicial enforcement of CVRA rights outside the confines of a preexisting proceeding."); *Bonds v. Virginia*, 21-CV-0363, 2021 WL 2827301, at *3 (W.D. Va. July 7, 2021) (citing 18 U.S.C. § 3771(d)(6)) ("[A]lthough the CVRA provides a mechanism for a crime victim to assert his rights, 18 U.S.C. § 3771(d)(3), it does not authorize any cause of action for damages.").

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[4]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claims against Defendants, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that she be permitted to leave to amend.

If Plaintiff chooses to file a second amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth

---

[4]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because it is frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[5]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the

---

[5]      The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[6]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a

Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN</u>**

**<u>DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: September 15, 2023
      Binghamton, New York

                                    Miroslav Lovric
                                    U.S. Magistrate Judge

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2022 WL 1666918
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Darwyn M. MORREN, Plaintiff,
v.
NEW YORK UNIVERSITY,
UCATS Local 3882, Defendants.

No. 20-CV-10802 (JPO) (OTW)
|
Signed 04/29/2022

**Attorneys and Law Firms**

Darwyn M. Morren, Westbury, NY, Pro Se.

Jessica Rose Schild, Robert Mossman Tucker, Ogletree
Deakins, New York, NY, for Defendant New York University.

Gregory Ainsley, Robert T. Reilly, Serge Ambroise,
Ambroise Law, Rachel Sonia Paster, Cohen, Weiss and Simon
LLP, New York, NY, for Defendant Ucats Local 3882.

### REPORT AND RECOMMENDATION

ONA T. WANG, United States Magistrate Judge:

**\*1 To the Honorable J. PAUL OETKEN, United States
District Judge:**

### I. INTRODUCTION

Plaintiff Darwyn M. Morren brings this action against the
defendants, New York University ("NYU"), and UCATS
Local 3882 ("UCATS"). (ECF 2). Plaintiff alleges that: (1)
Defendants discriminated against Plaintiff on the basis of race
and national origin under Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 1981, the New York City Human
Rights Law ("NYCHRL"), and the New York State Human
Rights Law ("NYSHRL"); (2) Defendants discriminated
against Plaintiff under the Americans with Disabilities Act
("ADA"), the NYCHRL, and the NYSHRL; (3) Defendants
violated the Family and Medical Leave Act of 1993; (4)
NYU breached a contract by terminating him; (5) UCATS
breached the Collective Bargaining Agreement ("CBA") with
NYU by failing to submit grievances on his behalf; (6)
UCATS breached their duty of fair representation to Plaintiff
(ECF 2, ECF 25); (7) Defendants conspired to deprive

Plaintiff of equal protection under 42 U.S.C. § 1985 (ECF
25); (8) Defendants violated Plaintiff's Civil Rights under
Civil Rights Law § 79-n (ECF 25); and (9) negligent
infliction of emotional distress against both Defendants. (ECF
25). Plaintiff seeks "compensatory damages in the sum of
$100,000,000 [f]or emotional and psychological distress.
[P]lus any punitive damages which is exclusive of the
$100,000,000 demand." (Am. Compl. 6).

### II. PROCEDURAL HISTORY

Plaintiff filed a Charge with the U.S. Equal Employment
Opportunity Commission ("EEOC") on August 25, 2020.
(ECF 2). Plaintiff alleges that he received his Rights of
Notice to Sue from the EEOC, dated September 21, 2020, on
September 28, 2020. (ECF 2).

On December 18, 2020, Plaintiff filed his *pro se* Complaint
against Defendants NYU and UCATS. (ECF 2). The
Honorable John P. Cronan referred this case to me for General
Pretrial Management and Dispositive Motion on April 14,
2021. [1] (ECF 15). Plaintiff filed his First Amended Complaint
on June 4, 2021, which adds additional details, but no
additional claims. (ECF 25 (hereinafter "Am. Compl.")). On
June 9, 2021, the parties agreed to a briefing schedule for
Defendants' motions to dismiss the Amended Complaint.
(ECF 29, 33). Plaintiff requested a 31-day extension of
the briefing schedule because of health concerns, which I
granted on July 7, 2021. (ECF 37, 38). The day Defendants'
submissions were due (August 9, 2021), Plaintiff attempted
to amend his First Amended Complaint, without the Court's
leave and without Defendants' consent. (ECF 40, 43). I denied
this request as untimely. [2] (ECF 43).

Defendants filed their respective Motions to Dismiss on
August 9, 2021, in accordance with the amended briefing
schedule. (ECF 46, 48). Ten days later, Plaintiff sought
another extension to file his opposition, which I granted. [3]
(ECF 55, 60). Plaintiff filed his opposition on October 7,
2021, and Defendants filed their replies on October 28, 2021.
(ECF 65, 68, 70).

### III. FACTUAL BACKGROUND [4]

**\*2** Plaintiff identifies as an "Afro-Caribbean male (black/
[A]frican descent), of Trinidadian [n]ational [o]rigin" with
ADHD. (Am. Compl. 22). [5] He began working at NYU's
Bobst Library in November 2016 as an "ADRSS" (Access

Delivery Resource Sharing Services) assistant. (Am. Compl. at 22). His job responsibilities included "various administrative tasks in the library, including checking out, shelving, unshelving, and stacking books; creating and managing patrons' accounts; working in the course reserves section amongst other responsibilities." (Am. Compl. 23 at ¶ 1). Upon starting work, Plaintiff joined UCATS, where Linda Wambaugh was his union representative. (Am. Compl. 23 at ¶ 2). NYU terminated Plaintiff's employment effective on December 13, 2019. (Am. Compl. 33 at ¶ 49).

### *1. Plaintiff is Assigned a Less Convenient Work Schedule.*

Plaintiff reported to several individuals when he worked at NYU. (Am. Compl. at 23 ¶ 1). His immediate supervisor was Patricia Warrington. (Am. Compl. 23 at ¶ 1). Plaintiff and Warrington both reported to the circulation manager, Deborah Caesar, who was later replaced by Frances Rodriguez. (Am. Compl. 23 at ¶ 1).

In December 2016, Plaintiff met with "management" [6] and was told that he "exceeded expectations" in performance and attendance. (Am. Compl. 23 at ¶ 3). At this meeting, Plaintiff complained that two coworkers were "affecting teamwork/ morale," and were "ma[king] [the workplace] a hostile work environment." [7] (Am. Compl. 23 at ¶ 3). "Management" responded by telling Plaintiff, "don't worry about it, and just worry about yourself." [8] (Am. Compl. 23 at ¶ 3).

Around December 2016 or January 2017, Gary Speizale, Plaintiff's coworker, complained about the shift schedule. (Am. Compl. 23 at ¶ 4). Plaintiff alleges that, as a result, Plaintiff's schedule was changed so that he no longer had consecutive days off, while his coworkers, including Speizale, did. (Am. Compl. 23 at ¶ 4). Plaintiff complained to Warrington, Caesar, and Rodriguez that the new schedule was unfair, but "they" told Plaintiff that the schedule was based on seniority, and Plaintiff had the "least amount of seniority" among his coworkers because he was "the most recent hire." (Am. Compl. 23 at ¶ 4). Plaintiff complained to Wambaugh about the schedule, explaining that he was not the most recent hire, but she also said that Speizale was senior to Plaintiff. [9] (Am. Compl. 23–24 at ¶ 4). The Union did not file a grievance on Plaintiff's behalf. [10] (Am. Compl. 24 at ¶ 4).

### *2. Plaintiff is Reprimanded for Taking a Previously-Scheduled Trip to a "Religious Festival."*

**\*3** Plaintiff told his employer "[b]efore [he] [s]tarted employment" in November 2016 that he had plans to attend an annual "Cultural and Religious Festival/carnival [sic]" in Trinidad. (Am. Compl. 24 at ¶ 6). Before he began working, Plaintiff alleges that he was told that he could attend this event, and that he would be paid during his absence. [11] (Am. Compl. 24 at ¶ 6). Then, in February 2017, days before attending the "Cultural and Religious Festival/carnival in Trinidad," "they" told Plaintiff that he would not be paid for the time off he was taking. [12] (Am. Compl. 24 at ¶ 6). Plaintiff went to the festival, but "was accused of misusing sick time" and upon his return, was told that he would be terminated. (Am. Compl. 24 at ¶ 8). "[Plaintiff] explained that [he] was only doing what Rodriguez told [him] to do, and that in any event, [he] had a doctor's note." (Am. Compl. 24 at ¶ 8). Ultimately, Plaintiff was not "disciplined." (Am. Compl. 24 at ¶ 8).

Plaintiff also alleges that in July 2019, he requested time off for his vacation to Trinidad in February 2020, which Rodriguez denied. (Am. Compl. 15). Plaintiff alleges that Caesar had approved Plaintiff's request the past three years (which is inconsistent with his earlier allegations). (Am. Compl. 15). Plaintiff halved the vacation days he initially requested and later cancelled his flight because with fewer days, the cost was higher. (Am. Compl. 15).

### *3. Plaintiff's Probation is Extended.*

In February 2017, Plaintiff complained to NYU and UCATS "that [his] probation period had been extended." (Am. Compl. 24 at ¶ 7). Caeser and Rodriguez told Plaintiff that the extension was because of his "performance issues." (Am. Compl. 24 at ¶ 7). Plaintiff was unaware of any performance issues because he had allegedly been told "numerous of times [sic] that [he] performed [his] job duties beyond expectations and [his] attendance was perfect, unlike others on probation and ... their probation wasn't extended." (Am. Compl. 24 at ¶ 7). Plaintiff also complained about his "coworkers not getting along with one another" at this time. (Am. Compl. 24 at ¶ 7). In response, Rodriguez told Plaintiff, "You don't fit the culture here, You have to fit the culture, you got another chance, you better not mess it up this time around." (Am. Compl. 24

at ¶ 7). Plaintiff alleges that at the time, Warrington added, "Why don't you just go back to Trinidad to live since you['re] always complaining about what we do here?" (Am. Compl. 15). When Plaintiff told Wambaugh about this interaction, she told him that "the Employer would have fired [him]," and only had not because Plaintiff "had ADHD, [and] they did not want any complaints."[13] (Am. Compl. 24 at ¶ 7). Plaintiff ultimately completed his probationary period in April 2017. (Am. Compl. 24 at ¶ 7).

### 4. Plaintiff Grows Increasingly Suspicious of His Coworkers and Others.

**\*4** Plaintiff alleges that one to two months into his employment (in December 2016 or January 2017), Plaintiff "complained numerous times about coworkers making false statements and claims in order to get [him] fired and sabotage [his probation]." (Am. Compl. 24 at ¶ 5). Between 2017 and 2018, Plaintiff "repeatedly complained to Caesar that Rodriguez" was trying to get him "disciplined or fired." (Am. Compl. 24 at ¶ 8). Caesar's response was that Plaintiff should "not worry about it." (Am. Compl. 24 at ¶ 8). Plaintiff does not state who else, if anyone, tried to get him fired or what statements Rodriguez or others made.

On three occasions between late 2018 and April 1, 2019, Plaintiff complained to Rodriguez and Caesar that "some full-time coworkers seemed to be manipulating students and student-workers to do illegal things, who worked in the library, to look at [him] and treat [him] in a different or suspicious way." (Am. Compl. 25 at ¶¶ 10–12). Plaintiff also complained about Chris Crowe, a Union Representative (who also allegedly lived with Speizale), engaging in this behavior. (Am. Compl. 25 at ¶ 11). Plaintiff further complained that on multiple occasions he was being "stalked" by coworkers and students, and mistreated by students, staff, and professors. (Am. Compl. 25 at ¶ 13). This included allegations that: (1) "students came into the library and pointed and laughed at [Plaintiff]"; (2) students "were recording [Plaintiff]"; and (3) a student bumped into him and another student recorded the incident, "almost as if to catch [Plaintiff] doing something to the student who bumped [him]." (Am. Compl. 25 at ¶ 13). Plaintiff verbally reiterated these complaints to Rodriguez and Caesar for the next two months. (Am. Compl. 25 at ¶ 14). Rodriguez and Caesar did not escalate the complaints; rather, Caesar called Plaintiff "paranoid." (Am. Compl. 25 at ¶ 14). Plaintiff also complained to Wambaugh, who told Plaintiff that there was "no grievance[s] that could be filed

about [his] coworkers, students, and professors doing this to [him]." (Am. Compl. 25 at ¶ 14).

At some unspecified time, Plaintiff alleges that he complained to Wambaugh about his coworkers stalking him, sabotaging his work, and making derogatory comments to him. In response, Wambaugh allegedly said, "they just don't like you" and "they don't have to be nice to you." (Am. Compl. 9). Wambaugh did not file a grievance about Plaintiff's complaint. (Am. Compl. 9).

Plaintiff filed formal written complaints about the above actions in June and July 2019 to Rodriguez and Caesar, which complaints were then forwarded to Human Resources ("HR"). (Am. Compl. 25–26 at ¶ 15). Plaintiff did not feel comfortable discussing the matter with HR, however, because he "believed[d] that management was involved in the mistreatment." (Am. Compl. 26 at ¶ 15). Around this time, Plaintiff also complained to Wambaugh that: (1) a new student coworker was stalking Plaintiff; and (2) Caesar was dating a coworker who was harassing Plaintiff.[14] (Am. Compl. 26 at ¶¶ 16, 17). Wambaugh said that the Union could not file a grievance about the stalking, and that the Union and NYU knew about Caesar's relationship, but "there was nothing that could be done." (Am. Compl. 26 at ¶¶ 16, 17). A few weeks later, Rodriguez took over Caesar's role as circulation manager and Caesar began working in HR. (Am. Compl. 26 at ¶ 18).

"At around the same time," Plaintiff alleges "that [his] electronic devices and personal, NYU email accounts and other accounts had been hacked by the Employer."[15] (Am. Compl. 26 at ¶ 19). Plaintiff believes he was hacked because on one occasion Plaintiff could not log into his NYU email, and on another occasion, he "learned that an NYU VPN had been created with [his] work ID and password" when he was not at work. (Am. Compl. 26 at ¶ 19).

**\*5** After moving apartments in July 2019, Plaintiff alleges that NYU was sending people to stalk his whereabouts.[16] (Am. Compl. 26–27 at ¶ 20). In response to Plaintiff's complaints about this behavior, Warrington told Plaintiff "that [he] was paranoid," and Wambaugh "asked [Plaintiff] what this had to do with the Union." (Am. Compl. 27 at ¶ 20). Wambaugh did not file a grievance. (Am. Compl. 27 at ¶ 20). Plaintiff alleges, however, that after he complained about the stalking, "the Employer changed [his] address in its system back to [his] old address in the Bronx" even though he "never gave them [his] Queens address, but [he] ha[s] mailings from

the Union [a]nd NYU with [his] Queens [a]ddress." (Am. Compl. 27 at ¶ 21).

At some unspecified time, Plaintiff told Rodriguez that he was having sleeping issues. (Am. Compl. 28 at ¶ 26). Plaintiff then alleges that in July or August 2019, Rodriguez recommended that Plaintiff receive treatment from his psychiatrist regarding his sleeping issues. [17] (Am. Compl. 38 at ¶ 72).

### 5. Plaintiff Arrives at Work Late and Takes Time Off.

On September 30, 2019, Rodriguez told Plaintiff that he noticed Plaintiff had been "late a couple times" and warned Plaintiff that if it continued he would be "disciplined." (Am. Compl. 27 at ¶ 23). Plaintiff responded that he "always got to the desk on time, as per [his] schedule, to deal with library patrons," but Rodriguez said that "didn't matter." (Am. Compl. 27 at ¶ 23). Plaintiff told Rodriguez "that other employees had more late arrivals than [he] did, [and] were not disciplined," but Rodriguez "told [Plaintiff] not to worry about other workers." (Am. Compl. 27 at ¶ 23). Plaintiff expressed to Rodriguez that he was "going through a lot," including that he was being stalked to and from work, his devices were being hacked, and he was "traumatized by the harassment at work." [18] (Am. Compl. 27 at ¶ 23). Rodriguez suggested that Plaintiff apply for FMLA leave. [19] (Am. Compl. 27 at ¶ 23). Plaintiff alleges that he applied for FMLA leave in early October 2019. (Am. Compl. 28 at ¶ 25).

At another unspecified time, Plaintiff received "troubling texts" from a number he believes was "pretending to be someone else in [his] contacts." (Am. Compl. 28 at ¶ 26). The texts made "derogatory statement[s], [20] "question[ed]" whether Plaintiff was actually sick, and "stat[ed] that [his] meds are the reason [he] can't get any sleep." (Am. Compl. 28 at ¶ 26). Plaintiff intimates that Rodriguez is the unidentified sender because he told Rodriguez he was not getting any sleep "because of the ongoing harassment from NYU." (Am. Compl. 28 at ¶ 26).

**\*6** In early October 2019, Plaintiff took some sick days. (Am. Compl. 28 at ¶ 27). On October 12, 2019, Plaintiff's coworker, Freddie Olivia, approached Plaintiff, "put [him] in a chokehold from behind," and asked him where he had been the past few days. [21] (Am. Compl. 28 at ¶ 27). Plaintiff told Olivia that he was "concerned" that he was being harassed at work, and also complained that his "work

in the Course Reserve Department ... was not being used effectively" because no one would "ever take the books outof [sic] barely." (Am. Compl. 28 at ¶ 27). Plaintiff does not describe what his "work in the Course Reserve Department" entails.

In the days following this interaction, Plaintiff alleges that "faculty members came up to [him] on several occasions and nervously told [him] why they weren't using their Course Reserve items." (Am. Compl. 28 at ¶ 28). Plaintiff also alleges that items were showing up "on [his] account when [he] wasn't doing Course Reserve work." [22] (Am. Compl. 28 at ¶ 28).

### 6. Plaintiff is Suspended for Fighting at Work.

On November 1, 2019, Plaintiff alleges that Olivia was "staring over [his] shoulder and following [his] movements." (Am. Compl. 28–29 at ¶ 29). Plaintiff confronted Olivia about this behavior and Olivia responded by "aggressively trying to [i]ncite a fight [with Plaintiff] and [saying], 'So [w]hat's up?!' " (Am. Compl. 29 at ¶ 29). Plaintiff began to walk away when another coworker, Robert Jameson, ran toward Plaintiff and "grabbed and/or pushed [Plaintiff]." (Am. Compl. at 29 ¶ 29). Plaintiff claims to have self-recorded audio of this interaction. (Am. Compl. 29 at ¶ 31).

That same day, Plaintiff was working alongside Adjoa Walker, a student-worker. (Am. Compl. 29 at ¶ 30). Plaintiff repeatedly asked Walker to help him check out customers until Walker began crying. (Am. Compl. 29 at ¶ 30). Plaintiff asked whether Walker was okay, and "suspect[ed] that she was crying because she was torn between harassing and agitating [him], at the request of the Employer, and doing her job." (Am. Compl. 29 at ¶ 30). Later that day, Plaintiff was called to HR where he met with Katie O'Brien, the Assistant Director of HR, and Enrique Yanez, the Director of HR. [23] (Am. Compl. 29 at ¶ 31). The exact order of the following events is unclear:

- O'Brien and Yanez left the room during the meeting because a security guard asked to speak with Plaintiff alone. (Am. Compl. 29 at ¶ 31).

- Plaintiff told the security guard that "[he] had a legal right to union representation if they were going to discipline

[him], and that [he] didn't want to start the meeting" without representation. (Am. Compl. 29 at ¶ 31).

- When Plaintiff requested his Union Representative join the meeting, the meeting "was called to an end." (Am. Compl. 29 at ¶ 31).

- The security guard escorted Plaintiff out of the room. (Am. Compl. 29 at ¶ 31).

No grievance was filed by Wambaugh following this incident.[24] (Am. Compl. 29 at ¶ 32).

**\*7** Plaintiff then alleges a series of HR meetings involving Yanez, O'Brien, Rodriguez and possibly others, but does not coherently state the topic of each meeting or the events at each meeting. (Am. Compl. 30). On November 6, 2019, a meeting was scheduled between Plaintiff, Yanez, O'Brien, and a shop steward to discuss the November 1, 2019 incident with Jameson. (Am. Compl. 29–30 at ¶ 33). Plaintiff sent an audio file of the incident to those present. (Am. Compl. 30 at ¶ 33).

From November 6 to November 19, Plaintiff does not state whether he was working, suspended, or on unpaid leave. On November 14, 2019, Yanez and O'Brien asked to meet with Plaintiff because they "had new information on the case." (Am. Compl. 30 at ¶ 34). Plaintiff responded that he was not comfortable coming to the building because of the "[r]egular harassment [he] had been suffering from NYU", and that he "was under the weather[ ]." (Am. Compl. 30 at ¶ 34). On November 18, 2019, Plaintiff was called into a scheduled meeting via conference call with Wambaugh and O'Brien to discuss a complaint Rodriguez made about Plaintiff "ma[king]" Walker cry. (Am. Compl. 30 at ¶ 35). At the meeting, Plaintiff explained to O'Brien "that [he] just asked the student to help with the long line which is her job." (Am. Compl. 30 at ¶ 35). O'Brien reminded Plaintiff of the policy regarding how many patrons must be present for him to ask for help (which Plaintiff argued was incorrect). (Am. Comp. 30 at ¶ 35). Plaintiff additionally notes that "O'Brien stated that [Rodriguez] said she thinks [Plaintiff] felt guilty about what [he] did to the student, and labeled [his] concerns about the student as 'small talk.' " (Am. Compl. 30 at ¶ 35). At some point, O'Brien sent Plaintiff an email allowing him to return to work the next day. (Am. Compl. 30 at ¶ 36). In this email, Plaintiff was given a "final" warning.[25] (Am. Compl. 30 at ¶ 36). Plaintiff claims that aside from the warning about his attendance, "this is the only warning [he] had ever received." (Am. Compl. 30 at ¶ 36).

On November 19, 2019, Plaintiff returned to work. (Am. Compl. 30 at ¶ 37). Plaintiff "immediately" attended a meeting with O'Brien, Yanez, and Wambaugh at which O'Brien told Plaintiff that he was suspended for three days because [Plaintiff] exhibited threatening and violent behavior." [26] (Am. Compl. 30 at ¶ 36). Plaintiff does not clearly allege whether his suspension was because of the fight with Jameson or his interaction with Walker. (Am. Compl. 30 at ¶ 36). Wambaugh also informed O'Brien "that the Union was filing a grievance over [his] suspension." (Am. Compl. 30 at ¶ 38). The grievance concerned the November 19, 2019 suspension and the final written warning. HR notified Plaintiff on December 9, 2019 that "the November 19 grievance had been closed, and that the Employer was denying the grievance." (Am. Compl. 31 at ¶ 41). (ECF 49-2, Exhibit 2 (November 21, 2019 Step 2 Grievance) at 59).

### 7. *Plaintiff Suspects Additional Foul Play from Coworkers.*

On November 30, 2019, Plaintiff recognized an application ("app") on his phone that was also on his NYU work computer, although he claims that *he* never installed the app. (Am. Compl. 31 at ¶ 39). [27]

**\*8** On December 10, 2019, Plaintiff asked Warrington if he could leave early that day "because [he] wasn't feeling good as [he was] being harassed by [his] coworkers, who were stalking [him]." (Am. Compl. 31 at ¶ 43). Warrington said no. (Am. Compl. 31 at ¶ 43). Rodriguez then asked Plaintiff to attend a meeting with HR. (Am. Compl. 31 at ¶ 43). Plaintiff said he needed Wambaugh to represent him, and the meeting was rescheduled for the next day. (Am. Compl. 31 at ¶ 44). Plaintiff asked to reschedule to either a different time the next day, or to December 16. (Am. Compl. 31–32 at ¶ 44). Neither O'Brien, Yanez, nor Rodriguez responded to this request. (Am. Compl. 32 at ¶ 44).

### 8. *Plaintiff's Employment is Suspended at Least a Second Time, and then Terminated.*

Plaintiff does not clearly allege the order of the following events:

- On December 11, 2019, Plaintiff "saw some of the same suspicious Amazon IP addresses." [28] (Am. Compl. 32

at ¶ 47). Plaintiff alleges, however, that one of the "IP addresses" was "traceable to the Massachusetts Institute of Technology, which is an NYU partner [and that] (this IP hacked [Plaintiff's] personal email again on 5/21/20)." (Am. Compl. 32 at ¶ 47).

- At some point between December 10 and 12, 2019, Plaintiff was emailing "multiple parties" about "the harassment and retaliation that was ongoing" when Rodriguez approached Plaintiff and told him he could leave and would be paid for the rest of the time that he was scheduled to work. (Am. Compl. 32 at ¶ 45). Plaintiff again asked Rodriguez the time of the December 11 meeting.[29] (Am. Compl. 32 at ¶ 45). Rodriguez walked away and "about two minutes later [Plaintiff] heard her speaking by the entrance of the circulation Dept and use the words 'black man being aggressive.' " (Am. Compl. 32 at ¶ 45). Fifteen minutes later, two security guards and two NYPD officers arrived at the scene and stated that there was a complaint about Plaintiff "being aggressive, and trespassing." (Am. Compl. 32 at ¶ 45). Plaintiff responded that he worked there and that he was being harassed. (Am. Compl. 32 at ¶ 45). O'Brien cancelled the tentatively set December 11, 2019 HR meeting. (Am. Compl. 32 at ¶ 47).

- Plaintiff states that he was suspended because "the Employer knew, through its control of [his] devices, [he] discovered the Amazon web IP addresses logged into [his] personal and NYU email accounts." (Am. Compl. 32 at ¶ 47).

- Plaintiff asked Wambaugh "how [he] could be suspended without a meeting." (Am. Compl. 32 at ¶ 47).

On December 14, 2019, Plaintiff saw an email regarding his termination effective on December 13, 2019. (Am. Compl. 33 at ¶ 49). The email stated that "[Plaintiff] denied [a] meeting with management and HR ... and that [he] was aggressive and insubordinate ... which required the Employer to call the police to escort [him] out of the building." (Am. Compl. 33 at ¶ 49). Plaintiff alleges that "[his] suspension was converted to a termination because the Employer, having hacked [his] phone, knew that [he] had gone to the doctor to start FMLA leave, which would have given [him] job protection, and also went [to] a lawyer on December 12." (Am. Compl. 33 at ¶ 49).

### 9. Plaintiff Engaged in a Post-Termination Grievance Process.

On December 19, 2019, Plaintiff asked Wambaugh "how [he] could be terminated without even having the suspension meeting." (Am. Compl. 33 at ¶ 51). Wambaugh told Plaintiff that she would file a grievance about Plaintiff's suspension and termination.[30] (Am. Compl. 33 at ¶ 52). Plaintiff also asked Wambaugh to "file a grievance alleging ADHD discrimination," which Wambaugh said she would do. (Am. Compl. at 33 ¶ 51); (ECF 49-2, Exhibit 3 (January 16, 2020 Step 1 Grievance)). Plaintiff alleges that he "turned down" severance and unemployment benefits. (Am. Compl. 33 at ¶ 51).

**\*9** On December 20, 2019, Plaintiff reached out to Wambaugh about the status of his suspension and termination grievances. (Am. Compl. 33 at ¶ 52). Plaintiff requested a grievance be filed about the grievance process along with an ADHD discrimination grievance.[31] (Am. Compl. 34 at ¶¶ 51, 53, 57) On the same day, Peter Lanzo, a New York State United Teachers representative, was assigned to Plaintiff's case. (Am. Compl. 34 at ¶ 54). Plaintiff asked Lanzo to give him access to his NYU email records,[32] which Plaintiff was initially denied because he was "rightfully terminated." (Am. Compl. 34 at ¶ 53); (Am. Compl. 36 at ¶ 62). Lanzo responded that he would speak with NYU regarding the email account access. (Am. Compl. 36 at ¶ 62).

On January 6, 2020, Plaintiff informed Lanzo that the grievances UCATS filed were missing important information; on January 22, 2020, Plaintiff asked that they be corrected.[33] (Am. Compl. 34 at ¶ 56); (Am. Compl. 35 at ¶ 58). The grievances were amended to reflect this missing information[34] on January 23, 2020. (Am. Compl. 35 at ¶ 58).

In May 2020, Plaintiff spoke with Lanzo and Marc Laffer, Lanzo's supervisor, who assured Plaintiff that the grievances were filed on time. (Am. Compl. 36 at ¶ 64). Lanzo and Laffer suggested that Plaintiff start the grievance process without the emails. (Am. Compl. 36 at ¶ 64). Plaintiff does not plead any facts about the grievance process, its timing, or any other details. Plaintiff alleges that he had wanted to set up a meeting with "management," which Lanzo suggested was not a good idea. (Am. Compl. 36 at ¶ 64).

A few days later, Plaintiff received an email from O'Brien asking Plaintiff to confirm a grievance meeting that Lanzo had attempted to schedule. (Am. Compl. 36–37 at ¶ 65). Plaintiff declined the meeting because he did not want to move forward with the meeting without his emails. (Am. Compl. 37 at ¶ 65).

Around the end of May or beginning of June 2020, Plaintiff alleges that he emailed Lanzo alerting him that the grievances were filed late. (Am. Compl. 37 at ¶ 66). Plaintiff alleges that Lanzo said, "let's see if the employer notices." (Am. Compl. 37 at ¶ 66). Lanzo "took responsibility for the grievances being filed late." (Am. Compl. 37 at ¶ 66).

Plaintiff alleges that his suspension and termination grievances are still open and that the grievances he asked Wambaugh to file were never filed. (Am. Compl. 37 at ¶ 67).

### 10. Plaintiff's Other Factual Allegations

On or about September 30, 2019, Rodriguez suggested that Plaintiff take FMLA leave. (Am. Compl. 27 at ¶ 23). Plaintiff asked Rodriguez for instructions, and Rodriguez told Plaintiff that he needed "to get certification" from his medical provider. (Am. Compl. 27 at ¶ 23). Wambaugh told Plaintiff the same thing. (Am. Compl. 27 at ¶ 24). Plaintiff also alleges that both Rodriguez and Wambaugh incorrectly gave him FMLA instructions that applied to non-union employees. (Am. Compl. 28 at 17). Plaintiff alleges that he applied for FMLA leave through "Lincoln Financial" in early October, but did not hear anything back for several months. (Am. Compl. 29 at ¶ 25).

**\*10** On December 12, 2019, Plaintiff was "in the process" of pursuing FMLA leave and visited a health care provider. (Am. Compl. 32–33 at ¶ 48). Plaintiff mentions that he has a diagnosis of ADHD, but that the doctor also "wanted to include a diagnosis of insomnia and major depression," which Plaintiff avers he had "never been tested for or diagnosed with." (Am. Compl. 32–33 at ¶ 48). Plaintiff's medical provider said that he would send Plaintiff's diagnosis to the insurance company so that Plaintiff could pursue FMLA leave. (Am. Compl. 32–33 at ¶ 48). On or about December 24, 2019, Plaintiff called Lincoln Financial to see if they received his FMLA leave request, which they said they did not. (Am. Compl. 34 at ¶ 54).

On December 26, 2019, however, Lincoln Financial notified Plaintiff that his claim had been denied "because [he] was

no longer employed." [35] (Am. Compl. 34 at ¶ 54). Then in February 2020, Plaintiff "learned that Lincoln Financial ... without [his] permission, opened up another claim for [him], and approved a leave claim, which [he] wasn't qualified for or asked for ([i]nsurance fraud)." (Am. Compl. 35 at ¶ 61). Through his own research, Plaintiff "learned the FMLA instructions given to [him] by [NYU] and [UCATS] was [sic] in fact incorrect information, which was later confirmed by Lanzo." (Am. Compl. 36 at ¶ 61). Plaintiff confronted Lincoln Financial and NYU. Plaintiff alleges Lincoln Financial apologized; NYU never responded. [36] (Am. Compl. 36 at ¶ 61).

### 11. Plaintiff's Other Allegations of Stalking, Harassment, and Spying.

Plaintiff alleges that from April 2019 to February 4, 2020, several unidentified individuals had acted on Defendants' behalf to stalk and harass Plaintiff, but does not tie these allegations to any Defendants:

- On February 4, 2020, Plaintiff went to T-Mobile, where the representative helping him engaged in "unusual conversation" and had spent an hour setting up Plaintiff's phone when it should have only taken 10 minutes. (Am. Compl. 35 at ¶ 59).

  - During this interaction, a man with sunglasses standing across the street kept looking at Plaintiff, and got into his car when Plaintiff walked past him. (Am. Compl. 35 at ¶ 59).

- On February 5, 2020, Plaintiff's phone had "the same amazon.com [IP] addresses that were being used by [NYU] in [his] phone[.]" (Am. Compl. 35 at ¶ 59).

- On February 9, 2020, Plaintiff was at a store across from a different T-Mobile store where someone "follow[ed] ... and harass[ed]" him in the store, which other patrons allegedly noticed. (Am. Compl. 35 at ¶ 60).

- Plaintiff's landlord, Tevia Clarke, who is an NYU alumna, has "harass[ed] ... and agitat[ed]" Plaintiff from July 2019 to April 2020, by "hacking [Plaintiff's] electronic devices and taking and/or tampering with ... packages sent to [his] house ... calling [him] 'weird' or stating [he is] crazy ... [and] constantly trying to start arguments in the apartment to get a violent reaction out of [him]." (Am. Compl. 37 at ¶ 68).

*11  • Plaintiff alleges that one time he had not been receiving messages from Clarke and when he made her aware of this, "she pressed something on her phone and all of the text messages from her and other people, voicemails came thr[ough] at the exact same time." (Am. Compl. 37 at ¶ 68).

• On April 27, 2020, Plaintiff alleges "[he] saw Tevia Clarke Verizon IP address in [his] personal VPN account ... which is linked to [his] personal email address and is password protected." (Am. Compl. 37 at ¶ 68).

• Plaintiff alleges that Clarke is being bribed by Defendants to retaliate against him. (Am. Compl. 37 at ¶ 68). To support this allegation, Plaintiff notes that "[he] received mailings from the Union in May 2019 or June 2019, which had the Queens address on it, even though [he] did not move or change [his] address until mid July 2019." (Am. Compl. 37 at ¶ 68). Further, Plaintiff alleges Clarke gave Plaintiff's address to NYU UCATS. (Am. Compl. 37 at ¶ 68).

• Plaintiff alleges that "NYU has been contacting lawyers to either not take or diminish [his] case at[ ]least since December 2019 ... since filing [his] case on 12/18/20." (Am. Compl. 38 at ¶ 74).

• On January 31, 2021, Plaintiff discovered text messages from Cindy Morren (his sister and an NYU student) and his mother, in which Cindy was texting from Plaintiff's phone number through iMessage and "pretending to be [Plaintiff] and pretending to have a good relationship with [his] mother." (Am. Compl. at 38). Plaintiff alleges that his sister got his Apple ID through his ex-girlfriend, who also worked at NYU. (Am. Compl. 38 at ¶ 74).

• Plaintiff alleges that on June 3, 2021, his mother "called mental help officials." (Am. Compl. 39 at ¶ 74). Plaintiff alleges that "[he] was not mentally ill and that she was just trying to harass [him] and deter [him] from making further complaints ...." (Am. Compl. 39 at ¶ 74).

• Plaintiff alleges in 2019-2020, Defendant NYU contacted his psychiatrist Dr. Rudoy "to diminish [his] complaints, and prescribe [him] wrong medication for illness he or his other doctors never diagnosed [Plaintiff] with." (Am. Compl. 39 at ¶ 74). Plaintiff was prescribed the medication in August 2019 following his complaints to Defendant NYU. (Am. Compl. 39 at ¶ 74). According to

Plaintiff, Dr. Rudoy did not document any of Plaintiff's complaints and did not tell Plaintiff why. (Am. Compl. 39 at ¶ 74).

## IV. DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to sufficiently "raise a right to relief above the speculative level," it must be grounded on factual allegations. *Twombly*, 550 U.S. at 555. A claim grounded on mere suspicion is not enough to meet this standard. *Id.* " '[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citation omitted, alteration in original).

*12  As relevant here, a court is "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Therefore, this Court must interpret Plaintiff's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal citations omitted). "However, the liberal treatment afforded to *pro se* litigants does not excuse a *pro se* party 'from compliance with relevant rules of procedural and substantive law.' " *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (quoting *Maisonet v. Metro Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009)). Accordingly, the Court may not "invent factual allegations that a plaintiff has not pled." *Daly v. Westchester Cty. Bd. of Legislators*, No. 19-CV-4642 (PMH), 2021 WL 229672, at *4 (S.D.N.Y. Jan. 22, 2021) (alterations and quotations omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). As mentioned, however, the Court may consider facts raised in opposition papers, depending on the circumstances. *Davila v. Lang,* 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

In reaching its conclusions, the Court is aware that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, and the Court has not considered them here. *Hughes v. Ester Co.,* 930 F.Supp. 2d 439, 461–62 (E.D.N.Y. 2013) ("[I]ssues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss....").

### *1. Breach of Duty of Fair Representation*

Plaintiff brings a "hybrid" claim against UCATS and NYU under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and based on a union's duty of fair representation, arising from the National Labor Relations Act ("NLRA"). Liberally construed, Plaintiff alleges that NYU violated the CBA when it discriminated against him, and that UCATS breached its duty of fair representation when it: (1) failed to file grievances on Plaintiff's behalf, and (2) misled Plaintiff about the deadline for filing grievances. (Am. Compl. 12–14).

#### i. Applicable Law

The duty of fair representation arises out of a union's status as the exclusive bargaining agent with the employer. *See* *Greco v. Commc'ns Workers of Am., Loc.,* 1104, 824 F.Supp. 2d 351, 356 (E.D.N.Y. 2011). Accordingly, the duty requires a labor organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998) (quotation marks omitted).

It is well established that an employee can sue their employer for breach of a CBA. *Smith v. Evening News Ass'n.,* 371 U.S. 195 (1962). Usually, an employee must exhaust

any grievance or arbitration process set forth in the CBA before bringing suit. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652 (1965). In *DelCostello v. International Brotherhood of Teamsters,* however, the Supreme Court recognized that such an exhaustion requirement may result in an "unacceptable injustice" when the union representing the employee in these processes acts in "a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello,* 462 U.S. at 164. In such a case, an employee can sue both the employer and the union, regardless of the grievance or arbitration proceeding. *Id.* In doing so, the plaintiff must allege that the union has breached its duty of fair representation and that the employer has breached its CBA. *Id.* A plaintiff has six months from the time he "knew or should have known of the breach of the duty of fair representation" to bring suit. *See* *White v. White Rose Food a Div. of DiGiorgio Corp.,* 128 F.3d 110, 114 (2d Cir. 1997).

**\*13** Breach of duty of fair representation is difficult to plead because "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents," subject to good faith and honesty in exercising its discretion. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953). A breach of this duty only occurs if a union's conduct toward a member of the collective bargaining unit are "shown to have arbitrarily, discriminatorily, or in bad faith foreclosed the employee's opportunities to vindicate such wrong through the grievance process." *Castro v. New York City Bd. of Educ.,* 777 F. Supp. 1113, 1118 (S.D.N.Y.), No. 89-CV-4114 (KTD), *aff'd,* 923 F.2d 844 (2d Cir. 1990). "[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation." *United Steelworkers of America, AFL-CIO-CLC v. Rawson,* 495 U.S. 362, 372–73 (1990).

To support allegations of discrimination in a breach of duty of fair representation claim, a plaintiff must plead facts that show a defendant's conduct was motivated by discriminatory animus. *Rivera v. Communications Workers of America,* No. 16-CV-1673, 2017 WL 4338754, at *5 (E.D.N.Y. Sept. 29, 2017). A plaintiff must then allege "a causal connection between the union's wrongful conduct and their injuries." *White v. White Rose Food, a Div. of DiGiorgio Corp.,* 237 F.3d 174, 179 (quoting *Spellata,* 156 F.3d at 126).

#### ii. Plaintiff's Fair Representation Claims are Time-Barred.

As an initial matter, all of Plaintiff's claims for breach of duty of fair representation are time-barred. This Circuit has established that a plaintiff's duty of fair representation claim accrues "at the latest" by the date of his National Labor Relations Board ("NLRB") charge. *Kawowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003) ("His bringing of the NLRB charge establishes that he had actual knowledge of the breach by [the date of his NLRB filing]. It is beyond dispute that his claim had accrued by that date.").

Plaintiff filed an unfair labor practice ("ULP") charge with the NLRB on **June 15, 2020**, alleging that UCATS failed to fairly represent him. (See ECF 65, Ex. 5 (Plaintiff's filed EEOC Charge)). As a matter of law, Plaintiff knew or should have known of UCATS's alleged breach of the duty of fair representation when he filed his ULP. Plaintiff filed his Complaint on **December 18, 2020**. Thus, any alleged breaches that Plaintiff knew or should have known about before **June 18, 2020** (6 months prior to the date of this action), are time-barred. Plaintiff does not argue that this statute of limitations should be tolled. Accordingly, his claim of a breach of duty of fair representation stemming from his June 15, 2020 NLRB charge should be dismissed. *See Kawowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003).[37] Accordingly, I recommend that Plaintiff's claims against UCATS for breach of their duty of fair representation be dismissed. Additionally, because Plaintiff's claims against UCATS are "inextricably interdependent" with his claim against NYU, I recommend that Plaintiff's claim for breach of the CBA against NYU also be dismissed. *See DelCostello*, 462 U.S. at 164; *Tomney v. Int'l Ctr. For Disabled*, 357 F.Supp. 2d 721, 738 ("The Union did not violate its DFR, and so Tomney's claims against [the employer] for violating the CBA are dismissed.").

#### 2. Breach of Contract

**\*14** Reading the Complaint most liberally, Plaintiff may be seeking to bring additional breach of contract claim(s) against NYU and UCATS. Plaintiff makes references to the "Union" or "Ucats" contract, but does not include any other facts about, or even references to, any other contracts. (Am. Compl. 20) ("WRONGFUL TERMINATION PURUSANT TO ... BREACH OF CONTRACT"); (Am. Compl. 24 at ¶ 5) ("I complained about potential contract violations to the Employer and to the Union ...."); (Am. Compl. 23 at ¶ 4) ("which it states in the Ucats Contract"); (Am. Compl. at 14) ("The Union Contract does not contain a clear and unmistakable waiver of my right to sue.").

NYU is correct that any state-law breach of contract claim Plaintiff brings against NYU is preempted by Section 301 of the LMRA. (ECF 46 at 20). Although the LMRA does not preempt claims for a violation of the CBA, if Plaintiff is claiming that Defendants violated the CBA, those claims are time barred. *See* Section V. *Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F.Supp.2d 383, 395 (S.D.N.Y. 2002). Similarly, to the extent Plaintiff complains about UCATS's failure to pursue grievances on his behalf, these would be claims for breach of fair duty of representation, addressed in Section 1, *supra*.

#### 3. Employment Discrimination

To state a claim for employment discrimination, a plaintiff must allege that: (i) he is a member of a protected class, (ii) he was qualified for his position, (iii) he suffered an adverse employment action ("AEA"), and (iv) there are facts suggesting an inference of discriminatory motivation.[38] *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Specifically, Plaintiff must show either that he "suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or ... demonstrat[e] that harassment on one or more of these bases amounted to a hostile work environment." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (citing *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001)). Similarly, to state a claim for disability discrimination, Plaintiff would need to plausibly allege that (1) Defendants are subject to the relevant statutes; (2) he suffers from a disability within the meaning of the statute; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.[39]

**\*15** To survive a motion to dismiss, a plaintiff must allege facts that plausibly suggest that the employer discriminated against him *because of* his race, national origin, or disability.

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). The evidence necessary to satisfy this initial burden is "minimal and *de minimis*." *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (internal quotations omitted). The burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions. *Id.* If defendant does so, the burden shifts back to the plaintiff to demonstrate that defendant's reason is merely a pretext for discrimination or retaliation. *Id.* In other words, the Court only evaluates "pretext" if Plaintiff adequately alleges a *prima facie* case.

Evaluating his claims under those laws, Plaintiff fails to allege that he experienced any adverse employment action under circumstances that give rise to an inference of discrimination. (Am. Compl. 13). Plaintiff complains that: (1) he was unable to take vacations or sick leave for "religious/cultural event[s]" in Trinidad; (2) his seniority was miscalculated resulting in a less convenient schedule; (3) he experienced a "hostile work environment" because he had been subjected to derogatory comments, was "mocked daily," "ostracized," harassed, cyberstalked, and stalked; (4) NYU "retaliated" against Plaintiff for complaining about these events by "wrongfully suspend[ing] [him] twice" and eventually terminating his employment; and (5) NYU failed to provide him reasonable accommodations for his ADHD (Am. Compl. 14). I evaluate all of Plaintiff's claims for discrimination on the basis of race or national origin first, and then turn to Plaintiff's disability discrimination claim.

### i. Plaintiff Does not Allege Discrimination on the Basis of Race or National Origin

I evaluate Plaintiff's first two discrimination claims under a disparate treatment analysis, and in the alternative, a disparate impact analysis. *See Gonzalez v. Police Com'r Bratton*, 2000 WL 1191558, at *20 (S.D.N.Y. Aug. 22, 2000) (acknowledging hostile work environment and disparate treatment claims are "distinct" from one another and "require[ ] different pleading and proof"); *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 617 n.10 (S.D.N.Y. 2009) ("[I]t bears emphasis that the analysis of adverse employment actions involving disparate treatment claims is different [from] that involving retaliation claims."). Notwithstanding the differences between disparate treatment and retaliation, "[t]he burden of proof in retaliation claims follows the general disparate treatment analysis in *McDonnell Douglas Corp.* ..." *Shah v. New York State Dep't of Civ. Serv.*, 341 F. App'x 670, 673 (2d Cir. 2009).

### a. Plaintiff does not Allege Defendants Had a Full Prohibition on Vacation or Restricted his Sick Leave.

Plaintiff alleges that in 2017 or 2018, Plaintiff went to a "Religious/Cultural" festival in Trinidad. Rodriguez instructed Plaintiff to use sick leave during his absence and said Plaintiff would not need a doctor's note. (Am. Compl. 10 & 24 at ¶ 8). Plaintiff alleges that he complained that his coworker, Speziale was treated differently because he "gets religious requests approved" while he did not. Upon return, Caesar told Plaintiff NYU "will have to let [him] go if [he doesn't] have a doctor's note" for the time he was out. (Am. Compl. 10). Ultimately, Plaintiff reported that he was sick, produced a doctor's note, and therefore was not terminated for taking his trip[s] to Trinidad. (Am. Compl. 10).

**\*16** Although it is unclear whether Plaintiff actually lost or was denied vacation time, a loss or denial of vacation time "does not generally rise to the level of an adverse employment action." *Chukwuka v. City of New York*, 795 F.Supp. 2d 256, 261 (S.D.N.Y. 2011); *see Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 272 (E.D.N.Y. 2019). Courts in this District have declined to recognize an employer's denial of a vacation request as an adverse employment action where this denial did not constitute a "complete bar" on a plaintiff's taking vacation. *Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) ("The particular timing of a vacation is not so disruptive that it crosses the line from 'mere inconvenience' to 'materially adverse' employment action."); *see also Roff v. Low Surgical*

*& Med. Supply, Inc.*, No. CV-033655 (SJF) (JMA), 2004 WL 5544995, at *4 (E.D.N.Y. May 11, 2004). Plaintiff here did not allege that NYU completely forbade him from taking vacation; indeed, Plaintiff states at one point that NYU approved Plaintiff's request to go to Trinidad for this event three years in a row. (Am. Compl. 15).

### b. Plaintiff's Seniority Miscalculation Does Not Result in an AEA.

Plaintiff alleges that he was given a worse work schedule than his coworkers, who were less senior to him. (Am. Compl. 23 at ¶ 4). Plaintiff states that both NYU supervisors and UCATS's representative Wambaugh believe Speizale to be senior to Plaintiff, which Plaintiff disputed. Loss of "seniority" in this context is not an adverse employment action because unfavorable work schedules are not an adverse employment action, and Plaintiff alleges no other ramifications or less favorable treatment because of the seniority miscalculation. *See* *Antonmarchi v. Consol. Edison Co. of New York*, No. 03-CV-7735, 2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008) (finding denial of transfer to position with better hours was not an adverse employment action) *aff'd*, 514 F. App'x 33 (2d Cir. 2013); *Daniels v. Connecticut*, No. 12-CV-0093, 2015 WL 4886455, at *8 (D. Conn. Aug. 17, 2015) ("[Plaintiff] also suggests that the ... position is a 'preferred working schedule for officers,' but an unfavorable schedule is not an adverse employment action.") (citing *Albuja v. Nat'l Broad. Co. Universal*, 851 F.Supp. 2d 599, 608 (S.D.N.Y. 2012)).

### c. None of the Alleged Adverse Employment Actions Give Rise to an Inference of Discrimination.

Even if changes to Plaintiff's vacation time and work schedule were considered adverse employment actions, Plaintiff still does not state a claim for employment discrimination because none of Plaintiff's alleged AEAs —including suspension, termination, and hostile work environment—occurred under circumstances that give rise to an inference in discrimination.[40] "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). "In order to make such a showing, the plaintiff must compare herself to employees

who are 'similarly situated in all material respects.' " *Id.* "Employment characteristics which can support a finding that two employees are 'similarly situated' include 'similarities in education, seniority, performance, and specific work duties.' " *Sollazzo v. Just Salad Rest.*, No. 15-CV-252 (ER), 2018 WL 1273661, at *6 (S.D.N.Y. Mar. 5, 2018) (quoting *DeJesus v. Starr Tech. Risks Agency, Inc.*, No. 03-CV-1298 (RJH), 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004)). A plaintiff also "must show that [his] co-employees were subject to the same performance evaluation and discipline standards." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). While "all material respects" varies, a plaintiff must typically "plead comparators' relevant experience and length of employment in order to raise an inference of discrimination." *LeeHim v. New York City Dep't of Educ.*, No. 17-CV-3838 (PAE), 2017 WL 5634128, at *6 (S.D.N.Y. Nov. 21, 2017).

*17 The Amended Complaint lacks factual allegations to support an infererence that similarly situated non-Black or non-disabled employees were treated differently from Plaintiff. The only comparator Plaintiff alleges is Gary Speizale, who he alleges is white, less senior to him, and gets his holiday vacation time approved. (Am. Compl. 10). Plaintiff conclusorily alleges that Speizale is "similarly situated" to him in "all material respects," and does not identify any other comparator. *Wegmann v. Young Adult Inst., Inc.*, No. 15-CV-3815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016) (finding plaintiff was not similarly situated to comparators where she did not plead facts about their positions, responsibilities, tenure, or experiences). Accordingly, the Complaint's conclusory allegations of differential treatment are insufficient to plausibly suggest an inference of discrimination with regard to work schedule or denial of travel to Trinidad. *See id.*; *see also* *Burgis v. N.Y. City Dep't of Sanitation*, 798 F.3d 63, 68–69 (2d Cir. 2015); *Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp. 3d 396, 408 (S.D.N.Y. 2014).

Similarly, Plaintiff does not allege discrimination under a disparate impact theory. To do so, Plaintiff must allege that his employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(k)(1)(A)(i)*. This requires: (i) identifying a specific employment practice or policy; (ii) demonstrate that a disparity exists; and (iii)

alleging a causal relationship between the two. 🚩 *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012). To demonstrate a disparity sufficient to withstand a motion to dismiss, plaintiffs must allege statistical evidence or allege that a "neutral employment practice denied equal employment opportunities to a small number of members of a protected class compared to similarly-situated colleagues." *Gordon v. City of N.Y.*, No. 14-CV-6115 (JPO) (JCF), 2016 WL 4618969, at \*23 (S.D.N.Y. Sept. 2, 2016).

Plaintiff has not identified any employment practice or policy related to vacation time or his work schedule.[41] *See*

🚩 *African Am. Legal Defense Fund v. N.Y. State Dep't of Educ.*, 8 F.Supp. 2d 330 (S.D.N.Y. 1998) (dismissing Title VII disparate impact claim where plaintiff failed to allege any statistics to support allegations that facially neutral hold-harmless provisions had a disparate impact on minorities). Accordingly, I recommend Plaintiff's race and national origin discrimination claims be dismissed.

ii. Plaintiff Fails to Allege a Hostile Work Environment.

To state a claim for a hostile work environment under § 1983, § 1981, Title VII, or the NYSHRL, a plaintiff must allege facts plausibly demonstrating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." 🚩 *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted). To plead an abusive working environment, a plaintiff must satisfy "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." 🚩 *Id.* at 321 (internal quotation marks omitted). This requires that the incidents be "more than episodic." *Id.* A court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or

even decency." 🚩 *Bermudez v. City of New York*, 783 F.Supp. 2d 560, 579 (S.D.N.Y. 2011) (citation omitted).

**\*18** The standards for a union's liability for hostile work environment are different from those governing the liability of an employer. Under Title VII, a union may not "cause or attempt to cause an employer to discriminate against an individual in violation of this section." 🚩 42 U.S.C. § 2000e–2(c)(3). To plead union liability, Plaintiff must plead (1) the existence of a hostile work environment, (2) that a union representative caused or attempted to cause the hostile work environment, and (3) that the representative's conduct may properly be imputed to the union.[42] *See* 🚩 *Agosto v. Correctional Officers Benevolent Ass'n*, 107 F.Supp. 2d 294, 307 (S.D.N.Y. 2000); *Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-CV-6278 (VEC), 2018 WL 4625768, at \*21–22 (S.D.N.Y. Sept. 26, 2018).

*a. Plaintiff Does Not Adequately Allege that NYU or UCATS Stalked or Harassed Plaintiff, or Hacked Plaintiff's Electronic Devices.*

Plaintiff's allegations that he was stalked, harassed, and hacked are conclusory. *Gench v. HostGator.com LLC*, No. 14-CV-3592 (RA) (GWG), 2015 WL 3757120, at \*10 (S.D.N.Y. June 17, 2015), *R&R adopted*, No. 14-CV-3592 RA, 2015 WL 4579147 (S.D.N.Y. July 29, 2015) (finding plaintiff's allegations that certain conduct "allow[ed] 'criminal host(s) to steal the site content' ... 'manipulate users' web activity," "lose control of her email account, and [ ] be subject to email spam" conclusory). Plaintiff's allegations here—that numerous people, including T-Mobile employees; Plaintiff's roommate/landlord, psychiatrist, sister, or mother; and/or strangers on the subway were hired by Defendants to stalk and harass him—are wholly unsupported by facts and do not state a claim for a hostile work environment.[43] The Court understands that Plaintiff describes these instances in support of his *belief* that there is an ongoing conspiracy against Plaintiff to create a hostile work environment for him. Plaintiff's beliefs—however strongly he may hold them—are not facts. *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic' or 'delusional.' ") (quoting

🚩 *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)); *Tessema v. Env't Prot. Agency*, No. 1:20-CV-9700 (MKV), 2021 WL

2666855, at *4 (S.D.N.Y. June 29, 2021), *appeal dismissed sub nom. Tessema v. United States Env't Prot. Agency,* No. 21-1729, 2021 WL 6427942 (2d Cir. Dec. 16, 2021) (finding that Plaintiff's claims that the EPA has tortured him and subjected him to human experiments involving exposure to hazardous pollutants were "fanciful" in nature and "clearly warrants dismissal"); *Mercier v. Mercier,* No. 07-CV-0523, 2007 WL 1582267, at *1–2 (N.D.N.Y. May 25, 2007) (Kahn, J.); *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss."); *see also Banks v. Mental Health Clinicians,* No. 11–CV–7848, 2012 WL 6201259, at *5 (S.D.N.Y. Dec. 11, 2012) (granting motion to dismiss where the plaintiff alleged that the defendants were deliberately indifferent when they exacerbated the plaintiff's suicide risk by transferring him to a special unit for mentally ill inmates, finding, *inter alia,* that Plaintiff did not state facts that supported his bald allegation that Plaintiffs acted with "punitive intentions") (internal quotation marks omitted).

**\*19**  Additionally, Plaintiff has failed to allege sufficient facts from which one could reasonably conclude that the alleged hostile conduct was *because of* Plaintiff's membership in protected classes. *See Wilson v. JPMorgan Chase Bank, N.A.,* No. 20-CV-4558 (JMF), 2021 WL 918770, at *5 (S.D.N.Y. Mar. 10, 2021).

*b. Plaintiff Does Not Adequately Allege Discriminatory Comments That Rise to a Hostile Work Environment.*

Plaintiff also does not plead sufficient facts to support a hostile work environment claim against NYU (and therefore UCATS) arising from allegedly discriminatory comments because the conduct about which Plaintiff complains is not severe or pervasive. [44] *See Benzinger v. Lukoil Pan Americas, LLC,* 447 F. Supp. 3d at 99. Plaintiff alleges he was subject to several derogatory statements and was "ostracized," stalked, harassed, and hacked at work. (Am. Compl. 20). *See also* Am. Compl. 22 ("was labeled a criminal, threatening, violent, aggressive, unprofessional all which are racial sterotypes[sic]/profiles for person(s) of [A]frican descent"); Am. Compl. 20 ("Management and my coworkers would say things like 'why don't you go back to your country since you keep complaining', or 'you don't fit the culture here.' "); Am. Compl. 24 at ¶ 7 (" 'You don't fit the culture here, You have to fit the culture, you got another chance,

you better not mess it up this time around' "); Am. Compl. 15 ("Why don't you just go back to Trinidad to live since [you're] always complaining about what we do here."); Am. Compl. 32 at ¶ 45 (Rodriguez used the words 'black man being aggressive' "); Am. Compl. 11 ("subjected to numerous disparaging comments from 4/2/19 to 12/10/19").

Because Plaintiff's Complaint is at times vague and repetitive, I cannot discern for many of the claims the speaker, context, or frequency of these comments. Accordingly, Plaintiff fails to state a claim for hostile work environment based on the comments identified here.

iii. <u>Plaintiff Does not Adequately Allege Retaliation.</u>

To establish a claim of retaliation under § 1981, Title VII and the NYSHRL, Plaintiff must allege facts that plausibly suggest that: (i) he participated in protected activity, (ii) he suffered an adverse employment action, and (iii) there was a causal connection between his engaging in the protected activity and the adverse employment action. [45] *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010); *see also Wilson,* 2021 U.S. Dist. LEXIS 45132, at *13.

**\*20**  Liberally construing the Complaint, Plaintiff claims that he was suspended and fired for seeking to file grievances (or otherwise complaining) about mistreatment in the workplace. *See* Am. Compl. 12 ("[Plaintiff has] complained about a hostile workplace, Harassment, Retaliation, Discrimination and my complaints were either wrongfully labeled as meritless or I was deceitfully told they were filed when they were not."). [46]  It is well settled that filing "[a] union grievance can constitute protected activity if it concerns discrimination, but union grievances that complain of matters other than discrimination do not constitute protected activity for purposes of Title VII." *Chidume v. Greenburgh-N. Castle Union Free Sch. Dist.,* No. 18-CV-01790 (PMH), 2020 WL 2131771, at *4 (S.D.N.Y. May 4, 2020) (quoting *Mack v. Paris Maint. Co. Inc.,* No. 14-CV-6955, 2016 WL 8650461, at *9 (S.D.N.Y. Feb. 22, 2016), *R&R adopted,* No. 14-CV-6955, 2016 WL 1071030 (S.D.N.Y. Mar. 17, 2016)).

Plaintiff does not adequately allege that he engaged in protected activity. Although Plaintiff alleges that coworkers made racially charged comments to him, Plaintiff does not provide facts about when he sought to file a grievance for this conduct, or for any other **discriminatory conduct** that

he endured based on his race or national origin. Although Plaintiff sought to file many grievances with UCATS, in the majority of the alleged instances, Plaintiff only states that UCATS did not or could not file a grievance—not that he sought to file a grievance because of discrimination on the basis of race or national origin. (Am. Compl. 24 at ¶ 4); (Am. Compl. 25 at ¶ 14); (Am. Compl. 9); (Am. Compl. 26 at ¶ 17); (Am. Compl. 27 at ¶ 20); (Am. Compl. at 30 ¶ 32). Only on three occasions does Plaintiff plead slightly more. Specifically, Plaintiff alleges that: (1) Defendants "maliciously misled [him] into thinking the grievances were filed when they weren't" so that both parties could avoid a breach of a duty of fair representation claim (Am. Compl. 9); (2) Wambaugh "did not file a grievance for racial discrimination, which *she should have known* to [do because] she had the audio evidence" of the fight between Plaintiff, Olivia, and Jameson (Am. Compl. 29 at ¶ 32) (emphasis added); and (3) UCATS violated their duty of fair representation in May 2020 because some grievances UCATS allegedly filed were "not actual grievances and lack sig[ ]natures by all parties." (ECF 68). Plaintiff does not allege any facts that suggest UCATS's decision not to file a grievance for Plaintiff was motivated by discriminatory animus.[47] Accordingly, I recommend that Plaintiff's Retaliation claim be dismissed.

#### iv. Plaintiff's Disability Discrimination Claim Fails.

Plaintiff does not adequately plead disability discrimination under the ADA, the NYCHRL or the NYSHRL. Plaintiff does not allege that the Defendants are subject to the ADA, that he was in fact disabled under the ADA, or that he suffered an adverse employment action under circumstances giving rise to an inference of disability discrimination.[48]

**\*21** A person has a "disability" within the meaning of the ADA if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment;" or if he is (C) "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i). Plaintiff has not alleged that his ADHD has impacted him in any way.[49]

Moreover, Plaintiff does not plead any facts that support his allegation that Defendants denied him any reasonable accommodation. To state a claim for failure to accommodate, "a plaintiff must establish that (1) he is a person with a disability; (2) defendant had notice of his disability; (3) plaintiff could perform the essential functions of the job at issue with reasonable accommodation; and (4) defendant refused to make such accommodations." Howard v. United Parcel Serv., Inc., 101 F. Supp. 3d 343, 352 (S.D.N.Y. 2015), *aff'd sub nom. Howard v. United Parcel Serv.*, 648 F. App'x 38 (2d Cir. 2016). Here, Plaintiff merely restates the legal standard that employer generally have a duty to accommodate employees with disabilities and checks a box that the Defendants denied him accommodations. (Am. Compl. 5, 14). This is conclusory and insufficient.

Although Plaintiff's November 21, 2019 Step 2 Grievance states that he "was discriminated against based on having a disability," his supporting reasons include that he was "stalked, bullied, harassed[ ], character defamed, privacy breached," among other things. (ECF 49-3 at 3). As addressed above, these allegations are fanciful and should be dismissed. Gallop, 642 F.3d at 368 (2d Cir. 2011). Accordingly, I recommend that the Court dismiss Plaintiff's disability discrimination claims.

#### 4. FMLA Interference

Plaintiff believes that UCATS and NYU violated the FMLA because they denied his initial claim, but then approved an FMLA application for Plaintiff that Plaintiff claims he never made. These allegations do not support a claim for FMLA violations against either defendant. To state an FMLA interference claim, Plaintiff must establish: (i) that he is an eligible employee under the FMLA; (ii) that the defendant is an employer as defined by the FMLA; (iii) that he was entitled to take leave under the FMLA; (iv) that he gave adequate notice to the defendant of his intention to take leave; **and** (v) that he was denied benefits to which he was entitled under the FMLA. *See* Graziadio v. Culinary Institute of America, 817 F.3d 415, 424 (2d Cir. 2016).

Plaintiff's claim against UCATS fails because Plaintiff has not (and cannot) allege that UCATS is an "employer" within the meaning of the FMLA. *Eckert v. United Auto. Workers Loc. Union 897*, No. 04-CV-538S, 2005 WL 2126295, at \*9 (W.D.N.Y. Sept. 1, 2005) (concluding that a

union that represented plaintiff's interests and acted on his behalf "relative to [Plaintiff's] employment" is "precisely the opposite" of an employer under the FMLA); *see also Latella v. Nat'l Passenger R.R. Corp. (Amtrak),* 94 F. Supp. 2d 186, 190 (D. Conn. 1999) (rejecting an argument for breach of duty of fair representation against a union for "not advising him of his rights under the FMLA" because "no private right of action exists for a violation of the FMLA's notice requirements against an employer or a union."). Accordingly, Plaintiff's FMLA claim is not applicable against UCATS, and I recommend that it be dismissed.

**\*22** Plaintiff's claim against NYU also fails. Plaintiff does not allege any facts that identify how NYU interfered with his FMLA rights or resulted in a denial of Plaintiff's benefits. Plaintiff alleges that he applied for FMLA leave in early October 2019, after a September 30, 2019 conversation between Plaintiff and Rodriguez. (Am. Compl. 28 at ¶¶ 23, 25). Plaintiff also alleges that on December 12, 2019 he visited a doctor in "pursu[it] [of] FMLA leave." (Am. Compl. 32–33 at ¶ 48). Plaintiff does not allege whether the FMLA leave he was pursuing in December 2019 was a part of the same request or not. Plaintiff's operative complaint is devoid of any allegations regarding his FMLA process for the two months immediately preceding Plaintiff's termination. NYU terminated Plaintiff's employment on December 13, 2019. (Am. Compl. 33 at ¶ 49). At most, Plaintiff alleges that Rodriguez "deliberately" gave him "the wrong Fmla [sic] request instructions ... which interfered with [his] FMLA rights entitlement." (Am. Compl. 17).

NYU is correct, however, that failure to provide notice of the terms of the FMLA, "where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act," is insufficient to state a cause of action. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 162 (2d Cir. 1999). Plaintiff makes the conclusory statement that Rodriguez's and Wambaugh's errors "interfered with [his] FMLA rights entitlement," but does not allege how being provided non-union employee instructions affected Plaintiff's pursuit of FMLA leave when he knew that he was a union employee. (Am. Compl. 17). Because of conflicting and incoherent allegations, I cannot discern from Plaintiff's pleadings: (1) what Rodriguez's FMLA instructions were; (2) when he requested FMLA leave; or (3) any October 2019 request was approved or denied. Accordingly, I recommend that Plaintiff's FMLA interference claim be dismissed.

**5. Conspiracy under 🗀 Section 1985(3).**

Plaintiff fails to assert a 🗀 § 1985 claim against both defendants for the same reason: he fails to allege any facts that suggest either defendant acted in agreement with anyone, or acted with an intent to deprive Plaintiff of any of his rights under the law. As stated in Section VII, Plaintiff also does not allege that any party acted with discriminatory animus.

To state a claim under 🗀 § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons to the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privileges of a citizen of the United States." *Trautz v. Weisman,* 819 F. Supp. 282, 290 (S.D.N.Y. 1993). The conspiracy must further be "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' " *Cuoco v. U.S. Bureau of Prisons,* No. 98-CV-9009 (WHP), 2001 WL 167694, at \*3 (S.D.N.Y. Feb. 16, 2001) (quoting 🗀 *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999). The claim must be pleaded with "at least some degree of particularity ... [to] establish the existence of an agreement among the defendants to deprive [the plaintiff] of his constitutional rights." 🗀 *Gropper v. Fine Arts Housing, Inc.,* 12 F. Supp. 3d 664, 671 (S.D.N.Y. 2014). This requires "establish[ing] the existence of an agreement among the defendants to deprive [the plaintiff] of his constitutional rights." *Id.* (quoting *Roach,* at 147 (2d Cir. 1999). An explicit agreement is not necessary but may be shown through a "general conspiratorial objective" among the participants in the conspiracy. 🗀 *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 427 (2d Cir. 1999) (quoting 🗀 *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990)). A plaintiff must further allege that the defendant's "overt acts ... were reasonably related to the promotion of the claimed conspiracy." *Id.* (quoting 🗀 *Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir. 1999)). In making this claim, a plaintiff must adequately allege "the most fundamental aspect of a conspiracy: an agreement." 🗀 *Gropper,* 12 F. Supp. 3d at 671. The Court will not simply infer an agreement from violations of the laws because that would essentially "permit every civil rights case to become

a civil rights conspiracy case, which the Second Circuit has rejected in analogous contexts." *Id.* at 671.

**\*23** Plaintiff alleges that he complained to UCATS about the hostile work environment he experienced, but UCATS told him his concerns were meritless, or told Plaintiff they filed grievances when they had not. (Am. Compl. 9, 12). Defendants' "dishonesty," Plaintiff alleges, is a "clear sign of a conspiracy to deprive [him] of [his] rights." (Am. Compl. 12). While Plaintiff was upset by UCATS's responses that they either would not or could not file a grievance for some of the events about which Plaintiff complained, Plaintiff does not allege sufficient facts to withstand a motion to dismiss. Plaintiff fails to state any facts with particularity that suggest UCATS and NYU employees worked *in concert* (either totally within UCATS, totally within NYU, or some combination of UCATS and NYU) to *deprive* Plaintiff of his constitutional rights.

Plaintiff's allegations are limited to conclusory statements. Complaints that state "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Maack v. Wyckoff Heights Med. Ctr.*, No. 15-CV-3951 (ER), 2017 WL 4011395, at \*8, (S.D.N.Y. Sept. 11, 2017); *see also Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic.' or 'delusional.' ") (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Evidence to support a conspiracy may be "when, where or with whom an unlawful agreement was made" or "any specific acts performed in furtherance of the alleged unlawful agreement. *Almonte v. Florio*, No. 02-CV-6722 (SAS), 2004 WL 60306, at \*5 (S.D.N.Y. Jan. 13, 2004). None of that is present. Plaintiff does not adequately allege that UCATS or NYU acted in furtherance of a conspiracy to deprive him of his constitutional rights because his allegations are conclusory. As discussed, the Complaint does not adequately allege that NYU or UCATS's actions were motivated by a racial animus. *Blue v. City of New York*, No. 14-CV-7836 (VSB), 2018 WL 1136613, at \*16 (S.D.N.Y. Mar. 1, 2018). Accordingly, I recommend that Plaintiff's § 1985 claim against UCATS be dismissed.

### 6. Civil Rights Violation Under Civil Rights Law Section 79-n.

Civil Rights Law § 79-n creates a cause of action against anyone who "summons a police officer ... without reason to suspect a violation of the penal law, any other criminal conduct, or an imminent threat to a person or property," "because of a belief or perception regarding," *inter alia*, race or disability. Civil Rights Law § 79-n. To state a claim under CRL § 79-n, a plaintiff must allege that a defendant (1) intentionally committed, (2) damage to a person or property, (3) 'because of a belief or perception regarding [that person's] ... [protected characteristic].' " *Le v. Triza Elec. Corp.*, No. 19-CV-5134 (ARR) (PK), 2020 WL 1274977, at \*3 (E.D.N.Y. Mar. 16, 2020). Section 79-n does not provide a remedy "where existing discrimination laws already provide protection, such as in employment ... decisions. Unless a plaintiff could show bias-related violence or intimidation in the hiring ... decision ... [they] could not bring an action under this new section." *Governor's Approval Memorandum*, No. 7, ch. 227, filed with Assembly Bill Number 529.

Plaintiff's Section 79-n claim fails because of the availability of other statutory remedies in the employment context. Even if it did not, Plaintiff would still fail to state a claim. Plaintiff alleges that Rodriguez "falsely summoned" an NYPD officer "to arrest [him] and or escort [him] out for criminal trespassing" as he was writing an email about the hostile work environment he was experiencing. (Am. Compl. 12 at ¶ 6). Rodriguez is not a defendant in this action.[50] Even if this behavior extended to NYU, Plaintiff does not assert that NYU intentionally threatened Plaintiff *because of* his protected characteristics.[51] As best as I can discern, Plaintiff alleges that he was suspended on or before December 11, 2019 because NYU knew, "through its control of [Plaintiff's] devices," that Plaintiff knew NYU hacked his devices. (Am. Compl. 32 at ¶ 47). By Plaintiff's own account, his employment was suspended, and his supervisor suggested he leave. When he did not leave, he overheard Rodriguez say, "black man being aggressive" and NYPD officers appeared to "arrest [him] for criminally trespassing."[52]

### 7. *Negligent Infliction of Emotional Distress.*

**\*24**  Plaintiff brings claims against both NYU and UCATS for negligent infliction of emotional distress ("NIED"). Plaintiff alleges that he experienced emotional distress because of the "employment discrimination" he experienced at NYU. (Am. Compl. 13).

As an initial matter, Plaintiff's NIED claim against NYU is barred by the exclusivity provisions of the New York Workers' Compensation Law ("WCL"). *See* N.Y. Work. Comp. Law § 11. The WCL provides the exclusive remedy for an employee who is injured "by the negligence or wrong of another in the same employ." *Rivera v. Baccarat, Inc.*, No. 95-CIV-9478 (MBM), 1996 WL 251850, at \*4, (S.D.N.Y. May 10, 1996). WCL precludes Plaintiff from recovering from claims of NIED that arise out of workplace conduct. *D'Annunzio v. Ayken, Inc.*, 25 F. Supp. 3d 281, 294 (E.D.N.Y. 2014); *Stevens v. New York*, 691 F. Supp. 2d 392, 397 (S.D.N.Y. 2009); *see* Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997) (finding negligence claim for hostile work environment barred by exclusivity of workers compensation). While the Court is sympathetic to Plaintiff's distress, Plaintiff's allegations arise out of alleged workplace conduct. Accordingly, the claim is barred by the WCL and must be dismissed.

Plaintiff's NIED claim against UCATS also fails. First, while Plaintiff makes this claim against "NYU **and UCATS**" (Am. Compl. 25 at 13), he does not provide facts that support any allegation that UCATS as an entity or a UCATS employee did anything that would support a claim for negligent infliction of emotional distress. (Am. Compl. 25 at 13–14). While Plaintiff alleges that he was being stalked and is experienced a hostile work environment (allegations that appear to be targeted at NYU, not UCATS), these allegations are conclusory. *See Goodrich v. Long Island R.R. Co.*, No. 10 Civ. 2195 (SAS), 2010 WL 2473593, at \*1, (S.D.N.Y. June 17, 2010) (following Plaintiff's coworker posting on a public bulletin board his positive HIV status, Plaintiff withdrew his NIED claim, conceding he " 'was never placed in fear of imminent bodily harm, nor did he ever suffer any physical impact' "). To the extent Plaintiff is alleging UCATS acted negligently by failing to file grievances for Plaintiff, as discussed, UCATS has wide discretion in those decisions, and Plaintiff does not adequately allege that they abused their discretion. *See supra* Section 1.

### V. Conclusion and Recommendation

For the reasons stated above, I recommend that the Motion be **GRANTED**. Although *pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated," *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002), amendment may be denied upon a finding of futility. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271–72 (2d Cir. 1996). I do not recommend that Plaintiff be given leave to amend his conspiracy claim because his allegations, even liberally construed, are still fanciful and factually frivolous. *See Kraemer v. City of New York*, No. 19-CV-6671 (VEC), 2020 WL 1974204, at \*4 (S.D.N.Y. Apr. 24, 2020) ("While the Court has no basis to doubt the sincerity of Plaintiff's beliefs, the allegations exhibit a level of delusional paranoia that makes the continuation of this vexatious litigation an unjustified expenditure of public and private resources.") (finding Plaintiff's allegations of coordinated efforts by police, AMC movie theaters, T-Mobile, Starbucks, NYU and others to "surveil, mock, and harass Plaintiff" frivolous). Similarly, because Plaintiff's fair representation claims are time-barred, leave to amend would also be futile.

**\*25**  Because Plaintiff is proceeding *pro se*, however, I recommend that he be given **one final opportunity** to replead only his **Discrimination Claims for Hostile Work Environment and Retaliation, and his FMLA Claims,** and that he be directed to file a proposed second amended complaint within 30 days of Your Honor's final disposition of this motion. To the greatest extent possible, Plaintiff's amended complaint must allege <u>facts</u> to support that his claims, including:

(1) Identifying the NYU or UCATS employees, if any, who engaged in the specific discriminatory conduct; and

(2) Identifying and describing the specific acts by the NYU or UCATS employees that constitute discriminatory acts.

### VI. Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served.

Such objections, and any responses to objections, shall be addressed to the Honorable J. Paul Oetken, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Oetken.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Plaintiff

wishes to review, but does not have access to, cases cited herein that are reported on Westlaw, she should request copies from the Defendants. *See* *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Defendants are directed to serve a copy of this Report and Recommendation on Plaintiff by mail and file proof of service on the docket within seven days. Alternatively, if circumstances related to the ongoing COVID-19 pandemic prevents their service, they must file a letter on the docket instead.

**All Citations**

Slip Copy, 2022 WL 1666918

---

### Footnotes

1    The case was reassigned earlier this year to Judge Oetken.

2    I reviewed ECF 40, Plaintiff's Proposed Second Amended Complaint, and do not find that Plaintiff's Proposed Second Amended Complaint alleges additional facts that would have been material to this Report & Recommendation.

3    Plaintiff alleged on October 7, 2021 that NYU was continuing to retaliate against him by sending the "answer to [his] complaint to his old address." (ECF 65 at 1). NYU filed an Affirmation and a "true and correct copy of the confirmation that Defendant's Motion to Dismiss papers were delivered" to Plaintiff's address listed on the docket. (ECF 71).

4    For purposes of deciding the Motion, the Court accepts as true all facts alleged by Plaintiff, *see* *Krassner v. 2nd Ave Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), and draws all inferences in the Plaintiff's favor. *See* *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

5    To reduce the likelihood of confusion, all citations to the Amended Complaint reference PDF page numbers, ranging from one (1) to thirty-nine (39) (the entirety of ECF 25 in one PDF). Plaintiff did not include paragraph numbers until page 22. Accordingly, citations to the Amended Complaint on or after page 22 will also include paragraph citations.

6    Plaintiff does not identify or define "management," nor does he identify subsequent work reviews at which he was informed he was performing adequately.

7    Plaintiff does not identify these individuals nor does he detail any incidents in connection with this complaint.

8    Management also asked that Plaintiff not wear his coat/jacket while working, even though he was cold, because the security guard had complained about the way "it looked" on Plaintiff. (Am. Compl. 23 at ¶ 3).

9    Plaintiff does not allege whether Speizale was in fact senior to him, nor does he allege why his supervisors and union representative thought Speizale was senior to Plaintiff. Plaintiff also does not allege facts about other similarly situated coworkers and their work schedules.

10   Article 34 of the CBA governs the Grievance and Arbitration Procedure with UCATS. (ECF 49-1, CBA at 27).

11   Plaintiff alleges extremely similar facts occurred in 2018. (Am. Compl. 10). It is unclear whether these facts are for the same event in 2017 and Plaintiff misstates the date, or whether this is a different event entirely.

     Plaintiff alleges that in 2018, he asked Rodriguez for unpaid time off to attend a "religious holiday," and his request was denied. (Am. Compl. 10). Plaintiff "brought up the fact that Gary Speizale gets his religious requests approved" but Plaintiff was told "to worry about [himself]." (Am. Compl. 10). Plaintiff alleges that Rodriguez told Plaintiff to "call out sick for those days," and told Plaintiff that he would not need a doctor's note. (Am. Compl. 10). Plaintiff followed Rodriguez's suggestion and upon returning, Caesar told Plaintiff that he had abused sick days and NYU "will have to let [him] go if [he doesn't] have a doctor's note." (Am. Compl. 10). Plaintiff alleges that he reported he was sick, produced a doctor's note, and therefore was not terminated. (Am. Compl. 10).

     Plaintiff does not allege any additional facts about what Rodriguez advised him to do regarding his sick time and the festival, what doctor he saw, or what sickness, if any, he experienced.

12   Plaintiff does not identify "they," or whether "they" were supervisors.

13   Plaintiff does not provide any facts about when or to whom he disclosed his ADHD disability. He also does not plead the original length of his probationary period.

14   Plaintiff does not identify any of these individuals.

15   Plaintiff alleges that he "heard people in the library discussing videos [he] had watched, or things on [his] social media [ac]counts and email accounts and electronic devices, that no one but [Plaintiff] should have knowledge of." (Am. Compl. 26 at ¶ 19). He also alleges that "Amazon web IP addresses [were] popping up on [his] phone and laptop that weren't there before." (Am. Compl. 26 at ¶ 19).

16   Plaintiff said that "[he] noticed people on the train looking at [him], standing next to [him], raising their phones at [him] as if they were recording [him], stomping in front of [him], and engaging in other activity that [he] viewed as an effort to agitate [him]. [He] suspected that the Employer was involved in this because it was the same behavior [he] was experiencing at the library [a]nd only started after [his] initial complaints." (Am. Compl. 27 at ¶ 20).

17   Plaintiff alleges "[t]he meds the psychiatrist prescribed [Plaintiff], shouldn't have been prescribed, as [he] wasn't diagnosed with any of the ailments [that mandated] the medication." (Am. Compl. 38 at ¶ 72). Plaintiff further alleges that the psychiatrist had omitted all of his "confessions of the stalking from NYU" and other misconduct by Defendants but Plaintiff does not say why the psychiatrist did this. (Am. Compl. 38 at ¶ 72).

18   Plaintiff does not identify or describe specific acts that he believes constitute harassment other than the stalking and hacking events, and specific arguments and altercations, described in this section and Section III.11.

19   At this meeting, Rodriguez asked Plaintiff to sign "the verbal warning," but Plaintiff said he wanted to speak with a Union representative first. (Am. Compl. 27 at ¶ 23). Rodriguez then "shredded the verbal warning she asked [Plaintiff] to sign." (Am. Compl. 27 at ¶ 23).

20    The text messages stated "[N _ _ _ S] are not even human no more" and accused Plaintiff of being "involved in 'a whole lot of gang shit.' " (Am. Compl. 28 at ¶ 26).

21    Plaintiff thinks NYU "was using Olivia to spy on [him] to see why [he] wasn't at work." (Am. Compl. 28 at ¶ 27).

22    Plaintiff further "suspect[ed] that this was all part of the Employer's campaign to retaliate against [him]." (Am. Compl. 28 at ¶ 28). Plaintiff does not explain the nature of his "Course Reserve" work, the relevance or significance of his conversations with these faculty members, or how these alleged facts constitute retaliation.

23    Plaintiff does not "recall if they told [him] that it was because of the incident with Freddy [O]livia, but in the event they didn't, [he] understood that was what the meeting was about, because it was the only incident that happened that day." (Am. Compl. 29 at ¶ 31).

24    Plaintiff alleges that Wambaugh "should have known to file a grievance" for "racial discrimination," for him, since she "had the audio evidence" of the fight with Jameson. (Am. Compl. at 29 ¶ 32).

25    Plaintiff does not explain what the "final warning" threatened. Plaintiff states that he told O'Brian that "[he] didn't understand how [he] was getting a final warning and suspension, when [he] had audio of the incident which proves that [he] didn't threaten or touch anyone." (Am. Compl. 30 at ¶¶ 36–38).

26    It is unclear whether this was a new suspension, or a continuation of another suspension.

27    Plaintiff additionally notes that on December 9, 2019, his "phone(s) had been installed as a modems [sic]," (Am. Compl. 31 at ¶ 41), but Plaintiff does not explain what this means.

28    Plaintiff does not explain, and the Court cannot discern, the significance of the "suspicious Amazon IP addresses."

29    Plaintiff does not allege the purpose of the December 11 meeting with the Union and Human Resources. This meeting was previously scheduled for December 10, 2021, where Plaintiff requested Human Resources be present, and Human Resources rescheduled it. (Am. Compl. 31 at ¶ 43).

30    Plaintiff also asked Wambaugh about "the final warning grievance, and the Employer's failure to respond to the information request in time." (Am. Compl. 33 at ¶ 51). Plaintiff does not clarify what information he sought and whether any information was conveyed by Wambaugh.

31    Plaintiff alleges that Wambaugh told Plaintiff that she was not going to file the ADHD discrimination grievance and that she had not known that Plaintiff had ADHD. (Am. Compl. 33–34 at ¶ 52).

32    Plaintiff wanted his NYU emails because he sought proof that Defendants were being dishonest about the grievances they filed. (Am. Compl. 13). Plaintiff suggests that Defendants withheld his emails so that he "wouldn't have proof during arbitration." (Am. Compl. 13).

33    Plaintiff also had intended to file a grievance about the grievance process, which Lanzo allowed, but Wambaugh said was not done. (Am. Compl. 33 at ¶ 51); (Am. Compl. 34 at ¶ 57).

34    The amended document shows the provision violated changed from "Article 5 – No Discrimination and all other Articles that apply" to "Article 37 – Health and Safety." The nature of grievance was further amended from "Mr. Morren was discriminated against based on having a disability" to "The university failed in its obligation and policy's [sic] to maintain a healthy and safe working conditions [sic]." (ECF 49-2, Exhibit 3 (January 16, 2020 Step 1 Grievance) (Amended 1/22/2020 Step 1 Grievance)).

35    Plaintiff further alleges:

"[T]hey said I requested FMLA while I was employed, they said that was false. Lincoln Financial also informed me that their point of contact at the Employer was Enrique Yanez. NYU, between the 24th and the 26th, how did they get in contact with Enrique Yanez, At home on his personal time? [A]nd, I note that Yanez is not the person who handles leave claims at NYU. As such, I believe that my claim was denied because the Employer is retaliating against me." (Am. Compl. 34 at ¶ 54).

36    Plaintiff then alleges:

"I believe that the approval of the short-term claim was part of the Employer's retaliation against me. I also believe that the Employer was engaged in a conspiracy with my doctor to retaliate against me, which led to medical malpractice, doctoring of my medical records, and prescribing me with medication for ailments I was not diagnosed with, which causes suicide and other life threatening diseases. Maliciously [i]nciting a suicide attempt is attempted murder." (Am. Compl. 36 at ¶ 61).

37    Allegations about Wambaugh allegedly giving Plaintiff the "incorrect FMLA leave Request Instructions (Am. Compl. at 6), and UCATS' failure to file a grievance—all of which occurred before June 18, 2020 (Am. Compl. at ¶¶ 7, 9, 14–16, 17, 20, 37–38, 40, 41) (Am. Compl. at 6)—are time barred.

Even if these claims were not time-barred, however, Plaintiff has not alleged any facts that support his claim that UCATS declined to file grievances on Plaintiff's request *with an improper intent, purpose, or motive.* Without any supporting facts, this assertion is conclusory, and insufficient to state a claim for breach of the duty of fair representation. *See Stoner v. Walsh,* 772 F. Supp. 790, 806–07 (S.D.N.Y. 1991) (Mukasey, J.). Where Plaintiff alleges slightly more, the allegations are still conclusory and circular, and should be dismissed.

38    Employment discrimination claims under Section 1981 and the NYSHRL are analyzed under the same framework as Title VII. *McGill v. University of Rochester,* 600 F. App'x 789, 790 (2d Cir. 2015). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination [to] plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted). "[T]o state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.' " *Carter v. Verizon,* No. 13-CV-7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015) (quoting *Gorokhovsky v. N.Y.C. Hous. Auth.,* 552 F. App'x 100, 102 (2d Cir. 2014)).

39    Aside from the NYSHRL and NYCHRL having a broader definition of "disability," "[t]he standard for pleading a claim for disability discrimination under the NYSHRL and the NYCHRL is virtually identical to the ADA." *Marquez v. Starrett City Assocs.,* 406 F. Supp. 3d 197, 207 (E.D.N.Y. 2017).

40    Indeed, "[b]eing forced to endure a hostile work environment is one type of adverse employment action." *Dietrich v. City of New York,* No. 18 CIV. 7544 (CM), 2020 WL 4226591, at *16 (S.D.N.Y. July 23, 2020).

41    While Plaintiff alleges that he sought to file a grievance about the grievance process, he does not allege any facts about the process and procedure for filing grievances, or how the process was allegedly different for him due to his membership in a protected class. (Am. Compl. 34–35 at ¶ 53, 57).

42    The case law governing a union's liability for hostile work environment under the NYSHRL and NYCHRL is less clear. Most cases, however, hold that NYSHRL and NYCHRL claims against a union "are subsumed by the duty of fair representation when the gist of the claim is the failure to represent the plaintiff in a fair and

non-discriminatory manner." *Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16-CV-4779, 2017 WL 2345658, at *7 (E.D.N.Y. May 30, 2017) (collecting cases).

43    Generally, an employer is not liable as a matter of law for harassment resulting "from nonwork-related, off-duty interactions between co-employees, because those actions are not part of the work environment." *See Devlin v. Teachers' Ins. & Annuity Ass'n of Am.*, No. 02-CV-3228 (JSR), 2003 WL 1738969, at *2 (S.D.N.Y. Apr. 2, 2003) (granting the defendant's motion for summary judgment on the plaintiff's sexual harassment claim because, *inter alia,* the plaintiff's co-worker's acts occurred at a bar outside of work hours) (quotation & citation omitted).

44    To the extent any part of Plaintiff's claims under the NYSHRL fall under the less demanding NYCHRL standard, his claims also fail for the reasons discussed herein. The burden to state a claim under the NYCHRL is somewhat less demanding, requiring the plaintiff to allege: (i) that the plaintiff was "treated less well than other employees;" and (ii) that such treatment was because of the plaintiff's protected class. *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4558, 2021 U.S. Dist. LEXIS 45132, at *13 (S.D.N.Y. Mar. 10, 2021).

45    Plaintiff must also establish these elements under the NYCHRL, except that instead of an adverse employment action, he need only prove that "something happened that would be reasonably likely to deter a person from engaging in protected activity." Wilson, 2021 U.S. Dist. LEXIS 45132, at *20.

46    Even though Plaintiff has not pleaded a *prima facie* case for discrimination that would, under *McDonnell Douglas*, shift the burden to Defendants to provide a legitimate non-discriminatory reason for Plaintiff's suspension and termination, Plaintiff nonetheless acknowledges that NYU's proffered reasons for his suspensions and termination were because of Plaintiff's interpersonal conflicts with coworkers. (Am. Compl. 30 at ¶ 37, 38).

47    In fact, only Plaintiff's January 16, 2020 Grievance Form states that Plaintiff "was discriminated against based on having a disability." (ECF 49-2, Exhibit 3 (January 16, 2020 Step 1 Grievance). The Grievance does not reference Plaintiff's race or national origin, at all.

48    Among other things, Plaintiff neither pleads when he made his employer aware of his ADHD nor how his ADHD is related to any alleged adverse employment action.

49    Even if Plaintiff has a disability under the broader NYSHRL definition in light of his ADHD diagnosis (ECF 65-7 at 1), it is unnecessary for me to evaluate this since Plaintiff fails to allege any adverse employment action giving rise to an inference of disability discrimination. *See Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-CV-5109 (JCF), 2007 WL 1149979, at *19 (S.D.N.Y. Apr. 18, 2007), *aff'd sub nom. Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943 (2d Cir. 2008).

50    Plaintiff does not allege any facts involving UCATS and the Court cannot discern any Civil Rights § 79-n claim against them.

51    As Defendants point out, at least one court has dismissed a Section 79-n claim because it was brought against an organization and not an individual. *Morrison v. Shalach*, 67 Misc. 3d 451, 457, 124 N.Y.S.3d 512 (N.Y. Sup. Ct. Westchester Cty. 2020).

52    Plaintiff compares his experience to that of his coworkers Speizale and Wambold, who he alleges could come into the building "on their days off," use the workstations, and were "never asked to leave" or have NYPD "called to arrest them for criminally trespassing. (Am. Compl. 32 at ¶ 46). But Plaintiff's comparison falls short

in this instance because Plaintiff was not given a day off when he was told to leave—he had already been suspended from working at NYU.

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1665013
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Darwyn M. MORREN, Plaintiff,

v.

NEW YORK UNIVERSITY, et al., Defendant.

20-CV-10802 (JPO)
|
Signed 05/25/2022

**Attorneys and Law Firms**

Darwyn M. Morren, Westbury, NY, Pro Se.

Jessica Rose Schild, Robert Mossman Tucker, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., New York, NY, for Defendant.

ORDER ADOPTING REPORT
AND RECOMMENDATION

J. PAUL OETKEN, District Judge:

**\*1** *Pro se* Plaintiff Darwyn M. Morren sues New York University and UCATS Local 3382 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*; the Labor Management Relations Act, 29 U.S.C. § 185; 42 U.S.C. § 1985; the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1101 *et seq*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*, the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq*; and New York Civil Rights Law § 79-n. Plaintiff also brings claims for breach of contract and negligent infliction of emotional distress. (*See* Dkt. No. 25 ("Am. Compl"); Dkt. No. 25-1 ("Pl.'s Memo") 4-14.) Defendants have each moved to dismiss the amended complaint for failure to state a claim. (*See* Dkt. No. 47 ("UCATS Mot."); Dkt. No. 53 ("NYU Mot.").) In a report and recommendation, Magistrate Judge Ona T. Wang has recommended that Defendants' motions to dismiss be granted. (*See* Dkt. No. 76 ("R. & R.") at 49.)

Plaintiff objects to the report and recommendation only on the grounds that (i) he did not file a motion to amend his complaint; (ii) he did not receive Defendants' motions to dismiss; and (iii) UCATS Local 3882 did not process his grievances. (*See* Dkt. No. 79 ("Pl.'s Objections") at 1-2.) In reviewing a report and recommendation, a district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b). In reviewing a *pro se* party's submissions, the court is "obligated to afford a special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), so such submissions are read "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

Plaintiff's objections here are without merit. Magistrate Judge Wang's report and recommendation concerns Defendants' motions to dismiss the amended complaint, not any motion to further amend the complaint. (*See* R. & R. at 49.) Defendants filed these motions on ECF, and Plaintiff had consented to the electronic service of court documents through ECF. (*See* Dkt. No. 3.) Finally, Plaintiff does not meaningfully contest that his claims against UCATS Local 3882 relating to the failure to process his grievances are time-barred. Plaintiff brings a claim that UCATS breached its duty of representation, but a plaintiff has only six months to bring suit from the time he "knew or should have known of the breach of the duty of fair representation." *White v. White Rose Food a Div. of DiGiorgio Corp.*, 128 F.3d 110, 114 (2d Cir. 1997). Such a claim accrues "at the latest" by the date of a National Labor Relations Board ("NLRB") charge. *Kovowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003). Plaintiff filed an unfair labor practice charge with the NLRB on June 15, 2020. (*See* Dkt. No. 49-5 ("NLRB Charge").) In that charge, he alleged that UCATS failed to fairly represent him. (*See id.* at 2.) Plaintiff had until December 15, 2020, to bring suit, but he did not do so. (*See* Dkt. No. 1 ("Compl").) Accordingly, even if Plaintiff's allegations are true, his claim must be dismissed.

**\*2** The remainder of the report and recommendation is adopted in full. Where there is no objection, a district court reviews for clear error. *See* Fed. R. Civ. P. 72(b), Advisory Committee's Notes (1983) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *see also Borcsok v. Early*, 299 F. App'x 76, 77 (2d Cir. 2008). Magistrate Judge Wang's thorough and well-reasoned report presents no errors, clear or otherwise.

For the foregoing reasons, Plaintiff's objections are overruled and Judge Wang's Report and Recommendation (Dkt. No. 76) is ADOPTED in full. Defendants' motions to dismiss are GRANTED. Further, for the reasons explained by Judge Wang, Plaintiff is granted leave to amend his discrimination claims for hostile work environment and retaliation and his FMLA claims, provided that he must file a proposed second amended complaint repleading those claims within thirty days after the date of this order.

The Clerk of Court is directed to close the motions at Docket Numbers 47 and 53.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 1665013

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2619815
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lester LEFKOWITZ, Plaintiff,

v.

JOHN WILEY & SONS, INC., Defendant.

No. 13 Civ. 6414(KPF).
|
Signed June 2, 2014.

*OPINION AND ORDER*

KATHERINE POLK FAILLA, District Judge.

**\*1** Plaintiff Lester Lefkowitz claims copyright
infringement, contributory copyright infringement, and
breach of contract against Defendant John Wiley & Sons, Inc.,
based on Defendant's alleged use of Plaintiff's photographs
beyond the scope of Defendant's licenses and without
Plaintiff's authorization.[1] Defendant has moved, pursuant
to Federal Rule of Civil Procedure 12(c), to dismiss all
of Plaintiff's claims for failure to state a claim; to dismiss
Plaintiff's infringement claims to the extent those claims are
barred by the statute of limitations; and to dismiss Plaintiff's
breach of contract claim for lack of standing.

For the reasons set forth in the remainder of this Opinion,
Defendant's motion is granted in part and denied in part.
Specifically, because there are insufficient facts before the
Court to determine whether Plaintiff's infringement claims
are barred by the statute of limitations, Defendant's motion
in this regard is denied. Defendant's motion to dismiss
Plaintiff's copyright infringement claim is likewise denied
because Plaintiff has sufficiently pleaded this cause of action.
Conversely, because Plaintiff has failed adequately to plead
a claim for contributory copyright infringement, Defendant's
motion to dismiss that claim is granted. Finally, Plaintiff is
estopped from asserting his breach of contract claim in the
instant case because a United Stated District Court in the
District of Massachusetts has already held that Plaintiff lacks
standing to assert this claim.

## BACKGROUND[2]

### A. Plaintiff's Photographs and Licensing Relationships
Plaintiff Lefkowitz is an independent professional
photographer residing in New York. (FAC ¶ 2). Plaintiff is
the owner of an exclusive right under the copyright laws
in the photographs displayed in Exhibit 1 to Plaintiff's FAC
(the "Lefkowitz Images"). (*Id.* at ¶ 8, Ex. 1). The Lefkowitz
Images have been registered with the United States Copyright
Office. (*Id.* at ¶ 9).

On or about June 23, 1997, and July 27, 2000, Plaintiff entered
into agreements (the "TSM Agreements") with The Stock
Market ("TSM"), a stockphotograph licensing agency. (FAC
¶ 10). The TSM Agreements authorized TSM to issue limited
licenses for use of the Lefkowitz Images by third parties,
in exchange for "reasonable license fees." (*Id.*). The TSM
Agreements also appointed TSM as Plaintiff's "exclusive
agent ... with respect to the licensing of [his] stock images[,]"
and specified that TSM would not license any images "on a
buy-out or exclusive basis" without prior consent. (*Id.* at ¶ 11,
Ex. 2 ¶ 1(d), Ex. 3 ¶ 1(d)).

On March 23, 2000, the TSM Agreements were assigned to
Corbis Corporation ("Corbis"), another company that licenses
the rights to photographs and other media. (FAC ¶ 12, Ex. 4).
Plaintiff acceded to that assignment "with the understanding
that all the terms and conditions of [his] current contract with
[TSM would] remain in full force and effect." (*Id.*). Under
the relevant agreements, both TSM and Corbis were required
to pay to Plaintiff a portion of the fees that they received for
licensing Plaintiff's images. (*Id.* at ¶ 43).

**\*2** Plaintiff also subsequently entered into a Photographer
Representation Agreement with Corbis dated February 12,
2003 (the "Representation Agreement"), pursuant to which
Corbis was authorized to grant third parties limited-use
licenses for Plaintiff's photographs. (FAC ¶ 13, Ex. 5). The
Representation Agreement also provided:

> Corbis, in its sole discretion and
> without obligation to do so, shall
> have full and complete authority to
> make and settle claims or to institute
> proceedings in Corbis' or your name
> but at Corbis' expense to recover
> damages for Accepted Images lost

or damaged by customers or other parties and for the unauthorized use of Accepted Images.... Any recovery, after payment of all costs and expenses including outside attorneys' fees, shall be treated as Revenue and you shall receive the appropriate royalty, or 100% in the case of lost/damages images. Following your notification, if Corbis declines to bring such a claim within sixty (60) days, we shall notify you, and you may bring actions in your own name at your own expense and retain all recoveries.

(*Id.,* Ex. 5).

## B. Defendant's Alleged Use of the Lefkowitz Images

Defendant John Wiley & Sons, Inc., is a global publisher of, among other things, educational materials, including textbooks for undergraduate and graduate students. (FAC ¶ 6). Many of Defendant's publications contain contributions from other sources, including photographs licensed to Defendant by third parties. (*Id* . at ¶ 7).

Plaintiff alleges that between 1999 and 2011, TSM and Corbis sold Defendant limited licenses to use copies of the Lefkowitz Images in numerous educational publications. (FAC ¶ 16). Although Plaintiff alleges that these licenses were "expressly limited by number of copies, distribution area, image size, language, duration and/or media (print or electronic)" (*id.* at ¶ 17), neither party has provided the Court with the relevant licenses for the images at issue. Instead, Plaintiff attaches to the FAC two standard Corbis license agreements —dated November 19, 2011, and June 2005 (the "Corbis Agreements")—that Plaintiff alleges were incorporated into the specific Corbis Defendant licensing agreements, and thus govern the Corbis–Defendant licensing arrangement. (FAC ¶ 45, Ex. 7). Under the Corbis Agreements, among other things:

Corbis in its sole discretion reserves the right to bill [the customer] (and [the customer] hereby agrees to pay) ten (10) times the normal license fee for any unauthorized use, in addition to any other fees, damages, or penalties

Corbis may be entitled to under this agreement or applicable law.

(*Id.* at Ex. 7, Nov. 19, 2001 agreement (the "Ten Times Provision")).

## 1. Defendant's Direct Copyright Infringement

As relevant here, Plaintiff identifies 66 instances of alleged infringement by Defendant in a chart included as Exhibit 1 to the FAC (the "Lefkowitz Chart"). (FAC, Ex. 1).[3] The Lefkowitz Chart is a summary of information that Plaintiff derived from Plaintiff's royalty statements from TSM and Corbis. (*Id.* at ¶ 16). The summary includes a copy of the image, the author and description of the image, the image identification number, the copyright registration number and date, an invoice date, and the particular imprint of Defendant's that licensed Plaintiff's image. (*Id.* at Ex. 1).

**\*3** Plaintiff alleges, upon information and belief, that Defendant exceeded the permitted uses under the terms of its licenses with TSM and Corbis for the Lefkowitz Images, in publications both of which Plaintiff is aware and others "yet to be discovered." (FAC ¶ 19). Specifically, Plaintiff contends that Defendant

copied the [the Lefkowitz Images] in numbers exceeding the limited print quantities in the licenses, displayed [the Lefkowitz Images] online or in digital media without permission to do so, distributed the [the Lefkowitz Images] in geographic territories that were not authorized, and copied [the Lefkowitz Images] in custom, statespecific, language, or international editions without permission to do so.

(*Id.* at ¶ 34).

Plaintiff attests that the infringing conduct occurred after the invoice date for each instance on the Lefkowitz Chart. (FAC ¶ 34). As for the particular publications in which the alleged infringement occurred, Plaintiff identifies nine of Defendant's publications in which he alleges his photographs

appear, although Plaintiff neither limits the instances of infringement to these publications, nor identifies which photographs in these publications were allegedly infringed. (*Id.* at ¶ 28). Plaintiff alleges that he does not have this specific information, inasmuch as the royalty statements did not specify the publication title in which his photographs would appear or the license limits for the image to which the invoice pertained. (*Id.* at ¶ 32). Instead, Plaintiff maintains that Defendant has custody of this information because it is identified in Defendant's licenses with TSM and Corbis. (*Id.* at ¶ 33). [4]

### 2. Defendant's Contributory Copyright Infringement

The FAC also includes allegations concerning Defendant's purported contributory infringement. In this regard, Plaintiff asserts that Defendant facilitated the international distribution of its publications and, in the course of so doing, Defendant reproduced and distributed Plaintiff's images without his permission to "other entities, subsidiary companies, divisions, affiliates and/or third parties ('Third Parties')." (FAC ¶ 37). Without Plaintiff's permission, the allegations continue, the Third Parties included Plaintiff's photographs in publications that had been translated into additional languages or published in local adaptations or reprints. (*Id.* at ¶ 38).

Plaintiff alleges that "[b]y transmitting [the Lefkowitz Images] to the Third Parties, Wiley enabled, induced, caused, facilitated, or materially contributed to the Third Parties' unauthorized reproduction and distribution of [the Lefkowitz Images]." (FAC ¶ 38). Plaintiff does not, however, identify any of the Third Parties who engaged in this alleged conduct.

### 3. Defendant's Pattern of Infringement

Finally, the FAC devotes an entire section to allegations regarding Defendant's pattern of infringement. In particular, Plaintiff alleges that Defendant has a general practice of infringing copyrights on the photographs it licenses for inclusion in its publications by exceeding the terms of the individual license agreements. (FAC ¶ 23). Plaintiff also identified numerous lawsuits in which Defendant has been sued for copyright infringement, including some in which juries have found Defendant liable for copyright infringement. (*Id.* at ¶¶ 23–27).

### C. The Instant Litigation

**\*4** Plaintiff commenced this action on April 1, 2013, by filing his complaint in the United States District Court for the Eastern District of Pennsylvania. (Dkt.# 1). On May 13, 2013, Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue to the Southern District of New York based on the forum selection clauses contained in all the agreements referenced in the complaint. (Dkt.# 5). On August 13, 2013, the Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, granted Defendant's motion to transfer this case to this District. (Dkt.# 11). The case was transferred (Dkt.# 13), and assigned by the undersigned as related to *Lefkowitz v. McGraw–Hill Companies, Inc.,* No. 13 Civ. 5023(KPF), a case that had been similarly transferred from the Eastern District of Pennsylvania on July 19, 2013.

On October 2, 2013, Defendant filed a letter requesting a pre-motion conference regarding its anticipated motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt.# 15). By letter dated October 7, 2013, Plaintiff opposed Defendant's request to file a motion to dismiss under Rule 12(b)(6) on the basis that Defendant could have included its arguments in the initial motion to dismiss before Judge Baylson, and thus was barred from filing a successive Rule 12(b)(6) motion. (Dkt.# 16). [5] At the same time, Plaintiff requested leave to file an amended complaint if the Court found that Plaintiff had not sufficiently pleaded standing for its breach of contract claim. (*Id.*).

On October 28, 2013, the Court held a telephone conference with counsel for the parties in this action (who, as noted, are also counsel in the related McGraw Action), to discuss the contemplated motions in both cases. At that conference, the Court determined that Defendant was precluded from filing a second motion to dismiss, and that the proper procedural course would be for Defendant to file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Court also granted Plaintiff's request for leave to amend his complaint. Accordingly, the Court ordered Plaintiff to file his amended complaint by November 4, 2013, and ordered Defendant to file its answer and motion for a judgment on the pleadings by December 6, 2013. (Dkt.# 21).

Plaintiff filed his FAC on November 4, 2013. (Dkt.# 24). The FAC asserts claims for copyright infringement, contributory copyright infringement, and breach of contract. For relief, Plaintiff requests (i) a permanent injunction against Defendant and anyone working in concert with Defendant from copying, displaying, distributing, selling or offering to sell the Lefkowitz Images; (ii) impoundment of all copies of

the Lefkowitz Images used in violation of Plaintiff's exclusive copyrights as well as related records and documents and, at final judgment, destruction or other reasonable disposition of the unlawfully used Lefkowitz Images, including digital files and any other means by which they could be used again by Defendant without Plaintiff's authorization; (iii) an award of Plaintiff's actual damages and all profits derived from the unauthorized use of the Lefkowitz Images or, where applicable and at Plaintiff's election, statutory damages; (iv) an award of Plaintiff's reasonable attorneys' fees; (v) an award of Plaintiff's court costs, expert witness fees, interest and all other amounts authorized under law; and (vi) an award of 10 times the license fee for unauthorized uses pursuant to the Corbis Agreements.

**\*5** In accordance with the Court's order, Defendant filed its answer and its motion for judgment on the pleadings on December 6, 2013. (Dkt.# 25, 26). Plaintiff filed his opposition on January 3, 2014 (Dkt.# 32), and the motion was fully submitted when Defendant filed its reply on January 10, 2014 (Dkt. # 33). On January 17, February 13, and May 22, 2014, Defendant filed three notices of supplemental authority (Dkt.# 35, 36, 39), and on February 27 and April 28, 2014, Plaintiff also filed notices of supplemental authority (Dkt. # 37, 38). Plaintiff responded to Defendant's May 22 supplemental authority on May 23, 2014. (Dkt.# 40).

## DISCUSSION

### A. Applicable Law

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard applied to a motion for judgment on the pleadings is the same as that used for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *accord L–7 Designs, Inc. v. Old Navy, LLC.,* 647 F.3d 419, 429 (2d Cir.2011). When considering such a motion, a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life,* 648 F.3d 98, 104 (2d Cir.2011) (internal quotation marks omitted) (quoting *Selevan v. N.Y. Thruway Auth.,* 548 F.3d 82, 88 (2d Cir.2009)). A plaintiff is entitled to relief if he alleges "enough facts to state

a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 546); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Although "[s]pecific facts are not necessary," the statement must "give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

**\*6** The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions ." *Rolon v. Hennenman,* 517 F.3d 140, 149 (2d Cir.2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002)); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal,* 556 U.S. at 678)).

In addition to the complaint, the Court may consider "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP,* 736 F.3d 213, 219 (2d Cir.2013). The Court may also consider any items of which judicial notice may be taken. *L–7 Designs, Inc.,* 647 F.3d at 422.

## B. Analysis

### 1. Plaintiff Sufficiently Alleges a Claim for Copyright Infringement

"[A] properly pleaded copyright infringement claim must allege [i] which specific original works are the subject of the copyright claim, [ii] that plaintiff owns the copyrights in those works, [iii] that the copyrights have been registered in accordance with the statute, and [iv] by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y.1992); *accord Warren v. John Wiley & Sons, Inc.,* 952 F.Supp.2d 610, 616 (S.D.N.Y.2013); *see generally Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 51 (2d Cir.2003).

The FAC alleges that Plaintiff is the owner of an exclusive right under the copyright of the Lefkowitz Images (FAC ¶ 8), and that these images have been registered with the United States Copyright Office (*id.* at ¶ 9), thereby satisfying the second and third requirements for copyright infringement. Plaintiff has also adequately alleged the first requirement—which specific original works are the subject of the copyright claim—by including the Lefkowitz Chart as an exhibit to the FAC. *See Schneider v. Pearson Educ., Inc.,* No. 12 Civ. 6392(JPO), 2013 WL 1386968, at *3 n. 3 (S.D.N.Y. Apr.5, 2013) (concluding that plaintiff had alleged sufficiently that specific works as to which he owned the copyright were infringed upon, where plaintiff listed the photographs at issue and also indicated that the infringement was not limited to these works); *but see Cole v. John Wiley & Sons, Inc.,* No. 11 Civ.2090(DF), 2012 WL 3133520, at *12 (S.D.N.Y. Aug.1, 2012) (finding it inadequate for Plaintiff "to base an infringement claim on overly-inclusive lists of copyrighted works" and "to list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works"). [6] Defendant's arguments to the contrary (*see* Def. Br. 9–10), do not convince the Court otherwise.

**\*7** Defendant further contends that the fourth requirement—by what acts during what time the defendant infringed the copyright—is not satisfied because Plaintiff has failed to identify the license terms or the infringing publication for any of the instances of infringement on the Lefkowitz Chart and, as a result, Plaintiff has failed to put Defendant on notice of the nature of the claims asserted against it. (Def.Br.9–10).

Defendant's argument is unavailing. First, Defendant places a heightened pleading requirement upon Plaintiff that is not required by law. For example, Defendant charges that Plaintiff failed to "differentiate its allegations of conduct among" the instances of infringement listed in the Lefkowitz Chart. (Def.Br.9). Yet, as one court has already held, "it is not fatal" for a plaintiff's copyright claim if the complaint "fails to specify how each particular photograph has been infringed." *Warren,* 952 F.Supp.2d at 617.

Second, a review of the FAC demonstrates that it does provide the notice to Defendant required by Rule 8. Plaintiff alleges that, "[u]pon information and belief, the licenses granted to Wiley from TSM and Corbis were expressly limited by number of copies, distribution area, image size, language, duration and/or media (print or electronic)." (FAC ¶ 17). Plaintiff then alleges that upon information and belief, Defendant exceeded the permitted uses under the term of the limited licenses for the Lefkowitz Images (*id.* at ¶ 19), by (i) copying the Lefkowitz Images "in numbers exceeding the limited print quantities in the licenses"; (ii) displaying the Lefkowitz Images "online or in digital media without permission to do so"; (iii) distributing the Lefkowitz Images in "geographic territories that were not authorized"; and (iv) copying the Lefkowitz Images "in custom, state-specific, language, or international editions without permission to do so" (*id.* at ¶ 34). Plaintiff also identifies a set of Defendant's publications in which the Lefkowitz Images appear. (*Id.* at ¶ 28).

Under Rule 8, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson,* 551 U.S. at 93 (quoting *Twombly,* 550 U.S. at 555). Plaintiff's allegations surely meet this standard. The FAC identifies Plaintiff's copyright infringement claim, the images that Plaintiff claims were infringed, and the bases for Plaintiff's assertion that those images were infringed. The FAC further alleges that, upon information and belief, Defendant has a "general practice of infringing copyrights in its use of photographs in its publications." (*Id.* at ¶ 23). In support of this allegation, Plaintiff identifies 15 other lawsuits filed against Defendant in which litigants make the same claims that Plaintiff brings here, and two cases in which Defendant was found liable for engaging in the copyright infringement scheme that Plaintiff advances. (*Id.* at ¶¶ 23–26). These allegations, taken as a whole, make plausible that

Plaintiff is entitled to relief, and that this entitlement is more than speculative.[7]

**\*8** Plaintiff also sufficiently narrows the time period by alleging that, upon information and belief, Defendant engaged in the infringing conduct after the invoice date listed on the Lefkowitz Chart. (FAC ¶ 34). This allegation provides the starting date on which Defendant is alleged to have infringed, and therefore sufficiently identifies the time period during which the infringement may have occurred. *See E. Broadcasting Am. Corp. v. Universal Video, Inc.,* No. 04 Civ. 5654(DGT), 2006 WL 767871, at \*3 (E.D.N.Y. Mar.24, 2006) (holding that plaintiff sufficiently alleged the time frame of the infringing activity, where the complaint alleged that the infringement took place on or before a particular date); *cf.* 🔖 *Blagman v. Apple Inc.,* No. 12 Civ. 5453(ALC)(JCF), 2013 WL 2181709, at \*3 (S.D.N.Y. May 20, 2013) (holding that the plaintiff adequately pleaded the requisite time period where, although he did not "specify the time period of infringement[,]" plaintiff did allege the defendants' "continued infringement, which courts in this Circuit have held satisfactory to survive a motion to dismiss" (collecting cases)).

Although many of the cases on which Plaintiff relies are cases in which the plaintiff provided additional specifications regarding the publications and licenses at issue (*see* Pl. Opp. 5 n. 16 (citing, among other cases, *Carr Clifton v. Pearson, Educ., Inc.* (N.D. Cal. No. 5:11 Civ.2090–EJD); *Alaska Stock, LLC v. Pearson Educ., Inc.* (D. Alaska No. 3:11 Civ. 00162(TMB)))), such details are not necessary for Plaintiff to plead his claim for copyright infringement adequately. *See* 🔖 *Wu v. Pearson Educ., Inc.,* No. 09 Civ. 6557(RJH), 2010 WL 3791676, at \*6 (S.D.N.Y. Sept.29, 2010) (holding that plaintiff sufficiently alleged a claim for copyright infringement where plaintiff alleged that defendant had exceeded the allowed print run on the licenses governing the works at issue without first seeking prior authorization or paying any additional licensing fee); *Sensi v. Houghton Mifflin Harcourt Publ'g Co., et al.,* No. 13 Civ. 2891(GBD) (finding complaint sufficient where plaintiff did not include the license terms with its complaint: "I think the complaint minimally puts the defendant on notice that defendant was given licenses directly by the plaintiff and by the third party that they exceeded those licenses by exceeding the limited print run, and I [do not] think the burden is on the plaintiff at this point to specify every single excessive use in that regard. I don't think that the notice pleading requires that kind of

specificity." (Penchina Decl., Ex. 4 at 46)); *cf. Warren,* 952 F.Supp.2d at 618 ("[I]t is not fatal to [the] copyright claim that the Complaint fails to specify how each particular photograph has been infringed.").

By contrast, the cases on which Defendant relies in support of its argument that Plaintiff fails adequately to plead the necessary elements are readily distinguishable. (Def.Br.9). In *Palmer Kane LLC v. Scholastic Corp.,* the complaint made no mention of a time period, and only contained "several broad allegations" that the defendant had "exceeded the licenses it obtained to use Plaintiff's images, reused Plaintiffs works without a license[,]" and used the images without permission or prior to obtaining permission." No 12 Civ. 3890 🔖 (TPG), 2013 WL 709276, at \*3 (S.D.N.Y. Feb. 28, 2013). The court in *Palmer Kane* explained: "Although Exhibit A, listing [the plaintiff's] works contains an invoice date for each of the images, the complaint makes no mention of these dates, let alone how they relate to a time period in which [the defendant] infringed on [the plaintiff's] works." *Id.* Plaintiff's complaint is not deficient in this respect. The FAC identifies the exact relevance of the invoice dates, thereby delineating the relevant time period. And while it is true that the court in *Palmer Kane* faulted the plaintiff there for not limiting its claims to the works listed, *see id.* ("[S]ince [plaintiff] has provided a list of works but indicated that his list is not exhaustive, ... the complaint fails to specify which works are at issue."), the Court has already dismissed Plaintiff's claim with respect to works not identified in the Lefkowitz Chart. Even had it not, this similarity with the present case does not render the FAC inadequate. *See Schneider,* 2013 WL 1386968, at \*3 n. 3 ("To the extent, however, that ... other district court opinions set forth [a rule under which a plaintiff fails to state a claim for copyright infringement where the plaintiff provides a non-exhaustive list of infringed works,] this Court takes a different course.").

**\*9** As for the other cases on which Defendant relies, the plaintiff in 🔖 *Marvullo v. Gruner & Jahr,* 105 F.Supp.2d 225, 228 (S.D.N.Y.2000), had conclusorily alleged that the defendants had published the works at issue "beyond the scope ... of the limited license ." The plaintiff in 🔖 *Cole,* 2012 WL 3133520, at \*12–13, similarly, had neither identified any work that it claimed the defendant had infringed, nor included any detail as to any of the claimed infringing acts. In short, the FAC contains much more robust allegations than those contained in the complaints at issue in *Palmer, Marvullo,* and *Cole.*

It is also of no moment that many of Plaintiff's allegations are predicated "upon information and belief." Prefacing allegations with this standard pleading qualification does not eviscerate the sufficiency of a complaint. *Wu,* 2010 WL 3791676, at *6 ("Pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, however, plaintiffs may plead the allegations in complaints upon information and belief, and many of these qualifiers are roughly equivalent to so pleading."); *see also Schneider,* 2013 WL 1386968, at *3 ("[T]he Court fails to see why several discrete paragraphs in a Complaint should nullify other, factually specific allegations in the Complaint; it would be unjust and inappropriate to throw out these well-pleaded allegations, merely because Plaintiff's Complaint may also contain a bit of bathwater."). Plaintiff's pleading style is particularly appropriate in light of his allegations that key evidence supporting his claim is in Defendant's possession. (FAC ¶¶ 19, 27, 35). [8] As the Second Circuit has stated, in the context of reviewing the sufficiency of a plaintiff's claim for copyright infringement:

> The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.

*Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir.2010) (internal citations and quotation marks omitted). A district court should not dismiss a claim "unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001). This is not the case here; the FAC sets out facts entitling Plaintiff to relief. Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679. The FAC as a whole satisfies the plausibility requirement; it gives rise to a plausible narrative supporting Plaintiff's claim, *see Twombly,* 550 U.S. at 570, and thus sufficiently alleges a claim for copyright infringement. *See Warren,* 952 F.Supp.2d at 618 ("[A]ll three Plaintiffs have sufficiently alleged: [i] which specific works have been infringed; [ii] that Plaintiffs registered and

own the copyright to those work; and [iii] in what way the works were infringed."); *Schneider,* 2013 WL 1386968, at *4 ("Plaintiff's Complaint sufficiently states a claim for copyright infringement; it both provides 'fair notice' to Defendant and contains specific factual allegations sufficient to 'nudge[ ]' Plaintiff's infringement claims 'across the line from conceivable to plausible.' " (quoting *Twombly,* 550 U.S. at 561, 570)). To require more at this stage in the litigation would be to place an impermissible burden on Plaintiff.

**\*10** Accordingly, Defendant's motion for a judgment on the pleadings as to Plaintiff's copyright infringement claim is denied, with the exception that Plaintiff's claims for copyright infringement for works not listed in the Lefkowitz Chart are dismissed.

### 2. Plaintiff Fails to State a Claim for Contributory Copyright Infringement

Defendant next argues that Plaintiff fails to state a claim for contributory copyright infringement, arguing that the FAC's allegations of Defendant's contribution to and knowledge of alleged infringement by others are nothing more than recitations of the legal standard bereft of factual support. (Def.Br.13). On this claim, Defendant is correct.

"Although the Copyright Act does not expressly render anyone liable for infringement committed by another[,][ ] doctrines of secondary liability [,]" such as contributory copyright infringement, "emerged from common law principles and are well established in the law." *Metro–Goldwyn–Mayer Studios Inc. v. Groster, Ltd.,* 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). As an initial matter, for Plaintiff adequately to plead a claim for contributory copyright infringement, he must initially plead a claim for direct infringement. *Marvullo,* 105 F.Supp.2d at 229. As just held, Plaintiff has satisfied this burden. Beyond that, Plaintiff must allege that "the defendant with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another." *Wolk v. Kodak Imaging Network, Inc.,* 840 F.Supp.2d 724, 750 (S.D.N.Y.2012) (internal quotation marks omitted); *Brought to Life Music, Inc. v. MCA Records, Inc.,* No. 02 Civ. 1164(RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb.11, 2003) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971)). Liability

will exist if the "defendant engages in personal conduct that encourages or assists the infringement," *Arista Records,* 604 F.3d at 118, and there is either actual or constructive knowledge of the infringing activity, *Brought to Life Music, Inc.,* 2003 WL 296561, at *2.

The FAC contains seven allegations targeted toward Plaintiff's contributory infringement claim, all of which are pleaded on "information and belief." (FAC ¶¶ 36–42). Although it is generally appropriate for Plaintiff to plead by use of such caveats where "the facts are peculiarly within the knowledge of the defendants," it is nonetheless "axiomatic that the complaint must allege facts demonstrating the basis for the information and belief." *MLSMK Inv. Co. v. JP Morgan Chase & Co.,* 737 F.Supp.2d 137, 144 (S.D.N.Y.2010); *see also Kajoshaj v. New York City Dep't of Educ.,* 543 F. App'x 11, 16 (2d Cir.2013) (summary order) ("While [p]leading on the basis of information and belief is generally appropriate where information is particularly within [defendants'] knowledge and control, even such pleadings must be grounded in a good-faith basis in fact for believing that such comparators exist." (internal quotation marks and citations omitted)).

**\*11** Unlike Plaintiff's claim for direct infringement, which included allegations, among others, identifying the licenses, the photographs at issue, the known publications, and Defendant's purported penchant for violating licenses similar to those at issue in this action, Plaintiff's claim for contributory infringement provides no such factual foundation. Rather, the contributory infringement claim appears predicated on nothing more than Plaintiff's assumption that Defendant "facilitated the international distribution of its publications ... through its Subsidiary Rights, Global Rights, and Permissions Departments" (FAC ¶ 36), and then "reproduced and distributed" the Lefkowitz Images to third parties, whom Plaintiff fails to identify (*id.* at ¶ 37). Based on this, Plaintiff alleges that "[b]y transmitting" the Lefkowitz Images to third parties, Defendant "enabled, induced, caused, facilitated, or materially contributed to the Third Parties' unauthorized reproduction and distribution" of the Lefkowitz Images. (*Id.* at ¶ 38). Plaintiff does not, however, identify a single publication in which a third party published his images.

The participation prong will not be satisfied by "allegation[s] that a defendant merely provid[ed] the means to accomplish an infringing activity." *Brought to Life Music, Inc.,*

2003 WL 296561, at *2 (internal quotation marks omitted). "Rather, participation in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Id.* (internal quotation marks omitted). There is nothing in the FAC to provide a reasonable basis for the Court to conclude that Defendant engaged in the requisite level of participation.

Similar problems befall Plaintiff's efforts to demonstrate that Defendant had knowledge of the infringing activity. Plaintiff alleges that Defendant "knew when it reproduced and distributed the [Lefkowitz Images] that the Third Parties would reproduce and distribute the [Lefkowitz Images] without Plaintiff's authorization" (FAC ¶ 40), and that Defendant "knew that the Third Parties were reproducing and distributing the [Lefkowitz Images] without authorization" (*id.* at ¶ 41). These allegations of knowledge are inadequate, however, because "[m]ere knowledge of infringing potential or of actual infringing uses" is not sufficient to subject a party to liability. *Metro–Goldwyn–Mayer Studios Inc.,* 545 U.S. at 937. "[K]nowledge means actual or constructive knowledge of specific and identifiable infringements of individual items, not a general awareness that there are infringements." *Wolk,* 840 F.Supp.2d at 751 (internal quotations marks omitted). Read most generously, the FAC contains nothing more than a general awareness that third parties allegedly infringed on Plaintiff's copyrights.

Whether a party has sufficiently pleaded a claim for contributory copyright infringement "is a close question on which federal district courts have diverged when assessing similar complaints." *Muench Photography, Inc. v. Pearson Educ., Inc.,* No. 13–cv–03937–WHO, 2013 WL 6172953, at *5 (N.D.Cal. Nov.25, 2013) (collecting cases). The FAC here, however, fails adequately to plead a claim for contributory infringement under decisions on both sides of this divergence.

On one side of the spectrum, in *Panoramic Stock Images, Ltd. v. Pearson Educ., Inc.,* No. 12 Civ. 9918(SJC), 2013 WL 2357586, at *3 (N.D.Ill. May 29, 2013), the court held that the plaintiff failed to state a claim for contributory infringement because the plaintiff "fail[ed] to identify any third party or publication that allegedly infringed on its copyrights or any factual basis suggesting that [the plaintiff] induced or encouraged infringement." On the other side of the spectrum, in *Bavendam v. Pearson Educ., Inc.,* No. 13 Civ. 3096(FSH), 2013 WL 5530008, at *5 (D.N.J. Oct.3, 2013), the court held that plaintiff's complaint was sufficient

on substantially similar allegations, but where the plaintiff also provided "two examples of third-party publications that allegedly included photographs at issue." Unlike both of these cases, Plaintiff fails to identify even one publication in which a third party included Plaintiff's copyrighted works. The FAC's allegations are conclusory assertions tracking the elements of the claim that cannot suffice to state a claim to which Plaintiff is entitled to relief. *See generally* *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

 **\*12**  Plaintiff's failure to plead his contributory copyright infringement claim adequately at this early stage in the litigation is not fatal. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991). This principle is equally applicable to "a motion for judgment on the pleadings brought under Rule 12(c)." *First Cent. Sav. Bank v. Meridian Residential Capital,* No. 09 Civ. 3444(DLI)(LB), 2011 WL 838910, at \*11 (E.D.N.Y. Mar. 3, 2011). To that end, the Court sees no reason to deny Plaintiff the opportunity to plead adequately his claim for contributory copyright infringement.

Accordingly, Plaintiff is granted leave to file a second amended complaint consistent with this Opinion. The second amended complaint must be filed and served no later than four weeks from the date of this Opinion. The dismissal of Plaintiff's contributory copyright infringement claim will be held in abeyance pending the filing of the second amended complaint. Plaintiff's failure to file a second amended complaint in a timely fashion will result in the entry of dismissal of his contributory infringement claim.

### 3. Defendant Has Not Demonstrated That Plaintiff's Claims for Copyright Infringement Are Barred by the Statute of Limitations

Having determined that Plaintiff has stated a claim for direct copyright infringement, the Court will now address the scope of Plaintiff's claim.

A civil action under the Copyright Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). The parties dispute whether the Court should apply an "injury rule," under which "a claim accrues at the time of each act of infringement, regardless of the copyright holder's knowledge of the infringement," *Urbont v. Sony Music Entm't,* 863 F.Supp.2d 279, 281 (S.D.N.Y.2012), or a "discovery rule," under which "a claim for copyright infringement does not accrue until the aggrieved party knows or has reason to know of the injury that forms the basis of the claim," *id.* Defendant argues that the injury rule applies, and that any claims for copyright infringement under Counts I and II of the FAC based on alleged acts of infringement prior to April 1, 2010, are barred by the statute of limitations. (Def.Br.15–16). Conversely, Plaintiff contends that the discovery rule applies, and that because Plaintiff has not pleaded facts that would enable the Court to apply the discovery rule to the case at hand, Defendant's motion must be denied. (Pl.Opp.15).

Until recently, the Second Circuit had not determined the appropriate accrual rule for federal copyright infringement claims. *Urbont,* 863 F.Supp.2d at 282 ("Neither the Supreme Court nor the Second Circuit has ruled on the appropriate rule for federal copyright infringement claims."); *see also* *TufAmerica, Inc. v. Diamond,* No. 12 Civ. 3529(AJN), 2013 WL 4830954, at \*17 (S.D.N.Y. Sept.10, 2013) (same). In the absence of Second Circuit precedent on this issue, the majority of the courts in this Circuit had initially applied the discovery rule in infringement cases, based on their interpretation of the Second Circuit's holdings in *Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir.1992), and *Merchant v. Levy,* 92 F.3d 51, 56 (2d Cir.1996). *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.,* No. 09 Civ. 2669(LAP), 2013 WL 4464002, at \*5 (S.D.N.Y. Aug.21, 2013) (recounting history). But, beginning with the Supreme Court's decision in *TRW Inc. v. Andrews,* 534 U.S. 19, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001), and particularly after United States District Judge Lewis A. Kaplan's decision in *Auscape Int'l v. Nat'l Geographic Soc'y,* 409 F.Supp.2d 235 (S.D.N.Y.2004), the pendulum had swung in the other direction, with the "majority of courts" in this District applying the injury rule to infringement claims. *TufAmerica, Inc.,* 2013 WL 4830954, at \*17 ("Since *Auscape,* a growing majority of the courts in the Southern District of New York to address this question have followed Judge Kaplan's lead and applied the injury rule to infringement claims." (collecting cases)).

**\*13**  On April 4, 2014, the Second Circuit put an end to the uncertainty when it held, in *Psihoyos v. Wiley & Sons., Inc.,* that the discovery rule applies to claims for federal copyright infringement. 748 F.3d 120, 124 (2d Cir.2014) ( "We agree with our sister Circuits that the text and structure of the Copyright Act, unlike the [Fair Credit Reporting Act], evince Congress's intent to employ the discovery rule, not the injury rule."). Under *Psihoyos,* "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Id.* Following *Psihoyos,* this Court applies the discovery rule here. [9]

The FAC is silent on when Plaintiff had "actual or constructive discovery" of Defendant's purported infringement. Rather, and as discussed earlier, the FAC provides the relevant time frame by alleging that upon information and belief, Defendant infringed after the date on the invoices listed on the Lefkowitz Chart. (FAC ¶ 34). Consequently, there are insufficient facts before the Court on which it may determine whether Plaintiff's direct copyright infringement claims are time-barred. Defendant's argument that Plaintiff's copyright infringement claims must be dismissed on statute of limitations grounds "is an affirmative defense for which [Defendant] bears the burden of proof." *United States v. Livecchi,* 711 F.3d 345, 352 (2d Cir.2013). Because Defendant has not satisfied this burden, its motion to dismiss on this basis is denied. *Connecticut Indep. Utility Workers Local 12924 v. Connecticut Natural Gas Corp.,* No. 3:12–cv–961 (JBA), 2013 WL 2946119, at \*4 (D. Conn. June 14, 2013) ("Because Defendants' statute of limitations argument is an affirmative defense for which [they] bear[ ] the burden of proof, Defendants' motion to dismiss is denied on this ground." (internal quotation marks and citation omitted)).

### 4. Plaintiff Is Estopped from Asserting His Breach of Contract Claim

The preclusive effect of a prior judgment is dictated by the doctrines of claim preclusion and issue preclusion, also identified as collateral estoppel. *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' "). "For judgments in federal-question cases ... federal courts participate in developing uniform federal

rule[s] of res judicata." *Id.* at 891 (internal quotation marks omitted). [10]

Under claim preclusion, a final judgment bars "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor,* 553 U.S. at 892 (internal quotation marks omitted). By contrast, issue preclusion forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* Issue preclusion can be "offensive" or "defensive." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). As relevant here, "[d]efensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Id.*

**\*14**  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' " res judicata and collateral estoppel "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Taylor,* 553 U.S. at 892 (quoting *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); *Marvel Characters,* 310 F.3d at 286 ("These related but distinct doctrines operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits.").

For issue preclusion to apply, four elements must be satisfied: "[i] the issues of both proceedings must be identical, [ii] the relevant issues were actually litigated and decided in the prior proceeding, [iii] there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and [iv] the issues were necessary to support a valid and final judgment on the merits." *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995). In assessing these requirements, however, the Court is mindful that "[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinary harsh

and unfair results." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1486 (2d Cir.1995).

Plaintiff's breach of contract claim seeks to enforce, in his own right, the Corbis Agreements that he alleges govern Corbis' and Defendant's relationship. (FAC ¶¶ 43–53). In particular, Plaintiff seeks to recover under the Ten Times Provision in those contracts. (*See id.* at ¶ 49). Plaintiff alleges that Defendant has breached the Corbis Agreements "by exceeding the material terms of the licenses and failing to pay the contractually agreed amount for doing so, i.e., refusing to pay the 10 times fees for its unauthorized uses of Lefkowitz's images." (*Id.*). [11] Defendant argues that Plaintiff is barred from asserting his breach of contract claim because a district judge in the United States District Court of Massachusetts, in *Lefkowitz v. Houghton Mifflin Harcourt Publ'g Co.,* No. 12–10614–FDS, 2013 WL 3816711, at *5 (D.Mass. July 19, 2013)* (the "Massachusetts Action"), already held that Plaintiff lacks standing to enforce the Corbis Agreements.

Plaintiff does not dispute that he is "bound" by the decision in the Massachusetts Action. (Pl.Opp.18). Instead, Plaintiff contends that the first requirement of issue preclusion—that the issues in both proceedings be identical—is not satisfied because the Massachusetts court did not evaluate the principal-agency argument that Plaintiff advances here, and because Defendant has not demonstrated that the terms of the agreements in both actions are identical. (*Id.* at 18–19 ("[T]here is a real question whether the issues were identical.")).

**\*15** Plaintiff is wrong, and the requirements of issue preclusion are satisfied. As a preliminary matter, even though the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in his favor, issue preclusion "will nonetheless bar a plaintiff's claim when [a] plaintiff's 'factual allegations have been decided otherwise in a previous litigation.' " *Poindexter v. Cash Money Records,* No. 13 Civ. 1155(RWS), 2014 WL 818955, at *3 (S.D.N.Y. Mar.3, 2014) (quoting *Jacobs v. Law Offices of Leonard N. Flamm,* No. 04 Civ. 7607(DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005)); *cf. Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp.,* No. 08 Civ. 3810(RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011) ("[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion."). In such instances, dismissal is appropriate when " 'it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter

of law.' " *Linden Airport Mgmt. Corp.,* 2011 WL 2226625, at *3 (quoting *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir.2000)); *U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.,* No. 98 Civ. 3099(JGK), 2001 WL 300735, at *23 n. 17 (S.D.N.Y. Mar.27, 2001) (relying on cases resolving Rule 12(b)(6) motions to identify that "[a] collateral estoppel defense [ ] may be analyzed on a Rule 12(c) motion where all the relevant facts are set forth in the complaint and in matters of which the Court may take judicial notice").

To resolve another preliminary matter, the Court must address Plaintiff's argument that Defendant has not met its burden with respect to the agreements at issue. (Pl.Opp.18). The Court agrees with Plaintiff that the burden of proving that the issues in both proceedings are identical is on Defendant. *Barnes v. Pozzi,* No. 10 Civ. 2554(JGK), 2012 WL 3155073, at *7 (S.D.N.Y. Aug.3, 2012) ("The burden of proving that the identical issue was previously decided is on the party asserting preclusion." (internal quotation marks omitted)). But one need only look at the agreements affixed to Plaintiff's complaint in the Massachusetts Action, which Defendant submitted with its motion (Penchina Decl., Ex 1), and the agreements attached to the FAC (FAC, Ex. 5, 7) to see that Defendant has discharged this burden. The Corbis Agreements and the Representation Agreement between Corbis and Plaintiff—the agreements on which Plaintiff relies to advance his standing argument—are the same in both cases. The Court will thus address the requirements of issue preclusion in turn.

Starting with the first requirement, the Supreme Court has held that there does not need to be perfect identity of issues. *Montana,* 440 U.S. at 155. Instead, a court must determine "first, whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; second, whether controlling facts or legal principles have changed significantly since the [prior litigation]; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion." *Id.* The Court is not aware of, nor do the parties point to, any controlling facts or legal principles that have changed since the Massachusetts decision was issued. Similarly, there are no other special circumstances that counsel against applying issue preclusion to this case. In point of fact, courts in this District "have previously applied collateral estoppel to the issue of standing." *See, e.g., Hollander v. Members of The Bd. of Regents of The Univ. of the State of New York,* No. 10 Civ. 9277(LTS)(HBP), 2011 WL 5222912, at *2 (S.D.N.Y. Oct. 31, 2011), *aff'd,* 524

F. App'x 727 (2d Cir.2013) (summary order) ("This Court has previously applied collateral estoppel to the issue of standing."); *Poindexter,* 2014 WL 818955, at *7 (holding that "Plaintiff is collaterally estopped for lack of standing, and Defendant's motion to dismiss is granted").

 **\*16**  A review of the Massachusetts Action makes clear that the breach of contract claim presented here is virtually identical to the claim decided by the Massachusetts court. In the Massachusetts Action, Plaintiff similarly alleged that publisher Houghton Mifflin Harcourt Publishing Co. ("HMH") had used his photographs in violation of Plaintiff's copyrights, and in breach of the relevant license agreements. (*See* Penchina Decl., Ex. 1). Just as here, Plaintiff sought to enforce the Corbis Agreements against HMH in the Massachusetts Action, and attached the Corbis Agreements as well as the Representation Agreement to the complaint. (*Compare* Penchina Decl., Ex. 1, ¶¶ 10–13, 16–20 & Ex. 2–3, *with* FAC ¶¶ 43–53 & Ex. 5, 7). In particular, Plaintiff alleged, as he does here, that: (i) Corbis licensed photographs as Plaintiff's agent; (ii) "HMH entered into license agreements relating to Lefkowitz'[s] images, including but not limited to the [Corbis Agreements]"; (iii) HMH breached those agreements "by exceeding material terms of the licenses and failing to pay the contractually agreed amount for doing so"; (iv) "Lefkowitz suffered damages as a result of HMH's breach of contract"; and (v) "[b]y the terms of the agreements entered into by HMH, HMH is required to pay ten (10) times the license fee for any unauthorized use, in addition to any other remedies applicable under copyright law." (*Compare* Penchina Decl. Ex. 1, ¶¶ 26–29, *with* FAC ¶¶ 44, 60, 64–65). For relief, Plaintiff sought "an award of ten (10) times the license fee for any unauthorized use." (*Compare* Penchina Decl. Ex. 1 ¶ 4, *with* FAC ¶ 6).

Among other things, HMH moved to dismiss Plaintiff's breach of contract claim for lack of standing. *Lefkowitz,* 2013 WL 3816717, at *1. HMH argued that Plaintiff had "no right to enforce the terms of the [Corbis Agreements], and therefore ha[d] no standing to bring the breach of contract claims set forth in the complaint." *Id.* at *3. The Honorable F. Dennis Saylor IV, United States District Judge for the District of Massachusetts, engaged in a detailed analysis of whether Plaintiff had standing to bring his breach of contract claims under the Corbis Agreements, ultimately holding that Plaintiff "ha[d] not set forth any adequate basis for [the court] to find that [Plaintiff] ha[d] standing to enforce the terms of the contracts between Corbis and HMH[,]" and thus "ha[d] not

adequately pleaded standing to bring any claims for breach of contract." *Id.* at *5.

Judge Saylor explained that Plaintiff "ha[d] not established that he ha[d] standing to sue as a third-party beneficiary" under New York law, the law governing the Corbis Agreements. *Lefkowitz,* 2013 WL 3816717, at *4. The court also rejected Plaintiff's argument that he had standing to sue because Corbis had assigned Plaintiff this right pursuant to a provision in Plaintiff's Representation Agreement with Corbis that, according to Plaintiff, granted him the right to sue for copyright infringement if Corbis declined to do so. *Id.* at *5. Because the court held that Plaintiff lacked standing, it granted HMH's motion to dismiss Plaintiff's breach of contract claims. *Id.*

 **\*17**  This Court is presented with the same issue of whether Plaintiff has standing to pursue his breach of contract claims against a party that licensed Plaintiff's photographs from Corbis, claims predicated on the exact same agreements on which Judge Saylor based his opinion. Moreover, the Massachusetts Action decided the issue under New York law, just as the parties would have the Court do here in accordance with the choice-of-law provision in the Corbis Agreements. (FAC, Ex. 7). Plaintiff contends that the actions are not sufficiently similar because the district court in Massachusetts did not assess the principal-agency argument that Plaintiff advances here. Even if true, the fact that Plaintiff relies on an additional argument here in support of his claim does not change the analysis. *See Hollander,* 2011 WL 5222912, at *2 (holding that collateral estoppel barred plaintiff's attempt to relitigate his standing to bring an Establishment Clause claim and stating that "[p]laintiff's attempt to litigate alternate grounds for standing in this lawsuit is improper and unavailing"). It is also irrelevant that the images at issue in the two cases may be different, because the court's ruling in the Massachusetts Action is based on the same agreements on which Plaintiff relies here to establish standing. *See Poindexter,* 2014 WL 818955, at *4 ("Although EMI concerned Plaintiff's alleged rights to the 'Thin Line Between Love and Hate' recording, Judge Swain's determination bars Plaintiff from re-litigating the ownership issue with respect to the 'Love Gonna Pack Up' recording as well, given that both recordings are governed by the same 1988 Agreement on which Judge Swain's determination is based."); *cf. Fulani v. Bentsen,* 862 F.Supp. 1140, 1149 (S.D.N.Y.1994) ("As Fulani's asserted injury has not changed, however, the Court finds that collateral estoppel is applicable despite the fact that the instant case involved the 1992 general

election debates, as opposed to the 1988 general election debates.").

Turning to the second requirement, the relevant issue— whether Plaintiff has standing to pursue his breach of contract claim pursuant to the Corbis Agreements—was actually litigated and decided in the Massachusetts Action. This is clearly demonstrated by the above summary of that action, and Plaintiff does not dispute that this requirement is satisfied. The Court's decision here, as it necessarily was in the Massachusetts Action, is limited to Plaintiff's ability to assert standing under the Corbis Agreements because it is those agreements on which Plaintiff relies and which he attached to the FAC. Plaintiff is, of course, not foreclosed from establishing standing on another basis, and the Court's decision here imparts no statement on Plaintiff's ability to do so. Indeed, Plaintiff alleges that Defendant "entered into license agreements relating to Lefkowitz's images, including but not limited to the Corbis agreements referenced in Exhibit 1" (FAC ¶ 60), thereby leaving open the potential for Plaintiff to establish standing on an agreement not now relied upon. For that reason, and because the Court has determined that Plaintiff lacks standing, the dismissal of Plaintiff's breach of contract claim will be without prejudice. See *Hernandez v. Conriv Realty Assoc.,* 182 F.3d 121, 123 (2d Cir.1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").

**\*18** As for the third requirement, Plaintiff had a "full and fair opportunity" to litigate the standing issue in the Massachusetts Action, another point that Plaintiff does not refute. *Fulani,* 862 F.Supp. at 1150 (holding that plaintiff had a "full and fair opportunity" to litigate the standing issue in a prior proceeding, on appeal, and before the Supreme Court); *see also Jefferson Ins. Co. of New York v. Fortress Re, Inc.,* 616 F.Supp. 874, 877 (S.D.N.Y.1984) ("A party given a full and fair opportunity to litigate an issue of law in one action may be estopped from relitigating it in a subsequent action."). Particularly in light of Plaintiff's "control of and participation in the" Massachusetts Action, he cannot "seriously contend that he had no 'full and fair opportunity' to litigate all issues decided" in that action. *Cent. Hudson Gas & Elec.,* 56 F.3d at 369.

Lastly, it must be decided whether the issue decided in the prior proceeding was necessary to support a valid and final judgment on the merits. This final requirement is also satisfied because the Massachusetts court's decision that Plaintiff lacked standing was the basis on which that court dismissed Plaintiff's breach of contract claim. *Lefkowitz,* 2013 WL 3816717, at \*5 ("Plaintiff has not set forth any adequate basis for this Court to find that he has standing to enforce the terms of the contracts between Corbis and [defendant].... Accordingly, defendant's motion to dismiss will be granted.").

Having found all of the requirements of collateral estoppel met, and there being no reason not to apply this doctrine here, the Court concludes that Plaintiff is estopped from asserting that he has standing to advance a breach of contract claim against Defendant predicated on the Corbis Agreements. Moreover, because the Court has found this issue precluded, it need not consider the merits of Plaintiff's breach of contract claims against Defendant. *See Fulani,* 862 F.Supp. at 1147 ("As the Court finds that plaintiffs are estopped from asserting that they have standing to challenge the CPD's taxexempt status, the Court need not consider the merits of plaintiffs' claims against the defendants."); *see also Hollander,* 2011 WL 5222912, at \*2 ("When one issue is dispositive of a matter, there is no need for the Court to address alternative grounds for disposition.").

Accordingly, Plaintiff's breach of contract claim is dismissed without prejudice.

### CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in part. To the extent Plaintiff's copyright infringement claim includes works not listed on the Lefkowitz Chart, those claims are dismissed. Defendant's motion with respect to Plaintiff's direct copyright infringement claim is otherwise denied. Defendant's motion with respect to Plaintiff's contributory copyright infringement and breach of contract claims is granted, and those claims are dismissed without prejudice.

**\*19** The Clerk of Court is directed to terminate Docket Entry No. 26.

Plaintiff is granted leave to file a second amended complaint consistent with this Opinion to cure the pleading deficiencies for Plaintiff's contributory copyright infringement claim. Plaintiff shall file his second amended complaint within four weeks from the date of this Opinion, and Plaintiff's failure to

do so will result in the entry of dismissal of that claim. The Court will schedule the next pretrial conference in due course.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2619815

## Footnotes

1    Also pending before the Court is *Lefkowitz v. McGraw–Hill Global Education Holdings, LLC, et al.,* No. 13 Civ. 5023(KPF), a related action commenced by Plaintiff against defendants McGraw–Hill Global Holdings, LLC and McGraw Hill School Education Holdings, LLC (the "McGraw Action"); there, Plaintiff asserts similar claims for copyright infringement and breach of contract, but not for contributory copyright infringement. The defendants in the McGraw Action have moved to dismiss Plaintiff's claims on the same bases as Defendant moves here. As would be expected, given the identity of issues (and of counsel), the parties have advanced nearly identical arguments. For this reason, the Court's Opinions in both cases, which are being issued on the same day, mirror one another in certain respects.

2    The facts set forth herein are taken from Plaintiff's First Amended Complaint ("FAC"), including the exhibits attached thereto, and matters of public record of which the Court may properly take judicial notice under Federal Rule of Evidence 201. 🏷 *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773–74 (2d Cir.1991) (holding that a court may consider matters of which judicial notice may be taken under Fed.R.Evid. 201). The facts drawn from Plaintiff's FAC are taken as true for purposes of this motion. *See* 🏷 *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citation omitted)).

     For convenience, Defendant's supporting memorandum is referred to as "Def. Br."; Plaintiff's opposition memorandum is referred to as "Pl. Opp."; and Defendant's reply memorandum is referred to as "Def. Reply."

3    Because particular photographs can be the subject of multiple instances of infringement, the number of instances of alleged infringement does not correlate precisely with the number of images at issue. When the Court refers to an instance of infringement, it is referring to a line of the Lefkowitz Chart.

4    According to Plaintiff, prior to filing his complaint, Plaintiff asked Defendant to disclose its unauthorized uses of his photographs. (FAC ¶ 35). As of the time of the filing of the complaint, Defendant had not responded to Plaintiff's request. (*Id.*).

5    Federal Rule of Civil Procedure 12 states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed.R.Civ.P. 12(g)(2).

6    Notably, Plaintiff does not restrict his claim to the works identified in the Lefkowitz Chart. Rather, Plaintiff alleges that Defendant exceeded the permitted uses under the terms of the limited licenses for the works identified in the Lefkowitz Chart *and* for other works "yet to be discovered." (FAC ¶ 19). To the extent that Plaintiff seeks to assert copyright infringement claims for works not listed in the Lefkowitz Chart, the Court charts a course closer to *Schneider* than to *Cole,* and dismisses that portion of the FAC. *See Warren,* 952 F.Supp.2d at 617 n. 2 ("To the extent that [plaintiff] intends to assert copyright claims regarding these unspecified photographs, that portion of his Complaint is dismissed."); *Schneider,* 2013 WL 1386968, at *3

("[T]o the extent that Plaintiff has attempted to state a claim for copyright infringement concerning works other than the ten listed in Exhibit A of the Complaint, he has failed to do so.").

7    To be clear, Plaintiff's allegations are not made sufficient by the mere existence of the other lawsuits against Defendant. Rather, the alleged existence of these lawsuits, in conjunction with the rest of Plaintiff's allegations, imparts plausibility to Plaintiff's copyright infringement claim.

8    The parties dispute whether Plaintiff had access to information regarding the license terms for the works at issue. The Court must take Plaintiff's allegations that he does not have access to certain information as true for the purposes of this pleading. *Faber,* 648 F.3d at 104 (identifying that when considering a motion to dismiss for failure to state a claim, a court must "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)). In any event, Plaintiff was not required to allege this information here in order for the FAC to meet the pleading requirement, and so the Court need not resolve this issue in order to resolve the pending motion.

9    Defendant directs the Court to the Supreme Court's recent decision in *Petrella v. Metro–Goldwyn–Mayer, Inc.,* 572 U.S. ——, 134 S.Ct. 1962, —— L.Ed.2d ——, 2014 WL 2011574 (2014), reading that case to hold that the injury rule, not the discovery rule, applies to federal copyright infringement claims. *Petrella* does not hold as such. Rather, the Supreme Court in *Petrella* held that the equitable doctrine of laches did not bar a plaintiff's claim that was brought within the three-year statute of limitations period governing copyright infringement claims. In so doing, the Court plainly did not decide when a copyright infringement action accrues, stating:

> Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."

2014 WL 2011574, at *6 n. 4 (quoting *William A. Graham Co. v. Haughey,* 568 F.3d 425, 433 (3d Cir.2009)). The Court made no further comment on the issue, thereby purposely leaving it undecided. At the same time, however, the *Petrella* Court issued certain statements that could be interpreted to cast doubt on those decisions adopting the discovery rule, such as *Psihoyos. Id.* at *6 ("A copyright claim thus arises or accrue[s] when an *infringing act occurs[.]";* "Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of *its occurrence."* (internal quotation marks omitted) (emphases added)). Be that as it may, a suggestion that the Supreme Court may favor the injury rule, without more, does not trump Second Circuit precedent. For now, *Psihoyos* remains the law of this Circuit.

10   "For judgment in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor,* 553 U.S. at 891 n. 4. Plaintiff, however, alleges that this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (providing district courts with "original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights"), and that it has supplemental jurisdiction over the breach of contract claims under 28 U.S.C. § 1367. Consequently, this Court need not assess New York State preclusion law. In any event, "there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir.2002).

11   In the context of arguing that the Ten Times Provision is enforceable under New York law, Plaintiff claims in his papers that his breach of contract claim is not for Defendant's unauthorized use of the Lefkowitz Images, but only for Defendant's refusal to pay Plaintiff in accordance with the Ten Times Provision. (Pl.Opp.22). The FAC, however, ostensibly alleges a breach of contract claim in both respects by its inclusion of the

aforementioned allegation. The Court need not address this potential inconsistency, because under either scenario Plaintiff's contract claim is premised on Defendant's alleged breach of the Corbis Agreements.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 5530308
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joshua MUZUMALA, Plaintiff,

v.

UNKNOWN FEDERAL AGENTS, et al., Defendants.

22-CV-7851 (LTS)
|
Signed August 28, 2023

**Attorneys and Law Firms**

Joshua Muzumala, Bronx, NY, Pro Se.


ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
asserting claims pursuant to 🚩 *Bivens v. Six Unknown Named
Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),
and 🚩 42 U.S.C. §§ 1981, 🚩 1983, 🚩 1985, and 🚩 1986. He
alleges that federal agents and others conspired to violate
his rights in the States of New York and Louisiana. By
order dated January 23, 2023, the Court granted Plaintiff's
request to proceed *in forma pauperis* ("IFP"), that is, without
prepayment of fees. For the reasons set forth below, the Court
dismisses this action.


STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion
of the complaint, that is frivolous or malicious, fails to state
a claim on which relief may be granted, or seeks monetary
relief from a defendant who is immune from such relief. 🚩 28
U.S.C. § 1915(e)(2)(B); *see* 🚩 *Livingston v. Adirondack
Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court
must also dismiss a complaint when the Court lacks subject
matter jurisdiction of the claims raised. *See* Fed. R. Civ. P.
12(h)(3).

While the law mandates dismissal on any of these grounds,
the Court is obliged to construe *pro se* pleadings liberally,
🚩 *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and
interpret them to raise the "strongest [claims] that they
*suggest*," 🚩 *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted) (emphasis in original). But the "special
solicitude" in *pro se* cases, 🚩 *id.* at 475 (citation omitted), has
its limits – to state a claim, *pro se* pleadings still must comply
with Rule 8 of the Federal Rules of Civil Procedure, which
requires a complaint to make a short and plain statement
showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." 🚩 *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But
it does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. 🚩 *Twombly*, 550 U.S. at 555. After separating
legal conclusions from well-pleaded factual allegations, the
Court must determine whether those facts make it plausible –
not merely possible – that the pleader is entitled to relief. *Id.*


BACKGROUND

Plaintiff brings this action alleging a wide-ranging campaign
of harassment and surveillance by private individuals and
government actors to deprive him of his rights and have him
deported. [1] Named as defendants are: (1) "[u]nknown federal
agents" (*id.* ¶ 26); (2) John Doe 1, "a federal agent most
likely from immigration enforcement" (ECF 2, ¶ 25); (3) John
Doe 2 and Jane Doe 1 (collectively "Doe couple"), a couple
who were Plaintiff's neighbors in New Paltz, New York; (4)
John Doe 3, a resident of Brooklyn, New York, "engaged"
by John Doe 1 and the unknown federal agents (*id.* ¶28); (5)
the University of New Orleans; (6) John Doe 4, a sergeant
employed by the University of New Orleans Campus Police;
(7) John Doe 5, a police officer employed by the University of
New Orleans Campus Police; (8) Neal Maroney, a professor at
the University of New Orleans; (9) John Doe 6, an employee

of the Bowery Residents' Committee's ("BRC") Boulevard Men's Residence, [2] a homeless shelter in Manhattan; and (10) Susan Brady, a doctor employed by BRC. The following is a summary of the information in the complaint, which is 96 pages long and contains 390 numbered paragraphs. [3]

## A. Defendants targeted harassment of Plaintiff at the New Paltz Garden Apartments in New Paltz, New York

**\*2** Plaintiff, who identifies himself as being "a male of African descent," moved to the United States in 2006, and since then has obtained multiple degrees. (ECF 2, ¶ 8.) [4] In September 2019, Plaintiff moved to New Paltz, New York, to enroll at the State University of New York at New Paltz ("SUNY New Paltz"). Plaintiff lived in an apartment complex close to campus called New Paltz Gardens, where he may have been the only Black resident. He "experienced xenophobia and racial animus" from a couple, John Doe 2 and Jane Doe 1, who lived in the same building. (*Id.* ¶ 10.) The Doe couple expressed their "angst" that Plaintiff had moved into the building by committing "inimical" acts towards him. This included saying that Plaintiff was "weird and sad," playing audio of monkey sounds loudly while "talking about Black people in a disparaging sense," and screaming, "[W]hy are you here?" and "Get out of here." (*Id.* ¶51.) Because of the "ongoing bias incidents" from the couple, Plaintiff asked to be released from his lease, but his request was denied, and instead he was allowed to move to another apartment in a different building within the complex. (*Id.*)

However, the Doe couple's harassment continued. They "influenced residents around Plaintiff's new apartment building and organized proxies to perpetrate the harassment of Plaintiff." (*Id.* ¶ 11.) For example, on his first day in the new apartment, a resident above him screamed, "[S]omebody get the monkey out of here." (*Id.* ¶ 52.) Plaintiff also heard Jane Doe 1 telling residents in the new building, "[W]e had to treat him like shit to get him out." (*Id.*) Plaintiff believes that the Doe couple "had for some reason become fixated with making [him] uncomfortable in his apartment and in the community." (*Id.*)

In April 2020, at about the time that Plaintiff's application for permanent residency was being processed by the United States Citizenship and Immigration Services, he noticed a change in the tenor of the harassment, as it "had started including intimations that [he] would be deported." (*Id.* ¶ 12.) Plaintiff believes that the Doe couple had involved "immigration enforcement," consisting of John Doe 1

and unknown federal agents, in the harassment "for the purposes of interfering with Plaintiff's petition for permanent residence" and "to try to get [him] removed from the country" (*Id.* ¶¶ 12, 53.) For the next seven months, the harassment escalated, forcing Plaintiff to move to Poughkeepsie, New York, in September 2020, hoping that it would stop.

## B. Defendants' harassment of Plaintiff continued in Poughkeepsie, New York

The Doe couple, John Doe 1, the unknown federal agents, and "their proxies tracked and followed" Plaintiff to Poughkeepsie, where they obtained access "under federal authority" to apartments adjacent to Plaintiff's apartment and "would surveil Plaintiff, including, but not limited to casting aspersions about [him], and alleging that [he] was a criminal and was getting deported." (*Id.* ¶¶ 16, 57.) In November 2020, Plaintiff received a positive Covid-19 test and informed his landlord of the test so that his neighbors could be informed. A few days later, Jane Doe 1 with unknown individuals drove into a parking lot adjacent to Plaintiff's apartment and screamed, "[D]ie already," after mentioning details about Plaintiff's Covid test. (*Id.* ¶ 62.)

## C. Plaintiff moved to Brooklyn, New York, where Defendants' harassment continued

In December 2020, Plaintiff decided to move to Brooklyn, New York, but all the defendants followed him there and continued the harassment, "[a]t one point, using [a] loudspeaker from an unmarked police car saying, '[Y]ou cannot hide from us.' " (*Id.* ¶ 18.) The defendants used local residents and their "proxies," including John Doe 3, who would verbally harass Plaintiff, "echoing false allegations that Plaintiff was a criminal and was getting deported." (*Id.* ¶ 69.)

On May 21, 2021, Plaintiff's petition for permanent residency was approved. When the defendants found out about the approval, Plaintiff heard Jane Doe 1 saying, "[W]e will keep doing this until we run him out of the country." (*Id.* ¶ 77.) The defendants "had made pursuing Plaintiff a personal matter and had become excessively obsessed with attempting to have Plaintiff deported from the United States." (*Id.* ¶ 79.)

## D. Defendants tracked and followed Plaintiff to New Orleans, Louisiana

**\*3** In June 2021, Plaintiff decided to move to New Orleans, Louisiana, to attend the University of New Orleans, where

he had been accepted into a Ph.D. program. Defendants again tracked him down and "repeatedly engaged in a course of conduct that would severely demonize, and defame Plaintiff." (*Id.* ¶ 21.) Defendants escalated their surveillance and harassment of Plaintiff, by (1) using "through-the-wall x-ray surveillance equipment," which caused radiation (*id.* ¶¶ 22, 105); (2) using proxies such as John Doe 4, who Plaintiff heard saying at a desk in the university library, " '[N]obody wants him. He's got to go,' and '[H]e is a weird guy,' " using language similar to language that had been used by John Doe 1, the unknown federal agents, the Doe couple, and their other proxies (*id.* ¶107); (3) "weaponizing surveillance equipment to furtively cause Plaintiff extreme pain and discomfort" (*id.* ¶ 111); and (4) subjecting Plaintiff to "ionizing radiation several times a day" (*id.* ¶ 120). Plaintiff sought assistance from the campus police, but it soon "appeared that university police were doing the bidding of Defendants John Doe 1 and [u]nknown federal agents," including following him around because they "viewed [him] as a safety concern." (*Id.* ¶¶ 102, 104.)

On September 28, 2021, Defendant Neal Maroney, a professor, responded to Plaintiff's attempt to clarify a question in class with "discriminatory and abusive language" by screaming, "[L]et's get rid of this shit." (*Id.* ¶ 124.) This language was consistent with that used by the defendants, and left Plaintiff "feeling out of place, afraid, embarrassed and unwelcome in his class." (*Id.*) Several days later, Maroney, several of Plaintiff's classmates, John Doe 1, and other unidentified individuals gathered in the hallway of a lecture hall at the university. Plaintiff believes they were having a conversation about him, which included using a "viewing device" to look at his brain. (*Id.* ¶ 128.) Plaintiff began "experiencing a severe headache, including pain and a burning sensation on the surface of his head and neck, and feeling extreme weakness in his arms and legs." (*Id.*) Defendants continued to target Plaintiff with "harassment and violence," leaving him "extremely traumatized." (*Id.* ¶¶ 131-141.)

**E. Plaintiff returned to New York and Defendants followed**

Plaintiff feared for his safety, and on November 10, 2021, he withdrew from the University of New Orleans and returned to New York. Plaintiff sought temporary housing from the City of New York, and was housed in several shelters. However, Defendants had followed him and, in the shelters, continued their harassment, which included (1) using surveillance equipment and ionizing radiation to cause him

pain; (2) housing him with roommates who threatened him and exposed him to second hand smoke and illicit substances; (3) conspiring with social service workers to get him to transfer to a mental health and substance abuse facility; (4) tracking and following him to Covid-19 isolation hotels; and (5) "advanc[ing] a false narrative that Plaintiff had a mental illness" (*id.* ¶ 189).

On December 29, 2021, Plaintiff attended a psych evaluation with Defendant Susan Brady, who asked why he was in temporary housing. He informed her of the actions taken against him by the Doe couple, John Doe 1, the unnamed federal agents, and their proxies, "tracking, following, surveilling, and harassing" him, which prevented or made it difficult for him to pursue his "education and employment goals." (*Id.* ¶ 191.) Instead of "identify[ing] the illegal immigration pursuit as the barrier in [his] current circumstances, and begin[ning] the process of addressing it," Defendant Brady diagnosed Plaintiff with schizophrenia. (*Id.* ¶¶ 192, 194.) Plaintiff, who had no history of mental illness, was "shocked, surprised and dismayed by the diagnosis," and decided that it was likely that Defendant Brady had been "influenced by John Doe 1 and the [u]nknown federal agents" in an effort to discredit him and "manufacture aggravating factors" to prevent him from getting future benefits. (*Id.* ¶ 194, 198.) After the diagnosis, Plaintiff was transferred to several mental health and substance abuse facilities, where he continued to face difficulties.

**\*4**  Plaintiff brings this action seeking injunctive relief and money damages.

## DISCUSSION

Under the IFP statute, a court must dismiss an action if it determines that the action is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A complaint is " 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless' – that is, if they are 'fanciful,' 'fantastic,' or 'delusional.' " *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton*, 504 U.S. at 32-33) (finding as frivolous and baseless allegations that set forth a fantastical alternative history of the September 11, 2001

terrorist attacks); *see also* 🚩 *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989) (A claim is frivolous when it "lacks an arguable basis either in law or in fact."); 🚩 *Livingston*, 141 F.3d at 437("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ...; or (2) the claim is based on an indisputably meritless legal theory." (internal quotation marks and citation omitted)). Moreover, a court has "no obligation to entertain pure speculation and conjecture." *Gallop*, 642 F.3d at 368.

Plaintiff's complaint is premised upon his belief that, the Doe couple, multiple federal agents, and their proxies mounted a campaign of harassment against him in an effort to have him deported, and then tracked and monitored his activities with x-ray equipment from New Paltz to New Orleans and back to New York. The defendant's actions included subjecting him to "ionizing radiation," "weaponizing surveillance equipment" against him, looking at his brain through a "viewing device," and causing him other harms. (ECF 2 ¶¶ 111, 120, 128.) However, a "[p]laintiff's beliefs – however strongly he may hold them – are not facts." *Morren v. New York Univ.*, No. 20-CV-10802, 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022). Plaintiff provides no factual basis for his assertions that he was victim of a broad conspiracy perpetrated by the Doe couple, federal immigration agents, and their proxies. *See Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-CV-6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (complaint must set forth facts showing basis for information and belief); *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010) (even where necessary evidence is in "exclusive control of the defendant, ... plaintiff must still set forth the factual basis for that belief").

The Court finds that Plaintiff does not provide any plausible factual support for his claims and that they rise to the level of the irrational. *See* 🚩 *Livingston*, 141 F.3d at 437. Plaintiff has provided the court with a narrative full of details of what he believes – that he is a victim of a broad conspiracy perpetrated by Defendants with the initial goal of his deportation, and later to deprive him of his rights. Despite all of the details provided, Plaintiff has pleaded no factual predicate in support of his assertions. Plaintiff's allegations amount to conclusory claims and suspicions that are not plausible and must be dismissed as frivolous. *See Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (holding that "the district court did not err in *sua*

*sponte* dismissing the complaint as frivolous," based on the plaintiff's allegations that he had "been the subject of 24-hour, multi-jurisdictional surveillance by federal 'fusion centers' and the New York State Intelligence Center, which put a 'digital marker' on him in order to collect his personal data and harass him."); *Khalil v. United States*, No. 17-CV-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint where "[p]laintiff allege[d] a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors" because his allegations were "irrational and wholly incredible").

**\*5** District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See* 🚩 *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); 🚩 *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff's complaint does not suggest that he is in possession of facts that would cure the identified deficiencies. *See Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188, 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend and dismisses the action as frivolous. *See* 🚩 28 U.S.C. § 1915(e)(2)(B)(i).

## CONCLUSION

Plaintiff's complaint is dismissed as frivolous under 🚩 28 U.S.C. § 1915(e)(2)(B)(i). All other pending matters in this case are terminated.

The Court certifies under 🚩 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See* 🚩 *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 5530308

## Footnotes

1       This action is the second of three complaints Plaintiff filed in this court arising from the same events. In the first
        action, *Muzumala v. Mayorkas*, No. 22-CV-3789 (JGK) (S.D.N.Y. filed May 9, 2022) ("*Muzumala I*"), Plaintiff
        asserted claims under the Freedom of Information Act ("FOIA"), 🚩 5 U.S.C. § 552, *et seq.*, alleging that the
        United States Immigration and Customs Enforcement ("ICE") and the Federal Bureau of Investigation ("FBI")
        failed to adequately respond to his document requests. He also brought statutory and constitutional claims
        against officials stemming from his belief that private individuals and government agents are trying to have
        him deported. On June 22, 2022, Judge John G. Koeltl dismissed Plaintiff's claims against the officials and
        his assertions concerning the government actors' efforts to deport him. *See Muzumala I*, 2022 WL 2916610
        (S.D.N.Y. July 22, 2022). Judge Koeltl allowed the FOIA claims to proceed. A motion to dismiss filed by ICE
        and the FBI is pending in that case.

        Plaintiff's third case, filed after submission of this action, is *Muzumala v. The City of New York*, No. 22-
        CV-8423 (LTS) (S.D.N.Y. filed Oct. 3, 2022) ("*Muzumala III*"). In that action, he asserted constitutional claims
        under 🚩 42 U.S.C. § 1983, arising from his shelter experiences in New York City. On February 21, 2023,
        the Court dismissed most of the claims, but granted Plaintiff leave to amend. *See Muzumala III*, ECF 1:22-
        CV-8423, 12. Plaintiff subsequently filed a second amended complaint, which remains pending.

        There is some duplication of allegations among Plaintiff's three actions. In all three actions, he describes
        events occurring in New Paltz, Poughkeepsie, Brooklyn, and New Orleans, involving federal agents and their
        proxies attempting to have him deported. In both this action and *Muzumala III,* Plaintiff discusses some of
        the same shelter experiences and names Dr. Susan Brady as a defendant. The Court will not address in this
        order matters that have been addressed in *Muzumala I* and *Muzumala III.*

2       BRC is a nonprofit organization that, among other things, manages shelter facilities in partnership with the
        New York City Department of Homeless Services. *See* https://www.brc.org/ (last visited Aug. 16, 2023);
        https://www.nyc.gov/site/dhs/about/bowery-residents-committee.page (last visited Aug. 16, 2023).

3       On February 2, 2023, the Court received a motion from Plaintiff requesting leave to submit an amended
        complaint. (ECF 10.) On April 10, 2023, the Court denied Plaintiff's motion as unnecessary because he could
        amend his complaint once as of right within a certain timeline under Rule 15(a) of the Federal Rules of Civil
        Procedure. (ECF 11.) The Court directed Plaintiff, if he chooses, to submit his amended complaint within
        45 days, and that, if he did not file an amended complaint within that time, the Court will treat the original
        complaint as the operative pleading. (*Id.*) Plaintiff did not file an amended complaint.

4       The Court quotes the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless
        otherwise indicated.

**WESTLAW**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Khalil v. United States, Not Reported in Fed. Supp. (2018)

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 57 of 101

2018 WL 443343
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Adil KHALIL, Plaintiff,

v.

UNITED STATES of America, Four Unknown
Federal Agents, United States Air Force General
Council [sic] Joseph M. McDade, Jr., United States
Air Force General Council [sic] Unknown Federal
Agent United States Air Force Attorney General,
United States Air Force Unknown Federal Agent,
United States Air Force Inspector General, and
Federal Agent Natalie P. Becerra, Defendants.
Adil Khalil, Plaintiff,

v.

Governor Andrew M. Cuomo, Ann M.
Sullivan, Commissioner, NYS Office of
Mental Health; New York State Trooper John
Does 1-3, the State of New York, Defendants.

17-CV-2652 (JFB) (SIL)
|
17-CV-5458 (JFB) (SIL)
|
Signed 01/12/2018

**Attorneys and Law Firms**

Adil Khalil, Shirley, NY, pro se.

Robert B. Kambic, United States Attorneys Office, Central
Islip, NY, for Defendants.

ORDER

Joseph F. Bianco, United States District Judge

**\*1** On June 2, 2017, *pro se* plaintiff Adil Khalil ("plaintiff")
filed a complaint against the United States Air Force and
the Federal Bureau of Investigations ("defendants") as well
as an application to proceed *in forma pauperis. Khalil v.
United States Air Force*, 17-cv-2652 (E.D.N.Y. June 2, 2017)
("*Khalil I*"), Dkt. Nos. 1, 2. On July 17, 2017, plaintiff moved
to transfer the action to the United States Court of Federal
Claims (*id.* Dkt. No. 6), where plaintiff had filed a related
action on July 13, 2017, *Khalil v. United States of America,*

17-cv-0962 (Fed. Cl. July 13, 2017). On August 1, 2017,
defendants requested that the Court dismiss the complaint
on subject matter jurisdiction grounds. (*See Khalil I*, Dkt.
No. 7.) However, because 28 U.S.C. § 1292(d)(4), which
governs the transfer of actions to the Court of Federal Claims,
prevents courts from taking any action when a transfer motion
is filed until sixty (60) days after that court has ruled upon
the motion, the undersigned requested that defendants submit
any opposition to the motion to transfer by August 31, 2017.
(*See id.* Dkt. No. 8.) On August 19, 2017, before defendants
responded to that Order, plaintiff opposed defendants' request
for dismissal on subject matter grounds and filed an amended
complaint. (*See id.* Dkt. No. 9). The amended complaint
names as defendants: the United States of America, four
unknown federal agents (John Does 1-4), United States Air
Force General Council Joseph M. McDade, Jr., "United States
Air Force General Council unknown Federal Agent United
States Air Force Attorney General", "United States Air Force
unknown Federal Agent", United States Air Force Inspector
General, and Federal Agent Natalie P. Becerra ("Becerra"
and collectively, "defendants"). By letter dated September
11, 2017, defendants indicated that they did not object to the
request to transfer. (*See id.* Dkt. No. 10.) In response, by
motion dated September 18, 2017, plaintiff requested that the
Court: (1) find defendants in contempt for responding to the
Court's Order on September 11, 2017, when their response
was due August 31, 2017; and (2) enter default judgment in
plaintiff's favor. (*See id.* Dkt. No. 14.)

On August 2, 2017, the Court of Federal Claims issued an
Order that: (1) dismissed the complaint, (2) denied plaintiff's
motion to transfer that case to this Court (which he filed
on the same day he moved to transfer the instant action),
and (3) denied plaintiff's motion for leave to proceed *in
forma pauperis. See Khalil v. United States,* No. 17-CV-0962
(Fed. Cl. Aug. 2, 2017), Dkt. No. 7. Given the dismissal,
by Order dated September 27, 2017, the undersigned denied
plaintiff's motion to transfer. (*Khalil I*, Dkt. No. 15.) In
addition, in light of 28 U.S.C. § 1292(d)(4)'s prohibition on
any action in a case in which a motion to transfer to the
Court of Federal Claims is filed until sixty (60) days after the
court has ruled upon the motion, the undersigned stayed all
pending motions in the instant action for sixty (60) days. (*Id.*)
On November 28, 2017, defendants renewed their request
for a pre-motion conference in order to establish a briefing
schedule for their motion pursuant to Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for
lack of subject matter jurisdiction and failure to state a cause

of action. (*Khalil I*, Dkt. 16.) To date, plaintiff has not opposed defendants' request.

**\*2**  In addition, on September 18, 2017, plaintiff filed another *in forma pauperis* complaint. *Khalil v. Cuomo*, 17-CV-5458 (E.D.N.Y. Sept. 18, 2017) ("*Khalil II*"), Dkt. Nos. 1, 2. *Khalil II* is against the State of New York, Governor Cuomo, Ann M. Sullivan, Commissioner of the New York State Office of Mental Health, and three unidentified New York State Troopers, John Does 1-3. For the reasons stated below, plaintiff's motions to proceed *in forma pauperis* are granted; however, because neither the amended complaint in *Khalil I*, nor the complaint in *Khalil II* alleges a plausible claim, the complaints are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## BACKGROUND

### I. *Khalil I*

Plaintiff's amended complaint is submitted on the Court's complaint form and purports to allege *Bivens* claims against defendants. (*See Khalil I*, Dkt. No. 9, Compl. ¶ II.) Plaintiff claims that the defendants have deprived him of his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, and have conspired to do so, in connection with their "covert or overt" surveillance of plaintiff's activities on the "world wide web (internet/electronic) and telephone conversation[s]." (*Id.* ¶¶ II.B-D., III.A.) According to the amended complaint, from June 16, 2011 to the present, plaintiff has suffered "a denial of service attack on [his] personal computer" and "the federal government has failed to protect [his] internet rights." (*Id.* ¶ 13.) Plaintiff also complains that the government has violated his rights by "intruding [his] private computer or iPhone and monopolizing or compromising his internet privacy and rights to free expression." (*Id.*) Plaintiff further complains that the government has "allowed a schizophrenic bipolar federal employee [to] violate[] online impersonation laws and cyber stalking laws." (*Id.* ¶ 14.)

Plaintiff alleges that, since his filing of the original complaint in this case on June 2, 2017, "the federal government continues to restrict [his] internet access" and "continues to allow the federal employee female stalker to threaten the plaintiff's mental well-being." (*Id.* ¶ 20.) Plaintiff claims that Becerra is being used by the FBI "as an informant/asset/operative against [him] in an attempted entrapment sting" and, since 2010, the "FBI has monopolized and [taken]

total control of [his] computer and internet." (*Id.* ¶ 25.) As evidence, plaintiff describes that "frequent Goggle [sic] search results and pop up ads on [his] computer has resulted in [a] surge of conspiracy theorists who, otherwise, without the FBI influence, would be unknown to [plaintiff.]" (*Id.*) Thus, plaintiff claims the "FBI in controlling advertisement and search results in an attempted brainwashing scheme, and is a violation of the plaintiff's fourth amendment right." (*Id.*) Plaintiff also claims that the "FBI was working in conspiracy with the NYPD" to designate plaintiff as a mentally disturbed person and that such conduct has caused plaintiff to suffer a "mental breakdown from internet stalking." (*Id.* ¶¶ 27, 28-29.)

As a result, plaintiff claims to have suffered "mental illness (adjustment disorder), complications and metastasis of an auto-immune disease, loss of employment (adjustment disorder)" and seeks to recover a damages award in total sum of $550,000,000.00. (*Id.* ¶¶ IV-V.)

### II. *Khalil II*

As noted above, on September 18, 2017, plaintiff filed an additional complaint and application to proceed *in forma pauperis* against the State of New York, Governor Andrew M. Cuomo, Ann M. Sullivan, Commissioner of the New York State Office of Mental Health, and three unidentified New York State Troopers (John Does 1-3). Like *Khalil I*, the complaint in *Khalil II* is difficult to comprehend. Plaintiff appears to complain that, on December 26, 2015 and September 7, 2017, New York State police troopers did not assist him during telephone calls he made to them. (*Khalil II*, Dkt. No. 1, Compl. ¶ 1.) Plaintiff claims he called the police to report internet harassment by "a mentally ill female stalker" he identifies as Becerra, a defendant in *Khalil I*. (*Id.* ¶ 2.) Plaintiff alleges that the State of New York has "inflict[ed] mental illness through a series of continued adjustment disorders[,] [a]nd with the filing of this instant action against the State of New York, progressing to Axis 1 major mental illness which resulted in a complete collapse of my immune system through the auto immune disease and psychological disorder Sarcoidosis." (*Id.*) Plaintiff also complains that the State of New York "has failed to enforce several laws" and cites various sections of the New York Penal Law relating to stalking and harassment. (*Id.* ¶ 4.) Plaintiff further alleges that "[t]he State of New York continues to use me as a scapegoat for their anger and frustration for the terrorist attacks on 911." (*Id.* ¶ 5.) Based on the foregoing, plaintiff claims to have suffered "mental illness (adjustment disorder), complications and metastasis of an auto-immune disease, loss

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 59 of 101

Khalil v. United States, Not Reported in Fed. Supp. (2018)

of employment (adjustment disorder). (*Id.* ¶ IV.) For relief, plaintiff seeks damages totaling $13 million. (*Id.* ¶ V.)

## DISCUSSION

### I. *In Forma Pauperis* Applications

**\*3** Upon review of plaintiff's declarations in support of the applications to proceed *in forma pauperis*, the Court finds that plaintiff is qualified to commence these actions without prepayment of the filing fees. 28 U.S.C. § 1915(a) (1). Therefore, plaintiff's applications to proceed *in forma pauperis* are granted.

### II. Sufficiency of the Pleadings

#### A. Legal Standard

It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and to construe them "to raise the strongest arguments that [they] suggest," *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage, the Court must assume the truth of "all well-pleaded, non-conclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd,* 133 S. Ct. 1659 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Further, a district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous. *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). An action is "frivolous" when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal citations omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Scanlon v. Vermont*, 542 Fed.Appx. 78, 79 (2d Cir. 2011) (summary order) ("An action is frivolous if it lacks an arguable basis in law and fact—i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.' " (quoting *Neitzke v. Williams*, 490 U.S. 319,327 (1989), *abrogated on other grounds by Twombly*, 550 U.S. at 544)); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.' " (quoting *Denton*, 504 U.S. at 32-33)).

#### B. Application

**\*4** As is readily apparent from the amended complaint in *Khalil I* and the complaint in *Khalil II*, plaintiff's claims "rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. Plaintiff alleges a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors. [1] Upon a careful reading of plaintiff's pleadings, the allegations presented appear wholly incredible and can only be described as the "product of delusion or fantasy." *Livingston*, 141 F.3d at 437. Construing plaintiff's pleadings liberally and raising the strongest arguments they suggest, the Court finds that plaintiff's allegations rise to the level of irrational and wholly incredible.

Khalil v. United States, Not Reported in Fed. Supp. (2018)

In short, having reviewed the amended complaint in *Khalil I* and complaint in *Khalil II*, it is clear that plaintiff's claims are factually frivolous, "rising to the level of the irrational or wholly incredible," *Denton*, 504 U.S. at 26, and they are therefore dismissed. *Mecca v. U.S. Gov't*, 232 Fed.Appx. 66, 677 (2d Cir. 2007) (affirming district court dismissal of complaint that was "replete with fantastic and delusional scenarios"); *Gonzales v. Wright*, 9:06-CV-1424, 2010 WL 681323, at * 12 (N.D.N.Y. Feb. 23, 2010) ("As the Second Circuit and New York District Courts have steadily recognized, it is utterly unjust to haul people into federal court to defend against, and disprove, delusions.") (collecting cases). The Court has considered affording plaintiff an opportunity to amend the complaints, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but declines to do so because the deficiencies therein could not be cured by amendment. *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002).

CONCLUSION

For the reasons above, plaintiff's *in forma pauperis* applications are granted. However, the amended complaint in *Khalil I and* the complaint in *Khalil II are sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk of the Court is directed to mail a copy of this order to the plaintiff at his last known address and to close the cases.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should plaintiff seek leave to appeal *in forma pauperis*, any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is therefore denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 443343

## Footnotes

1    In addition, given that sovereign immunity shields the United States, its agencies, and government officials acting in their official capacity, *FDIC v. Meyer,* 510 U.S. 471, 475 (1994), and that the Eleventh Amendment precludes suit in this Court against New York State, and against state officials in their official capacities seeking monetary damages, *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir. 2007), the Court likely lacks subject matter jurisdiction to adjudicate these claims. However, because the nature of the claims set forth in plaintiff's submissions is far from clear, the Court declines to determine at this juncture that it lacks subject matter jurisdiction.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 4451107
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Cheryl D. UZAMERE, Plaintiff,

v.

Ehigie Edobor UZAMERE, et al., Defendants.

22-CV-4876 (LDH) (LB)
|
Signed September 23, 2022

**Attorneys and Law Firms**

Cheryl D. Uzamere, Brooklyn, NY, Pro Se.

### MEMORANDUM AND ORDER

LaSHANN DeARCY HALL, United States District Judge:

**\*1** On July 12, 2022, Plaintiff Cheryl D. Uzamere, appearing *pro se*, filed this action in the United States District Court for the Northern District of Georgia. (Compl., ECF No. 1.) Plaintiff paid the filing fee to commence the action. (*Id.*) On August 18, 2022, the Honorable Steve C. Jones, United States District Judge, dismissed the action in part and transferred the remaining claims to this Court. (Order, ECF No. 9.) On August 25, 2022, Plaintiff filed an amended complaint naming 482 Defendants and consisting of over 3000 pages, including exhibits. (Am. Compl., ECF Nos. 12–15.)

In the span of just one week, Plaintiff filed: (a) a 418-page motion for recusal, (ECF No. 21); (b) a 137-page application for an order to show cause to compel disclosure under Fed. R. Civ. P. 26(a) (ECF No. 22); (c) a 171-page application for an order to show cause seeking relief from Judge Jones's Order under Fed. R. Civ. P. 60 (ECF No. 23); (d) a motion seeking reasonable accommodations and an extension of time to serve (ECF No. 25); and (e) a 232-page request for a certificate of default against Defendants Ehigie Edobor Uzamere and Austin I. Idehen pursuant to Fed. R. Civ. P. 55(a). (ECF Doc. Nos. 26-27.) To date, Plaintiff has not filed proof of service for the majority of the 482 Defendants.

For the reasons set forth below, Plaintiff's motions and applications are DENIED, the amended complaint is DISMISSED and Plaintiff is directed to SHOW CAUSE within 30 days why a filing injunction should not be entered barring her from filing any new action in this Court without first seeking permission.

### MOTION FOR RECUSAL

At the outset, the Court considers Plaintiff's motion for recusal ("Recusal Motion"). (ECF No. 21.) It is important to note that Plaintiff does not appear to seek the district judge's recusal, but rather seeks to recuse Magistrate Judges and court staff whom Plaintiff characterizes as "Babylonian Talmud-adherent Ashkenazi Jews. (Recusal Mot. at 2.) A party may request the removal of "[a]ny justice, judge, or magistrate judge of the United States ... in which his impartiality might reasonably be questioned." 28 U.S.C. § 455; *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007) (Section 455(a) "requires that a judge recuse himself 'in any proceeding in which his impartiality might reasonably be questioned.' " (quoting *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 859 (1988))). But "a judge should not disqualify himself in the absence of a violation of § 455." *Amico*, 486 F.3d at 781 n.4 (2d Cir. 2007). Here, Plaintiff's conclusory claims of "extrajudicial bias" (Recusal Mot. at 2), are entirely unsupported. Therefore, Plaintiff's motion is denied. *See Dekom v. Nassau Cnty.*, 595 F. App'x. 12, 15 (2d Cir. 2014) (affirming the denial of a motion for recusal where the "plaintiffs advanced no basis for the district judge to recuse herself").

### DISMISSAL OF COMPLAINT

#### BACKGROUND

Plaintiff filed a 707-page complaint against 306 Defendants in the Northern District of Georgia. (*See generally* Compl.) On August 17, 2022, Judge Jones dismissed Plaintiff's Part I spousal support claim for lack of subject matter jurisdiction and transferred Plaintiff's Part II claims to this Court. (ECF No. 9.)

**\*2** After the transfer to this Court, Plaintiff filed a voluminous amended complaint, consisting of over 3000 pages against 482 Defendants. (Am. Compl., ECF Nos. 12–15.) In Part I, Plaintiff again seeks spousal support from her

alleged estranged husband Ehigie Edobor Uzamere. [1] (Am. Compl. at 69–80 (Part I)). Plaintiff contends that based on an order issued by the Kings County Family Court Support Magistrate, Defendant Uzamere owes her spousal support of $17,500.00. (*Id.* at 69.)

In Part II, Plaintiff alleges ten causes of action, including violations of the Sherman Act, 15 U.S.C. § 1 *et seq*, the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*, the Social Security Act, 42 U.S.C. § 301, *et seq*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq*, as well as claims arising under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), 18 U.S.C. § 2441, and state law claims of intentional infliction of emotional distress and gross negligence. (ECF Nos. 12-1, 12-2, 12-3 (Part II)). The defendants include various United States Senators, including those representing states that are not New York, various Secretaries in the Executive Branch, and New York agencies.

Supporting Plaintiff's claims are a plethora of fantastical and outlandish allegations, many of which are rooted in Plaintiff's blatantly anti-Semitic beliefs. For example, Plaintiff repeatedly claims that:

> [D]efendants ... are members of the Democratic Party's Babylonian Talmud-adherent, Ashkenazi Jewish ethnoreligious cartel

> * * *

> [A] seditious conspiracy that manifests itself by the defendants' operation of a Sherman Antitrust violating, racketeer-influenced, corrupt organization for which the goal is to normalize the practice of pedophilia and associated sexual and non-sexual acts of violence and domestic terrorism against the American people, and especially against Native Americans and people of African descent to satisfy the Ashkenazi Jewish community's disproportionately high percentage of individuals who are practitioners of pedophilia

(Am. Compl., at 2, 5.) Plaintiff seeks damages, declaratory and injunctive relief. (ECF No. 12-3 at 77–86.) Plaintiff also includes numerous exhibits consisting of thousands of pages. (ECF Nos. 12-3–6, 12-13–14.) Notably, the exhibits included graphic images of children, as well as personal identifying information necessitating sealing.

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). At the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal,* 556 U.S. at 678). But the Court need not accept as true "legal conclusions." *Iqbal,* 556 U.S. at 678. In addition, a *pro se* complaint is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon,* 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)).

**\*3** Nevertheless, a district court may dismiss the complaint *sua sponte* if it determines that it lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), or that the complaint is frivolous, *see Fitzgerald v. First E. Seventh Street Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir. 2000). "An action is 'frivolous' when either: (1) 'the "factual contentions are clearly baseless," such as when allegations are the product of delusion or fantasy;' or (2) 'the claim is "based on an indisputably meritless legal theory." '" *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998) (quoting, *inter alia,* *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

## DISCUSSION

### A. Part I – Spousal Support

Federal courts are courts of limited jurisdiction and must independently verify the existence of subject matter jurisdiction before proceeding to the merits. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546 (2005);

*Doe v. United States*, 833 F.3d 192, 196 (2d Cir. 2016). The plaintiff bears the burden of establishing subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[F]ailure of subject matter jurisdiction ... may be raised at any time ... by the court *sua sponte*[,]" and "[i]f subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (citations omitted); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3).

In Part I of the amended complaint, Plaintiff seeks this Court's intervention in her ongoing attempts to bring her estranged husband to account for his alleged misconduct and abandonment. (Am. Compl. at 69–80.) Specifically, Plaintiff seeks to enforce a spousal support order dated April 1, 2021 issued by the Family Court Support Magistrate (*see* Ex. A at 88–89, ECF No. 12-1), that appears to have been later dismissed. (ECF No. 12-1 at 4 ("Defendant the Honorable Ben J. Darvil dismissed my family offense petitions."); ECF No. 12-1 at 138 ("Support Magistrate Harris' Order of dismissal which was issued on 6/27/22.").)

Plaintiff relies on Title IV of the Social Security Act, 42 U.S.C. § 660 (Am. Compl. at 61), to provide a basis for the Court's jurisdiction over Plaintiff's spousal support claim. This statute, also known as the Child Support Enforcement Act, provides that the "district courts of the United States shall have jurisdiction, without regard to any amount in controversy, to hear and determine any action certified by the Secretary of Health and Human Services under section 652(a) (8) of this title." *See* 42 U.S.C. § 660. In *Blessing v. Freestone*, the Supreme Court held that this section of the Social Security did not "give rise to individual rights." 520 U.S. 329, 343–44 (1997) ("Title IV-D [of the Social Security Act, 42 U.S.C. §§ 651-669(b)] contains no private remedy—either judicial or administrative—through which aggrieved persons can seek redress."). Nothing Plaintiff has alleged establishes that she has an enforceable right under this provision of the Social Security Act.

Moreover, the domestic relations abstention doctrine prevents the Court from intervening in Plaintiff's spousal support matter unless Plaintiff can show an obstacle to the full and fair determination of that dispute in state court. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (federal district court should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child[ ]" (internal quotation marks and citation omitted)); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 622–24 (2d Cir. 2019). Plaintiff has not sufficiently alleged that an obstacle exists to the fair determination of this dispute in state court. Thus, Part I of Plaintiff's complaint is dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). [2]

### B. Part II – Other Claims

**\*4** Plaintiff's remaining federal claims are frivolous because " 'the "factual contentions are clearly baseless," ' " and " 'are the product of delusion or fantasy.' " *Livingston*, 141 F.3d at 437. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Even a well-pleaded complaint may be dismissed as factually frivolous "if the sufficiently well-pleaded facts are clearly baseless—that is, they are fanciful, fantastic, or delusional." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (internal quotation marks omitted). Plaintiff's complaint contains allegations of the delusional variety. The federal claims rely entirely on her contention that all 482 Defendants are part of a wide-ranging "Babylonian Talmudic, Ashkenazi Jewish ethnoreligious cartel" that allegedly condones "pedophilia and sexual violence," and is somehow responsible for Plaintiff's failure to obtain spousal support from her estranged husband. (*See generally* Am. Compl.) Among the 482 Defendants is anyone ever associated with Plaintiff's claim for spousal support, judges (federal and state), elected officials (federal and state), government officials (federal and state), agencies of the federal, state, and local governments, attorneys, federal and state prosecutors, newspapers, private companies, non-profit organizations, and the Attorney General for every state in the nation. Parsing the amended complaint reveals zero factual allegations that support this alleged conspiracy, which demonstrates the claims' delusional nature. [3] The amended complaint, therefore, must be dismissed.

### ORDER TO SHOW CAUSE

It is well-settled that "[t]he district courts have the power and the obligation to protect the public and the efficient

administration of justice from individuals who have a 'history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel.' " *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (citation omitted). "If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (citation omitted); 🚩 *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) (outlining factors to be considered in imposing a filing injunction); *see also* 🚩 28 U.S.C. § 1651(a).

Plaintiff has a history of filing vexatious and harassing lawsuits necessitating restrictions on access to the court. She has filed over 20 federal cases in the district courts of New York and Rhode Island, the United States Court of Federal Claims, and the United States Court of Appeals for the First and Second Circuits. The vast majority of these cases are related to Plaintiff's issues with her estranged husband. For example, Plaintiff has filed the following cases in the Eastern District of New York:

- *Uzamere v. John Doe, et al.*, No. 07-CV-2471 (NGG) (LB) (E.D.N.Y. July 6, 2007) (case dismissed for lack of subject matter jurisdiction regarding Plaintiff's divorce);

- *Uzamere v. Bush, et al.*, No. 08-CV-0891 (NGG) (LB) (E.D.N.Y. Apr. 8, 2008) (case dismissed and Plaintiff warned that the filing of frivolous and vexatious complaints may result in sanctions);

- *Uzamere v. State of New York, et al.*, No. 09-CV-2703 (NGG) (LB) (E.D.N.Y. July 9, 2009) (same), *appeal dismissed*, No. 09-3197-cv (2d Cir. Oct., 13, 2009);

- *Uzamere v. USPS*, No. 09-CV-3709 (NGG) (LB) (E.D.N.Y. Oct. 21, 2009) (same);

- *Uzamere v. Cuomo, et al.*, No. 11-CV-2831 (NGG) (LB) (E.D.N.Y. June 22, 2011) (case dismissed as frivolous and noting that "Plaintiff has a long, tired history of vexatious litigation in this court."), *appeal dismissed*, No. 11-2713-cv (2d. Cir. Nov. 28, 2011), *cert. denied*, 565 U.S. 1264 (Mar. 19, 2012).

**\*5** Plaintiff has filed in the Southern District of New York:

- *Uzamere v. Family Court*, No. 94-CV-4200 (TPG), slip op. (S.D.N.Y. June 8, 1994) (case dismissed);

- *Uzamere v. Allen E. Kaye, P.C., et al.*, 09-CV-3506 (LBS) (S.D.N.Y. Apr. 2, 2009) (case dismissed for lack of subject matter jurisdiction and immunity and warning Plaintiff that she may be barred from filing complaints related to her husband without first seeking leave of Court), *appeal dismissed*, No. 09-1600-cv (2d Cir. June 24, 2009), *cert. denied*, 558 U.S. 965 (Oct. 13, 2009);

- *Uzamere v. USPS, et al.*, No. 10-CV-7668 (LAP) (S.D.N.Y. Oct. 6, 2010) (case dismissed);

- *Uzamere v. State of New York, et al.*, No. 19-CV-9064 (CM) (S.D.N.Y. Oct. 22, 2019) (case dismissed and Plaintiff barred from filing future *in forma pauperis* actions in the SDNY without first obtaining permission from the Court), *appeal dismissed*, No. 19-3825 (2d Cir. Apr. 10, 2020).

Plaintiff has filed in the Federal Court of Claims:

- *Uzamere v. United States*, Nos. 10-585C, 10-591C, 2010 WL 3528897 (Fed. Cl. Sept. 3, 2010) (two cases consolidated and dismissed for lack of subject matter jurisdiction).

Plaintiff has filed in the District of Rhode Island:

- *Uzamere v. United States*, No. 13-505 (WES), 2013 WL 5781216 (D.R.I. Oct. 25, 2013) (case dismissed and Plaintiff warned against filing further frivolous actions), *aff'd*, No. 13-2454 (1st Cir. Apr. 11, 2014), *cert. denied*, 574 U.S. 981 (Nov. 3, 2014).

In light of the nature of Plaintiff's instant action, her incessant submission of vexatious and repetitive lawsuits, and Plaintiff's persistence despite numerous warnings and a prior filing injunction issued by the Southern District of New York, she is hereby directed to show cause why she should not be barred from filing any new action (regardless of whether

Plaintiff pays the filing fee or seeks *in forma pauperis* status) in this Court without first obtaining permission. Plaintiff shall file an affirmation within 30 days from the date of this order setting forth good cause why the Court should not impose a filing injunction. If Plaintiff fails to file an affirmation within the time allowed or if her affirmation fails to provide good cause for why the filing injunction should not issue, an order barring Plaintiff from filing any new action in this Court, without first obtaining the Court's permission, shall enter.

## CONCLUSION

For the reasons set forth above, the spousal support claim is DISMISSED for lack of subject matter jurisdiction, and the remaining federal claims are DISMISSED as frivolous. Having dismissed all the federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Plaintiff's motion for recusal is DENIED and all other pending motions are DENIED as moot. Unless otherwise directed by the Court, Plaintiff is prohibited from directly contacting any judicial chambers by telephone, electronic mail, fax or other means.

The Court further directs Plaintiff to SHOW CAUSE why she should not be barred from filing any new civil action without first obtaining the Court's permission within 30 days as set forth above. The Court directs Plaintiff to utilize the Affirmation form included with this Memorandum and Order and to refrain from submitting inappropriate or voluminous documents. All further proceedings shall be stayed for 30 days or until Plaintiff files the Affirmation, whichever is earlier.

 **\*6** Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

                        Attachment

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

CHERYL D. UZAMERE,

                     Plaintiff,                PLAINTIFF'S AFFIRMATION
     -against-                                 22-CV-4876 (LDH) (LB)

EHIGIE EDOBOR UZAMERE, *et al*,

                     Defendants.
-------------------------------------------------------X

     CHERYL D. UZAMERE, appearing *pro se*, make the following affirmation under the penalties of perjury: I am the Plaintiff in this action and I respectfully submit this affirmation in response to the Court's Order to Show Cause dated _____.

     I should not be barred from filing any new action without first obtaining the district court's permission because _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

                     [YOU MAY ATTACH ADDITIONAL PAGES]
     In view of the foregoing, it is respectfully submitted that the Court should not enter a filing injunction.

DATED: _____

                              _____
                              Signature

                              _____
                              Address

                              _____
                              City, State & Zip Code

## All Citations

Slip Copy, 2022 WL 4451107

**Footnotes**

1    Plaintiff's own papers reveal that Ehigie Edobor Uzamere has disputed that he is Plaintiff's spouse. (Ex. 1 at 132, ECF No. 12-1.)

2    Plaintiff also alleges diversity jurisdiction (Am. Compl. at 61), but complete diversity of citizenship is lacking. *See* 28 U.S.C. § 1332; *see Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (diversity requires that "all plaintiffs ... be citizens of states diverse from those of all defendants."). Even if diversity of citizenship existed, the domestic relations exception doctrine would deprive the Court of subject matter jurisdiction over this claim. *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) (domestic relations exception to subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees").

3    The Court notes that Plaintiff has filed a number of exhibits that do not support any plausible claims. For example, in addition to her anti-Semitic submissions, she includes explicit photographs of genitalia and other photographs which are disturbing and have nothing to do with her underlying claim for spousal support. (*See, e.g.*, Am. Compl., ECF No. 12-4.) The Court takes further notice that Plaintiff has inundated the Court with voluminous submissions which has burdened the Court's resources and that she has, at times, engaged in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers. Plaintiff has also attempted to contact judicial staff outside of the Courthouse.

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 68 of 101

Brown v. Peters, Not Reported in F.Supp. (1997)

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

 *2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 72 of 101

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants.[1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

**Attorneys and Law Firms**

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Pourzanvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 74 of 101

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 75 of 101

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 76 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

⚑ *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 77 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 78 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits."

*Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See* *Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She

also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil*

Case 5:22-cv-01077-BKS-ML   Document 12   Filed 09/15/23   Page 79 of 101

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

*v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf.* *Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (per curiam) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

### IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

### CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation are denied.

Case 5:22-cv-01077-BKS-ML    Document 12    Filed 09/15/23    Page 80 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an

affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

2023 WL 2891236
Only the Westlaw citation is currently available.
United States District Court, D. Idaho.

Chad. L. WILLINGHAM, Petitioner,

v.

Jennie WILLINGHAM and Aubree Taylor, Respondents.

Case No. 1:23-cv-0045-BLW
|
Signed April 11, 2023

**Attorneys and Law Firms**

Chad L. Willingham, Boise, ID, Pro Se.

**INITIAL REVIEW ORDER BY SCREENING JUDGE**

B. Lynn Winmill, United States District Court Judge

**\*1**  The Complaint of Petitioner Chad L. Willingham brought under authority of the "All Writs Act," 28 U.S.C. § 1651, and other provisions of law, was conditionally filed by the Clerk of Court due to his status as a prisoner and pauper. Dkts. 1, 3. A "conditional filing" means that Petitioner must obtain authorization from the Court to proceed. After reviewing the Complaint, the Court has determined that Petitioner cannot proceed.

**REVIEW OF COMPLAINT**

**1. Standard of Law**

The Prison Litigation Reform Act (PLRA) [1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

Petitioner seeks habeas corpus relief under 28 U.S.C. § 1651, popularly known as the "All Writs Act." That section provides in part: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

The term "all writs" does not actually mean any and all writs a petitioner might desire, but only those writs that are within the federal court's jurisdiction to issue. A federal district court "lacks jurisdiction to issue a writ of mandamus to a state court." *Demos v. U.S. Dist. Court, E. Dist. of Wash.*, 925 F.2d 1160, 1161 (9th Cir. 1991) (citing 28 U.S.C. § 1651). As "a general rule," we, as federal district courts, cannot use our "power to issue mandamus to a state judicial officer to control or interfere with state court litigation, thus exceeding our jurisdiction." *Accord, In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) (internal citations omitted) (denying petition for writ of mandamus that asked federal court to order state court to give petitioner access to certain trial transcripts). "[T]to the extent that [Petitioner] attempts to obtain a writ in [federal] court to compel a state court to take or refrain from some action, the petitions are frivolous as a matter of law." *Demos*, 925 F.2d at 1161-62.

**2. Factual Allegations and Discussion**

After a jury trial, Petitioner was convicted of lewd conduct in the Bannock County District Court. He alleges that, because his wife was having an affair and wanted a divorce, she falsified allegations that he had committed lewd conduct with their daughter. After sentencing, he pursue an appeal, which has been dismissed, with the Idaho Supreme Court denying his petition for review. The Court takes judicial notice of the Register of Actions in Petitioner's state court criminal matter. See Exhibit to this Order.

Petitioner asserts that, although his divorce decree grants him joint custody of his daughter, his wife has removed his daughter to a secret location, and it has been nearly two years since he had notice of daughter's address. Petitioner has not alleged that he filed an order to show cause or other motion in state court to attempt to resolve this issue. Family law matters, such as support and custody, are within the exclusive jurisdiction of the state courts. *See Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968).

**\*2**  Petitioner also asserts claims under the Crime Victim Rights Act, 18 U.S.C. § 3771, and other criminal statutes. Petitioner states that he would like to have his ex-wife and the other defendant prosecuted for removing Petitioner's daughter from her prior residence. However, federal criminal

statutes found in Title 18 of the United States Code, do not provide a basis for a private cause of action, but, rather, must be prosecuted by the Attorney General. *See Pawelek v. Paramount Studios Corp.*, 571 F.Supp. 1082, 1083 (N.D. Ill. 1983) (no private cause of action is inherent in federal criminal statutes defining civil rights violations). *Accord, Bryant v. Quintero*, 2001 WL 1018717, \*2 (N.D. Cal. 2001) (there is no private cause of action under Title 18, and no amendment can cure such a deficiency). Similarly, Petitioner is not classified as a "victim of a crime" because he has not reported any criminal actions now underway against his ex-wife and the other defendant related to removing his daughter from her prior residence without notice to Petitioner. For that reason, the statutes Petitioner has cited do not apply presently.

**3. Conclusion**

The law is clear that this Court has no jurisdiction under the All Writs Act, or any other provision of law cited by Petitioner, to usurp a state court's authority by interfering with either a domestic relations case or a state criminal case. In

*United States v. Denedo*, 556 U.S. 904, (2009), the United States Supreme Court explained the narrow reach of the All Writs Act:

> As [*Clinton v.*] *Goldsmith*[, 526 U.S. 529, 129 S.Ct. 2213 (1999)], makes plain, the All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction. 526 U.S., at 534–535, 119 S.Ct. 1538. Statutes which address the power of a court to use certain writs or remedies or to decree certain forms of relief, for instance to award damages in some specified measure, in some circumstances might be construed also as a grant of jurisdiction to hear and determine the underlying cause of action. *Cf.* *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803). We have long held, however, that the All Writs Act should not be interpreted in this way. *Goldsmith, supra*, at 536, 119 S.Ct. 1538; *Plumer*, 27 F. Cas., at 574 (jurisdiction cannot be acquired "by means of the writ to be issued"). The authority to issue a writ under the All Writs Act is not a font of jurisdiction. *See* *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 31, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002).

*Id.* at 913–14.

Accordingly, the Court concludes that it is without the subject matter jurisdiction Petitioner seeks to invoke. Petitioner has

failed to state a federal claim upon which relief can be granted, and the entire case will be dismissed. Because there is no possibility that amendment would result in a cognizable claim at this tune, the Court will not grant leave to amend. However, the Court will dismiss this case without prejudice to Petitioner bringing a proper claim if his ex-wife and the other defendant are prosecuted for and convicted of the crimes Petitioner believes they have committed.

**ORDER**

IT IS ORDERED:

1. Petitioner's In Forma Pauperis Application (Dkt. 3) is GRANTED.

2. The Motion to Expedite (Dkt. 8) is GRANTED to the extent this Order has been issued.

3. The Complaint for Writ of Mandate (Dkt. 1) is DISMISSED without prejudice for failure to state a federal claim upon which relief can be granted.

Attachment







Original Type
Video Arraignment

Judicial Officer
Murray, Bryan K.

Hearing Time
1:30 PM

Result
Hearing Held

Parties Present ▲
Defendant: Willingham, Chad L.

05/13/2021 Warrant Returned - Served ▼

Comment
05-13-2021 by BCS

05/14/2021 Arraignment ▼

Judicial Officer
Murray, Bryan K.

05/14/2021 Notification of Rights ▼

Judicial Officer
Murray, Bryan K.

05/14/2021 Order Appointing Public Defender ▼

Judicial Officer
Murray, Bryan K.

05/14/2021 Bond Set ▼

Judicial Officer          Comment
Murray, Bryan K.          $75,000.00 and NCO

05/14/2021 Custody Order of Sheriff ▼

Judicial Officer
Murray, Bryan K.

05/14/2021 Notice of Hearing ▼

Judicial Officer
Murray, Bryan K.

05/14/2021 Pretrial Services Program Interview

05/14/2021 Application for Public Defender

05/14/2021 No Contact Order

05/14/2021 Court Minutes

05/14/2021 No Contact Order ▼

Judicial Officer
Murray, Bryan K.

05/20/2021 Request for Discovery ▼

Comment
Request for Discovery

05/24/2021 Preliminary Hearing ▼

Original Type
Preliminary Hearing

Judicial Officer
Axline, Scott E.

Hearing Time
2:00 PM

Result
Hearing Held

Parties Present ▲
State: State of Idaho

Prosecuting Attorney: Tognetti, Erin Jennifer

Defendant: Willingham, Chad L.

05/24/2021 Order Waiving Preliminary Hearing (On the Record) ▼

Judicial Officer
Axline, Scott E.

05/24/2021 Waiver of Preliminary Hearing

05/24/2021 Felony Information Filed

05/24/2021 Bound Over (after Prelim)

05/27/2021 Motion ▼

Comment
for Release on Own Recognizance

05/26/2021 Notice of Remote Hearing

05/28/2021 Notice of Hearing

06/01/2021 Objection ▼

Comment
To OR Release Or Bail Reduction

06/08/2021 Response to Request for Discovery

08/01/2021 Arraignment - District Court ▼

Original Type
Arraignment - District Court

Judicial Officer
Camaroli, Rick

Hearing Time
8:30 AM

Result
Hearing Held

Comment
& dfdt's motion for OR

Parties Present ▲
State: State of Idaho

Prosecuting Attorney: Tognetti, Erin Jennifer

Defendant: Willingham, Chad L.

06/01/2021 Appear & Plead Not Guilty ▼

Judicial Officer
Camaroli, Rick

06/01/2021 Custody Order of Sheriff ▼

Judicial Officer          Comment
Camaroli, Rick           reduced to $50,000.00 ball

06/05/2021 Court Minutes ▼

Comment
and Order for Bail Reduction

06/05/2021 Motion to Withdraw ▼

Comment
Motion toDue to Conflict of Interest

06/30/2021 Notice of Trial Setting, Final Pre-Trial Conference & Order

07/01/2021 Order Granting Leave to Withdraw as Atty of Record

07/06/2021 Order of Appointment of Conflict Public Defender ▾

Comment
Craig Parrish appt'd

07/16/2021 Motion ▾

Comment
to Appoint a Resource Judge

07/20/2021 Supplemental Response to Request for Discovery

07/27/2021 Order Appt Alt Dist Judge to Review: Def Financial Request

08/26/2021 Pre-trial Conference ▾

Original Type
Pre-trial Conference

Judicial Officer
Camaroli, Rick

Hearing Time
3:03 PM

Result
Hearing Continued

09/20/2021 Notice of Intent to Present 404b Evidence At Trial

09/20/2021 Brief Filed ▾

Comment
Brief in Support Motion Pursuant to 404b

09/20/2021 Continued ▾

Judicial Officer
Camaroli, Rick

09/20/2021 Notice of Hearing ▾

Judicial Officer
Camaroli, Rick

09/21/2021 Motion to Compel

09/21/2021 Motion in Limine

09/22/2021 Supplemental Response to Request for Discovery ▾

Comment
2nd

09/22/2021 Objection ▾

Comment
To Motion To Compel

10/05/2021 Jury Trial ▾

Judicial Officer
Camaroli, Rick

Hearing Time
9:00 AM

Cancel Reason
Vacated COVID-19

10/15/2021 Motion in Limine

10/15/2021 Motion ▾

Comment
for O.R. Release

10/18/2021 Pre-trial Conference ▾

Original Type
Pre-trial Conference

Judicial Officer
Camaroli, Rick

Hearing Time
3:00 PM

Result
Hearing Continued

10/18/2021 Objection ▾

Comment
Opposition to Defendant's Motion for O.R. Release

10/18/2021 Continued ▾

Judicial Officer
Camarol, Rick

10/18/2021 Notice of Hearing ▾

Judicial Officer
Camarol, Rick

10/26/2021 Receipt ▾

Comment
Invoice for Private Investigator

11/05/2021 Jury Trial ▾

Judicial Officer
Camarol, Rick

Hearing Time
9:00 AM

Cancel Reason
Vacated COVID-19

11/05/2021 Response ▾

Comment
to State's Opposition to Defendant's Motion for O.R. Release

11/23/2021 Motion to Release on Own Recognizance ▾

Original Type
Motion to Release on Own Recognizance

Judicial Officer
Camarol, Rick

Hearing Time
8:30 AM

Result
Hearing Held

Parties Present▲
State: State of Idaho

Prosecuting Attorney: Tognetti, Erin Jennifer

Defendant: Willingham, Chad L

11/23/2021 Court Minutes

12/01/2021 Order ▾

Comment
Denying Defendants Motion for OR Release or Bond Reduction

12/01/2021 Notice of Hearing ▾

12/01/2021 Motion ▾

Comment
For Physical Exam

12/06/2021 Supplemental Response to Request for Discovery ▾

Comment
3rd Supplemental Response to Request For Discovery

12/20/2021 Pre-trial Conference ▾

Original Type
Pre-trial Conference

Judicial Officer
Camarol, Rick

Hearing Time
3:00 PM

Result
Hearing Held

12/20/2021 Supplemental Response to Request for Discovery ▾

Comment
4th

12/20/2021 Response to Request for Discovery

12/20/2021 Interim Hearing Held ▾

Judicial Officer          Comment
Camarol, Rick             off record, matter remains set for jury trial

12/07/2021 Proposed Jury Instructions ▾

Comment
State's

12/07/2021 Exhibit List/Log ▾

Comment
State's

12/07/2021 Witness List ▾

Comment
State's

12/28/2021 Order for Detention ▾

Comment
/s/ J Jarman 12/15/21

12/28/2021 Petition ▾

Comment
for Detention for Purpose of Obtaining Evidence of Identifying Physical Characteristics

12/28/2021 Affidavit / Return of Service ▾

Comment
on Detention Order

12/28/2021 Notice of Remote Hearing

12/29/2021 Jury Roll Call

12/29/2021 Motion to Dismiss

12/29/2021 Brief Filed ▾

Comment
of Defendant in Support of Motion to Dismiss

12/29/2021 Affidavit in Support of Motion ▾

Comment
Affidavit of Counsel in Support of Motion to Dismiss

12/29/2021 Affidavit in Support of Motion ▾

Comment
Affidavit of Investigator in Support of Motion to Dismiss

12/29/2021 Supplemental Response to Request for Discovery

12/30/2021 Objection ▾

Comment
to Defendant's Motion to Dismiss

12/30/2021 Motion in Limine ▾

Comment
State's

01/03/2022 Motion in Limine ▾

Original Type
Motion in Limine

Judicial Officer
Carmack, Rick

Hearing Time
02:30 PM

Result
Hearing Held

Comment
State end dfdt

Parties Present ▴
State: State of Idaho

Prosecuting Attorney: Tognetti, Erin Jennifer

Defendant: Willingham, Chad L.

01/03/2022 Motion ▾

Comment
to Allow Street Clothes

01/03/2022 Order ▾

Comment
To Allow Street Clothes

01/03/2022 Objection ▾

Comment
to Trial in Masks

01/03/2022 Court Minutes

01/04/2022 Jury Trial ▾

Judicial Officer
Carmack, Rick

Hearing Time
9:00 AM

Cancel Reason
Vacated

01/05/2022 Order ▾

Comment
Vacating Trial Date and Notice of Hearing

01/06/2022 Motion ▾

Comment
for Transcript

01/07/2022 Order for Transcript

01/14/2022 Transcript Filed ▾

Comment
SEALED/RESTRICTED ACCESS

01/18/2022 Pre-trial Conference ▾

Original Type
Pre-trial Conference

Judicial Officer
Camaroli, Rick

Hearing Time
3:00 PM

Result
Hearing Continued

01/18/2022 Interim Hearing Held ▾

Judicial Officer        Comment
Camaroli, Rick          off record - remains set for jury trial

01/18/2022 Notice of Hearing ▾

Judicial Officer
Camaroli, Rick

01/24/2022 Receipt ▾

Comment
Invoice for Private Investigator

01/27/2022 Restitution Request

02/01/2022 Jury Trial ▾

Judicial Officer
Camaroli, Rick

Hearing Time
9:00 AM

Cancel Reason
Vacated COVID-19

02/11/2022 Notice of Remote Hearing

02/15/2022 Jury Trial ▾

Judicial Officer
Camaroli, Rick

Hearing Time
9:00 AM

Cancel Reason
Vacated COVID-19

02/15/2022 Receipt ▾

Comment
Invoice for Private Investigator

02/22/2022 Pre-trial Conference ▾

Judicial Officer
Camaroli, Rick

Hearing Time
3:00 PM

02/23/2022 Motion to Continue ▾

Comment
Trial Date

02/23/2022 Declaration in Support of Motion ▾

Comment
to Continue Trial Date

02/24/2022 Objection ▾

Comment
to Defendant's Motion to Continue

02/24/2022 Notice of Remote Hearing

02/28/2022 Motion to Continue ▾

Original Type
Motion to Continue

Judicial Officer
Camaroli, Rick

















**All Citations**

Slip Copy, 2023 WL 2891236

**Footnotes**

1    Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 🚩42 U.S.C. § 1997e, *et seq.*

---

**End of Document**                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 1018717
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Eric Bernard BRYANT, Plaintiff,

v.

Dianna QUINTERO; Dolly Ayers; Heather V. Gorley;
Daniel Nishigaya; and Zach V. Ledet, Defendants.

No. C 01-2721(WHA)(PR).
|
Aug. 20, 2001.

ORDER OF DISMISSAL

ALSUP, J.

**\*1** Plaintiff, an inmate at the Sierra Conservation Center in Jamestown, has filed a pro se civil rights complaint under 42 U.S.C. § 1983.

DISCUSSION

A. *Standard of Review*

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b)(1),(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

B. *Analysis*

Plaintiff alleges that Dianne Quintero, who had formerly been in a relationship with Plaintiff and who was the complaining witness, gave testimony at trial which conflicted with her Family Court testimony. He also asserts that defendant Ayers, who represented Quintero in Family Court, filed a false declaration there; that defendant Gorley, the court reporter in Family Court, supplied a false or erroneous transcript; that defendant Ledet, his public defender, failed to defend him properly; and that defendant Nishigaya, the prosecutor, knowingly used false evidence. The relief he requests is "[a] criminal investigation of the family court transcript," that "charges [be] filed," and a "[n]ew trial with a State Public Defender[,] Stephanie Clarke."

To the extent plaintiff seeks to challenge either the fact or duration of his confinement-for instance via his request for a new trial-his sole remedy is to file a petition for writ of habeas corpus, *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973), after he exhausts state judicial remedies, *Granberry v. Greer,* 481 U.S. 129, 134 (1987). Plaintiff's requests that the Court order a "criminal investigation" and that "charges [be] filed" are not actionable in a civil rights case. *See United States v. Batchelder,* 442 U.S. 114, 124 (1979) (whether to prosecute and what criminal charges to file or bring are decisions that generally rest in the prosecutor's, not the court's, discretion); *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375 (2d Cir.1973) (prosecution of state officials for alleged violation of inmates' federal civil rights is for discretion of U.S. Attorney). Nor do criminal statutes generally provide a private cause of action or basis for civil liability. *See. e.g.,* *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980).

District courts must afford pro se prisoner litigants an opportunity to amend to correct any deficiency in their complaints, unless no amendment could save the complaint. *See Lopez v. Smith,* 203 F.3d 1122, 1127, 1129 (9th Cir.2000) (en banc). Plaintiff could amend to request only damages, in an attempt to avoid the *Preiser* bar discussed above, but he would then fall afoul of the bar announced in *Heck v. Humphrey,* 114 S.Ct. 2364, 2372 (1994).

**\*2** As Plaintiff's request for a new trial makes clear, the essence of his claim is that Defendants acted improperly to cause his conviction. The United States Supreme Court has held that to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.*

When a state prisoner's ⚑ section 1983 suit implicates the length of his or her incarceration, the complaint must be dismissed unless the plaintiff can demonstrate that the decision establishing the length of incarceration has already been invalidated. *Id.* If this Plaintiff were to amend to request only damages, a judgment in his favor would imply the invalidity of a state conviction which has not already been invalidated; therefore, such an amended complaint would still fail to state a cognizable claim under ⚑ 1983. For that reason, an amendment could not save this claim and the dismissal will be without leave to amend. [1]

Plaintiff also alleges claims under 42 U.S.C. §§ 241 and 242. The subject of 42 U.S.C. § 241 is scientific studies about "the causes, diagnosis, treatment, control, and prevention of physical and mental diseases and impairments of man...." 42 U.S.C. § 242 relates to scientific studies about narcotic drugs. Nothing in the complaint has to do with these subjects. The complaint fails to state a claim under these sections, but his citation of them is obviously in error. It appears

likely that Plaintiff is referring to ⚑ 18 U.S.C. §§ 241 and ⚑ 242, which are criminal statutes involving deprivations of civil rights. If so, he also has failed to state a claim under these statutes. *See, e.g., Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980) ( 18 U.S.C. §§ 241, 242 provide no private right of action and cannot form basis for civil suit), *Pawelek v. Paramount Studios Corp.,* 571 F.Supp. 1082, 1083 (N.D.Ill.1983) (no private cause of action inherent in federal criminal statutes defining civil rights violations). No amendment could cure this deficiency.

CONCLUSION

Leave to proceed in forma pauperis (doc 3) is DENIED. For the foregoing reasons plaintiff's complaint is DISMISSED without leave to amend.

The Clerk shall close the file.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 1018717

---

## Footnotes

[1]    "[A] ⚑ § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck,* 114 S.Ct. at 2374 (footnote omitted). Plaintiff has not made a claim for damages here; the Court's discussion regarding such a hypothetical claim is solely for purposes of determining whether the dismissal should be with leave to amend. If Plaintiff succeeds in getting his conviction set aside by way of direct appeal or in a state or federal habeas action, a subsequent claim for damages would accrue when the conviction is set aside. This dismissal is not preclusive of any such claim.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2827301
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

Durwin Evant BONDS, Jr., Plaintiff,
v.
Commonwealth of VIRGINIA, et al., Defendants.

Civil Case No. 7:21-cv-00363
|
Signed 07/06/2021
|
Filed 07/07/2021

**Attorneys and Law Firms**

Durwin Evant Bonds, Craigsville, VA, Pro Se.

**MEMORANDUM OPINION**

Michael F. Urbanski, Chief United States District Judge

**\*1** Durwin Evant Bonds, Jr., a Virginia inmate proceeding *pro se*, has filed a complaint in this court pursuant to 42 U.S.C. § 1983. The complaint lists two plaintiffs: Bonds and Turf Workers Plus, described as a sole proprietorship owned by Bonds.[1] (The court will hereinafter refer collectively to both plaintiffs as "Bonds," using the singular.) The case is before the court for review pursuant to 28 U.S.C. § 1915A, which requires the court to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2) (requiring a court to dismiss a case in which a plaintiff has been granted authority to proceed *in forma pauperis* if the court determines that the action fails to state a claim or seeks monetary relief against an immune defendant).[2]

As explained in more detail below, the complaint fails to state a claim for which relief can be granted and thus must be dismissed.

I. BACKGROUND

Bonds's complaint names the following twelve defendants: Commonwealth of Virginia, Roanoke City Sheriff Department, Roanoke City Police Department, Roanoke City Magistrate Office, Roanoke City Commonwealth Attorney Office, City of Roanoke, Officer K.L. Dooley, Sgt. T.S. Wallace, Sheriff Tim Allen, Chief Sam Roman, Senator Tim Kaine, and Governor Ralph Northam.

Although Bonds's complaint spans more than forty pages, not including exhibits, his allegations are straightforward. He claims that he was the victim of a crime on or about April 24, 2018. On that date, defendant R.L. Dooley of the Roanoke City Police Department notified Bonds, who was then in jail, that his 2007 Mitsubishi Outlander SUV had been discovered by authorities abandoned, damaged, and non-operational. In response, Bonds informed Dooley that the vehicle was taken against his will by Keyana Renee Reeves.[3] Bonds alleges that he was told that a warrant would be sworn out against Reeves and that the Roanoke County Police Department would contact Bonds to assist him with his stolen property. At that point, the vehicle already had been towed on the instruction of Roanoke County.

**\*2** An incident report was prepared and, according to Bonds, the Roanoke City Magistrate's Office produced and served Reeves with a warrant on June 6, 2018. Despite numerous inquiries to various local and state agencies, and despite being told repeatedly by various defendants and other personnel at such agencies that someone would get back to him, he has been unable to obtain any information about the disposition of the warrant/summons against Reeves, and apparently has received no restitution for the loss of, or damages to, the vehicle. He complains that he has not been provided any redress by any of these agencies. For example, he alleges that the Roanoke City Commonwealth Attorney's Office has "blatantly refused" to provide him "due process of law and/ or redress for his stolen property," which he believes is a violation of the Virginia and United States Constitutions. Compl. 19–20, ECF No. 1.

The complaint includes only two counts. Count One is titled "Rights of a Victim of Crime." In it, Bonds asserts that defendants failed at all stages of the criminal process to treat him with respect, dignity, and fairness, and to provide timely notice of judicial proceedings. He alleges that, as a result, he was deprived of the right to address the court, confer with the prosecution, and his right to restitution.

Count Two is titled "Equal Protection by Due Process of Law." Bonds appears to be asserting both a claim that his due process rights were violated by defendants, and that he was denied equal protection of the laws. He does not cite to any specific constitutional provision, and he does not offer any additional detail other than the facts alleged above.

For relief, Bonds seeks compensatory damages in the amount of $12 million ($1 million from each defendant) and punitive damages in the amount of $36 million ($3 million from each defendant). He also requests injunctive and declaratory relief. Specifically, he requests a court order that defendants halt "their illegal behavior and provide the victims of a crime and/ or plaintiffs equal protection of the law and due process of the law, for their stolen property" and several declarations, including a declaration that each defendant's misconduct was "unconstitutional and unlawful." Compl. 36.

## II. DISCUSSION

In reviewing a complaint under 28 U.S.C. § 1915A, the court must dismiss the complaint, or any portion of the complaint, that is either "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b)(1)–(2). Pleadings of self-represented litigants should be given liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Bonds's allegations fail to state a valid § 1983 claim for several reasons.

As an initial matter, many of the defendants Bonds names are subject to dismissal either because they are not entities that can be sued under § 1983 or because they have immunity

from suit. For example, entities such as the Roanoke City Sheriff Department, Roanoke City Police Department, Roanoke City Magistrate Office, and the Roanoke City Commonwealth Attorney Office are not "persons" under § 1983. *Preval v. Reno*, 2000 WL 20591, at *1 (4th Cir. 2000) (affirming district court's holding that a regional jail is not a "person" under § 1983); *Hardee v. City of Norfolk*, No. 3:20CV558, 2021 WL 2482681, at *3 (E.D. Va. June 17, 2021) ("Neither inanimate objects such as buildings, facilities, and grounds nor collective terms such as "staff" or "agency" are persons amenable to suit under § 1983.") (internal quotations and citation omitted).

**\*3** Also, the Eleventh Amendment bars suit from being brought in federal court against an unconsenting state, and the "immunity applies to state agencies that may be properly characterized as 'arm[s] of the State,' as well as to state employees acting in their official capacity." *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (citations omitted). Here, for example, Eleventh Amendment immunity would prevent the Commonwealth from being sued under § 1983, and also would bar any claim for damages against many of the entities and persons listed, including any official-capacity claims against Governor Northam, the Commonwealth's Attorney, and the Sheriff. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[Neither a State nor its officials acting in their official capacities are 'persons' under § 1983.]"); *Davison v. Plowman*, 247 F. Supp. 3d 767, 780 (E.D. Va. 2017) (discussing Eleventh Amendment immunity of Virginia's constitutional officers and collecting authority). Any claim against the magistrate or the Commonwealth's Attorney also may be barred by judicial or prosecutorial immunity, respectively.

Regardless of those immunities, though, Bonds has failed to state a claim for which relief can be granted, and that requires dismissal of all of his claims against all defendants. Bonds clearly believes that he has been treated unfairly throughout the process of and that he believes his rights as a victim have been violated by defendants. Importantly, though, Bonds has no constitutional right to insist upon an investigation or criminal prosecution. *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution.") (citation omitted). In fact, a citizen does not have any judicially cognizable interest in the

prosecution or non-prosecution of another person. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (applying *Linda R.S.* and collecting cases).

Likewise, Bonds has not identified any other federal (or state) law that would provide a private cause of action to him. The federal Crime Victims Rights Act ("CVRA") does not apply here because Bonds is not a victim of a "Federal offense." 18 U.S.C. § 3771(e)(2)(A) (setting forth definition of "crime victim" under the CVRA). In any event, although the CVRA provides a mechanism for a crime victim to assert his rights, 18 U.S.C. § 3771(d)(3), it does not authorize any cause of action for damages. 18 U.S.C. § 3771(d)(6).

Similarly, to the extent that Bonds relies on Virginia Constitution, Article 1, Section 8-A, which sets forth the victim's rights referred to by Bonds as a victim, his allegations still do not state a claim under § 1983. First of all, a violation of state law cannot give rise to a claim under § 1983. *Love v. Pepersack*, 47 F.3d 120, 124 n.5 (4th Cir. 1995). Furthermore, that provision expressly states that it does not provide for a private cause of action. Va. Const. Art. 1 § 8-A (noting that the section "does not create any cause of action for compensation or damages against the Commonwealth or any of its political subdivisions, any officer, employee or agent of the Commonwealth or any of its political subdivisions, or any officer of the court").

Lastly, although Bonds claims a "due process" violation and an "equal protection" violation, he does not identify any property or liberty interest of which defendants deprived him; instead, it appears that Reeves is the one who took his property and left it in disrepair and abandoned. As to an equal protection violation, Bonds does not identify any similarly situated individual who was treated differently, as he must in order to allege an equal protection violation. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (explaining that an equal protection claim requires a litigant to "first demonstrate that he has been treated differently from others with whom he is similarly situated") (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

**\*4** Because Bonds has not identified any federal constitutional right that was infringed or any federal law that has been violated, he has failed to state a claim pursuant to § 1983.

### III. CONCLUSION

For the foregoing reasons, the court will dismiss this case. An appropriate order will be entered.

It is so **ORDERED**.

**All Citations**

Slip Copy, 2021 WL 2827301

---

### Footnotes

1    Crediting the representation that Turf Workers Plus is a sole proprietorship owned by plaintiff Bonds, then Turf Workers Plus need not be represented by counsel, but may appear *pro se* through Bonds. *See RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 354 n.4 (4th Cir. 2007) ("[A]n individual owner may represent his sole proprietorship in a pro se capacity."). This is so because "a sole proprietorship has no legal existence apart from its owner." *Id.*

2    Plaintiffs have sought leave to proceed *in forma pauperis*, but that request has not yet been granted.

3    Based on the incident report submitted with the complaint, Bonds told Dooley that he had been arrested for a domestic situation between him and Reeves, who was his live-in girlfriend at the time. According to Bonds, he

told Reeves when he was arrested not to drive his car and later told Dooley that she did not have permission to drive it, although he had allowed her to drive the car in the past.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---